GORDON SILVER
John P. Desmond (Nevada Bar No. 5618)
jdesmond@gordonsilver.com
100 West Liberty Street, Suite 940
Reno, Nevada 89501
Telephone:    (775) 343-7500
Facsimile:     (775) 786-0131

Gregory P. Stone (admitted pro hac vice)
gregory.stone@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone:    (213) 683-9100
Facsimile:     (213) 687-3702

Peter A. Detre (admitted pro hac vice)
peter.detre@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
San Francisco, CA 94105-2907
Telephone:    (415) 512-4000
Facsimile:     (415) 512-4077

*Attorneys for Defendant*
*GOOGLE INC.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Unwired Planet LLC, | |
| Plaintiff, | Case No. 3:12-cv-504-LRH-VPC |
| v. | |
| Google Inc., | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | |

**DEFENDANT GOOGLE INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................1

II. FACTUAL BACKGROUND....................................................................................2

    A.    Google Is Based in the Northern District of California and Has No Connection to the District of Nevada ........................................................2

    B.    Unwired Planet Itself Has a History of Contacts with the Northern District of California and Lacks Significant Contacts with the District of Nevada .............3

    C.    Many Potential Non-Party Witnesses Reside in California, While None Reside in Nevada .................................................................................4

III. ARGUMENT.......................................................................................................6

    A.    Legal Standards..............................................................................6

    B.    This Action Might Have Been Brought in the Northern District of California ......................................................................................7

    C.    The Convenience for Parties, the Convenience for Witnesses, and the Interests of Justice All Strongly Favor Transfer to the Northern District of California ......................................................................................7

        1.    The Parties Have Far Greater Contacts with the Northern District of California ............................................................................7

        2.    Sources of Proof and Contacts Relating to Unwired Planet's Claims are Located Primarily in the Northern District of California.....................8

        3.    Many Non-Party Witnesses Would Be Subject to Compulsory Process in the Northern District of California ........................................9

        4.    Litigation Would Be Less Expensive in the Northern District of California .................................................................................11

        5.    Unwired Planet's Choice of Forum is Entitled to Little, If Any, Weight......................................................................................12

        6.    The Public Interest Factors Also Favor Transfer.........................14

        7.    The Other Factors are Either Neutral or Not Applicable............................16

IV. CONCLUSION...................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ahern Rentals, Inc. v. 916 Elec., Inc.*,
  No. 11-cv-00726-ECR, 2012
  WL 589476 (D. Nev. Feb. 22, 2012) ..................................................................10

*Amazon.com v. Cendent Corp.*,
  404 F. Supp. 2d 1256 (W.D. Wash. 2005) ......................................................12, 13

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986) .......................................................................7, 12

*Deirmenjian v. Deutsche Bank, A.G.*,
  No. 06-cv-774-MMM, 2006 WL
  4749756 (C.D. Cal. Sept. 25, 2006) ...................................................................15

*Duramed Pharms., Inc. v. Watson Labs., Inc.*,
  No. 3:08-cv-00116-LRH-RAM, 2008 WL
  5232908 (D. Nev. Dec. 12, 2008) ......................................................................13

*Galli v. Travelhost, Inc.*,
  603 F. Supp. 1260 (D. Nev. 1985) .....................................................................12

*Gates Learjet Corp. v. Jensen*,
  743 F.2d 1325 (9th Cir. 1984) ..........................................................................15

*Getz v. Boeing Co.*,
  547 F. Supp. 2d 1080 (N.D. Cal. 2008) ..............................................................11

*Hatch v. Reliance Ins. Co.*,
  758 F.2d 409 (9th Cir. 1985) .............................................................................6

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ...........................................................................8

*In re Hoffmann-La Roche, Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) .......................................................................7, 9

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) .....................................................................7, 14

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009) ........................................................................15

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ..........................................................................6

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Volkswagen AG,*
371 F.3d 201 (5th Cir. 2004) ...................................................................................15

*In re Zimmer Holdings, Inc.,*
609 F.3d 1378 (Fed. Cir. 2010) .................................................................................9

*Jones v. GNC Franchising, Inc.,*
211 F.3d 495 (9th Cir. 2000) .....................................................................................6

*Kannar v. Alticor, Inc.,*
No. 08-cv-5505-MMC, 2009 WL
975426 (N.D. Cal. Apr. 9, 2009) .............................................................................10

*Lockman Found. v. Evangelical Alliance Mission,*
930 F.2d 764 (9th Cir. 1991) ...................................................................................12

*Lycos, Inc. v. TiVo, Inc.,*
499 F. Supp. 2d 685 (E.D. Va. 2007) ...................................................................8, 13

*Osteopath, Inc. v. GenSci Regeneration Scis., Inc.,*
6 F. Supp. 2d 349 (D.N.J. 1998) ..............................................................................13

*Pac. Car & Foundry Co. v. Pence,*
403 F.2d 949 (9th Cir. 1968) ...................................................................................12

*Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.,*
No. 12-cv-911-IEG, 2012 WL
2068728 (S.D. Cal. June 8, 2012) ............................................................................13

*Pragmatus AV, LLC v. Facebook, Inc.,*
769 F. Supp. 2d 991 (E.D. Va. 2011) ...................................................................8, 14

*PRG-Schultz USA, Inc. v. Gottschalks, Inc.,*
No. 05-c-2811-MMC, 2005 WL
2649206 (N.D. Cal. Oct. 17, 2005)...........................................................................12

*Ricoh v. Honeywell, Inc.,*
817 F. Supp. 473 (D.N.J. 1993) ................................................................................13

*Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.,*
230 F. Supp. 2d 655 (E.D. Pa. 2002) ........................................................................13

*STX, Inc. v. Trik Stik, Inc.,*
708 F. Supp. 1551 (N.D. Cal. 1988) .........................................................................10

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*United States ex rel. Swan v. Covenant Care, Inc.*,
   No. 97-c-3814-MHP, 1999 WL
   760610 (N.D. Cal. Sept. 21, 1999) ...........................................................................12

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)....................................................................................................12

*Voice Techs. Grp. Inc. v. VMC Sys., Inc.*,
   164 F.3d 605 (Fed. Cir. 1999) ..................................................................................10

**FEDERAL STATUTES**

28 U.S.C. § 1391(c)(2)...................................................................................................7

28 U.S.C. § 1391(d).......................................................................................................7

28 U.S.C. § 1400(b)........................................................................................................7

28 U.S.C. § 1404(a) ..............................................................................................1, 6, 16

**STATE STATUTES**

Cal. Civ. Proc. Code § 1989 .........................................................................................10

**FEDERAL RULES**

Fed. R. Civ. P. 45(b)(2) ................................................................................................10

Defendant Google Inc. ("Google") respectfully moves this Court for an Order transferring this action to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a).  This Motion is based on the following Memorandum of Points and Authorities, and the declarations and exhibits filed herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The center of gravity of this case lies in the Northern District of California.  The connections to that district are abundant, while the connections to the District of Nevada are few. Plaintiff Unwired Planet LLC and its predecessors (collectively referred to as "Unwired Planet") have extensive connections, dating back to 1994, with the Northern District of California.  Many non-party witnesses—including several of the named inventors on the ten asserted patents, prosecuting firms and attorneys, and other potential non-party witnesses with knowledge regarding the patents—are located in the Northern District of California.  Google is headquartered in the Northern District of California, and the teams responsible for the research, design, and development of the numerous accused systems and services are led by personnel located primarily in the district.

The only connections between the case and this district are that, (i) six days before this litigation was filed, Unwired Planet LLC was formed as a Nevada limited liability company, and (ii) on the very day this litigation was filed, Unwired Planet, Inc., the parent company of Unwired Planet LLC, announced its plans to move to Nevada at some point in the future.  These spare facts do not create a genuine connection to the District of Nevada, particularly when Unwired Planet has been based out of the Northern District of California for almost two decades, and that is where the bulk of the alleged inventions at issue in this case were conceived, patented, commercialized, and now are allegedly being infringed.  When there is such an attenuated connection between a plaintiff and its chosen forum, the plaintiff's choice should be disregarded and the case transferred to where it belongs.  In this case, the Court should transfer this litigation to the Northern District of California.

## II.   FACTUAL BACKGROUND

Unwired Planet filed this case against Google on September 19, 2012, alleging direct and indirect infringement of the following ten patents: U.S. Patent Nos. 6,292,657 ("the '657 patent"), 6,654,786 ("the '786 patent"), 6,662,016 ("the '016 patent"), 6,684,087 ("the '087 patent"), 6,895,240 ("the '240 patent"), 6,944,760 ("the '760 patent"), 7,024,205 ("the '205 patent"), 7,035,647 ("the '647 patent"), 7,203,752 ("the '752 patent"), and 7,463,151 ("the '151 patent") (collectively, the "Patents-in-Suit"). Docket No. 1, Complaint ("Compl.") ¶¶ 27-29. The patents relate to a range of distinct technologies, including communications to a fleet of mobile devices (the '657 and '240 patents), map and location services (the '647, '752, and '205 patents), display of maps on mobile devices (the '016 and '087 patents), protecting identities of mobile devices on wireless networks (the '760 patent), updating information to wireless devices (the '786 patent), and mobile services related to short-range radio communications (the '151 patent).

In the Complaint, Unwired Planet accuses a correspondingly broad range of Google systems and services, including (1) Map Location Services (including Google Maps, Google Street View, Google Latitude, Google My Location, Google+, Google+Local, Google Places), (2) Location systems (including Android Location), (3) Mobile Apps (including Google Play, Google Apps, Google Bouncer), (4) Cloud Messaging Systems (including Android Cloud to Device Messaging (C2DM) and Google Cloud Messaging (CGM)), (5) Search and Advertising Systems (including Google Search, Google AdWords, Google+Local, Google Places, Google Mobile Ads), (6) Short-Range Radio Communications Systems (including Google Wallet, Google Offers, and Google Mobile Ads), (7) related servers, and (8) mobile devices (including mobile phones that run the Android operating system). Compl. ¶ 27.

### A.   Google Is Based in the Northern District of California and Has No Connection to the District of Nevada

Google is headquartered in Mountain View, California, located within the Northern District of California. Exhibit A, Declaration of Abeer Dubey ("Dubey Decl.") ¶ 3. Google employs approximately 13,800 people in that district. *Id.* ¶ 6. By contrast, Google has no offices, has no data centers, and does not employ any full-time employees within the State of

1   Nevada.   *Id.* ¶ 9.   Thus, no Google employees with knowledge of the development,

2   implementation, or operation of the accused systems or services are located in Nevada.  *See id.*

3   Likewise, no documentation or other sources of proof relating to the accused systems and services

4   are located in Nevada.  *Id.* ¶ 10.  Rather, the development of the accused systems and services

5   was based in the Northern District of California, and many of the knowledgeable employees and

6   relevant documents can be found there.  *Id.* ¶¶ 6-8.

7          **B.**     **Unwired Planet Itself Has a History of Contacts with the Northern District of**

8                  **California and Lacks Significant Contacts with the District of Nevada**

9               Unwired Planet was founded in 1994 as Unwired Planet, Inc.  Compl. ¶ 8.  Since

10  its inception, Unwired Planet has been headquartered in the Northern District of California,

11  beginning with its original headquarters in Redwood Shores, California.  Exhibit B, Declaration

12  of Tina W. Arroyo ("Arroyo Decl.") ¶ 4, Ex. 1.  In 1999, Unwired Planet, Inc. changed its name

13  to Phone.com and moved its headquarters to nearby Redwood City.  Compl. ¶ 11; Arroyo Decl. ¶

14  5, Ex. 2.  In 2000, when Phone.com merged with Software.com to become Openwave Systems

15  Inc. ("Openwave"), its headquarters remained in Redwood City.  Compl. ¶ 12; Arroyo Decl. ¶ 6,

16  Ex. 3.

17              During these early years of the company, Unwired Planet employees filed the

18  patent applications that resulted in most of the Patents-in-Suit—specifically, the '657, '240, '786,

19  '087, '760, '647, and '151 patents.  Arroyo Decl. ¶¶ 22, 23, 25-29, 33-35, 41, Exs. 17, 18, 20-24,

20  28-30, 36.  The remaining patents—the '016, '205, and '752 patents—appear to have been

21  acquired by Openwave when it acquired SignalSoft (which had, in turn, previously acquired

22  BFound.com) in 2002.  *Id.* ¶ 7, Ex. 4.  At that time, Unwired Planet was not the patent holding

23  company it is today, but an operating company that offered several products and services

24  allegedly using the technologies embodied in its patent portfolio.  Compl. ¶¶ 11-13.

25              Openwave remained based in Redwood City until 2012, when it sold off its

26  operating businesses, keeping only its patent portfolio, and changed its name back to Unwired

27  Planet, Inc.  Compl. ¶ 14.  Openwave's location-based products were sold to Persistent Systems, a

28  software company headquartered in India, but whose United States office is in Santa Clara,

1    California.  Arroyo Decl. ¶ 9, Ex. 6.  Openwave also sold off its Messaging and Mediation

2    product businesses to two new private companies—Openwave Messaging and Openwave

3    Mobility, respectively—that remain based in Redwood City. *Id.* ¶¶ 10-12, Exs. 7-9.

4              Despite its long history of ties to the Silicon Valley, Unwired Planet, Inc. formed a

5    limited liability company, Unwired Planet LLC, in Nevada on September 13, 2012, just six days

6    before that new company filed the Complaint in this case. *Id.* ¶ 13, Ex. 10.  On September 19,

7    2012, the same day this litigation was filed, Unwired Planet, Inc. announced on its website that it

8    had plans to move its headquarters to Reno, Nevada. *Id.* ¶ 14, Ex. 11.  Yet a filing that Unwired

9    Planet, Inc. made with the Securities and Exchange Commission on October 25, 2012, after this

10   litigation began, still showed Redwood City as the location of its principal office. *Id.* ¶ 15, Ex.

11   12.  Unwired Planet claims that it signed a lease for temporary office space at 226 California

12   Avenue in Reno and is constructing new headquarters at 170 Virginia Street in Reno. *Id.* ¶¶ 16-

13   18, Exs. 13-15.  Unwired Planet, Inc. itself is a Delaware corporation, and only registered in

14   Nevada as a foreign corporation on October 17, 2012—again, *after* this litigation began. *Id.* ¶ 19,

15   Ex. 16.

16        **C.    Many Potential Non-Party Witnesses Reside in California, While None Reside**

17             **in Nevada**

18             The ten asserted patents list a total of twenty unique inventors.  Presently, none of

19   these named inventors appear to be employed by Unwired Planet. *See* Arroyo Decl. ¶¶ 22-41,

20   Exs. 17-36 .  Of these inventors, six of them appear to reside and work within California.  Five

21   reside within the Northern District of California: (1) Maurice A. Jeffery of the '657 and '240

22   patents (Los Altos, CA), (2) Mark A. Fox of the '786 Patent (San Francisco, CA), (3)

23   Seetharaman Ramasubramani of the '786 patent (Saratoga, CA), (4) Bruce K. Martin of the '786

24   patent (Los Altos Hills, CA), and (5) Francis H. Yu of the '087 patent (Hillsborough, CA). *Id.*

25   ¶¶ 23, 24, 26, 27, 33, Exs. 18, 19, 21, 22, 28.  An additional inventor, Andrew L. Laursen of the

26   '657 and '240 patents, resides outside the district but within the State, in Auburn, California.[1] *Id.*

27   ---
    [1] Mr. Laursen does not appear to have a permanent address within the Northern District of
    California, but he works for a company based in the district, according to his LinkedIn page.

28   Arroyo Decl. ¶ 22, Ex. 17.

1   ¶ 22, Ex. 17.  In contrast, not one inventor appears to live in Nevada.  *See id.* ¶¶ 22-41, Exs. 17-

2   36.   The rest of the inventors live in Washington, Oregon, Colorado, Canada, the United

3   Kingdom, and Germany.  *Id.* ¶¶ 25, 29-32, 35-41; Exs. 20, 24-27, 30-36.

4          In addition, all of the Patents-in-Suit were prosecuted, at least in part, by attorneys

5   from law offices located in the Northern District of California.  Lawyers from the Sunnyvale

6   office of the firm Blakely, Sokoloff, Taylor and Zaffman LLP prosecuted the '657, '240, '786,

7   and '760 patents.  Arroyo Decl. ¶¶ 43-46, Exs. 37-40.  The Cupertino-based firm Beyer, Weaver

8   & Thomas LLP (now Beyer Law Group LLP) prosecuted the '087 Patent.  *Id.* ¶ 48, Ex. 42.  The

9   San Francisco office of Townsend and Townsend and Crew LLP (now Kilpatrick Townsend &

10  Stockton LLP ) took over the prosecution of the remaining patents—the '016, '647, '752, '205,

11  and '151 patents—from another firm.  *Id.* ¶¶ 47, 49-52, Exs. 41, 43-46.

12         Employees of the operating businesses that Openwave sold, before changing its

13  name back to Unwired Planet, Inc. and becoming a patent holding company, may also be key

14  third-party witnesses.  For example, the sole inventor of the '760 patent, Fergus M. Wills,

15  currently works for Openwave Mobility, which is still headquartered in Redwood City.[2] *Id.* ¶ 29,

16  Ex. 24.  In addition, the current Vice President of Engineering for Openwave Mobility, Matt

17  Halligan, had been with Openwave since 2002 and likely has knowledge of commercial

18  embodiments of some of the patented inventions, such as Openwave's UP.link server referenced

19  in the '760 patent.  '760 Patent at 1:48; Arroyo Decl. ¶ 54, Ex. 47.[3]  As another example, the

20  location-based product business that Openwave sold to Persistent Systems may implicate at least

21  the patents related to location-based systems (the '647, '752, and '205 patents) and the patents

22  related to display of location on mobile devices (the '087 and '016 patents).

23         According to some sources, a seventh inventor, Neil J. Cormia, is also located in the
    Northern District of California.  Arroyo Decl. ¶ 34, Ex. 29.  Another source, however, indicates
24  that he resides in Ashland, Oregon.  *Id.*  In addition, some sources show that inventor Stephen S.
    Boyle lives in Lincoln, California.  *Id.* ¶ 28, Ex. 23.  He appears to have (or have in the past had)
25  some connections to Nevada, such as a post office box and a car registration, but he does not
    appear to reside there.  *Id.*

26  [2] Fergus M. Wills is believed to still be living in Belfast, Ireland, United Kingdom and working in
27  Openwave Mobility's Belfast office.  Arroyo Decl. ¶ 29, Ex. 24.

    [3] This product was later renamed Openwave Mobile Access Gateway.  Arroyo Decl. ¶¶ 55-56,
28  Exs. 48-49.

1        Finally, ex-employees of Unwired Planet may have knowledge about Unwired
2   Planet's commercial embodiments of the patented technologies.   Because these employees
3   worked for Unwired Planet while it was an operating company based in Redwood City, these
4   employees are much more likely to still be found within the Northern District of California than
5   in the District of Nevada.  For example, an ex-Openwave employee Jeff Stock, a Senior Architect
6   with Openwave from 2001 to 2007, represents that he worked on almost every Openwave product
7   at some point during his career there.   Arroyo Decl. ¶ 57, Ex. 50.   He currently works as a
8   software engineer in the Bay Area in the Northern District of California.  *Id.*

9   **III.    ARGUMENT**

10          **A.    Legal Standards**

11        Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in
12   the interest of justice, a district court may transfer any civil action to any other district or division
13   where it might have been brought."  Because a motion to transfer does not involve substantive
14   patent law, the law of the regional circuit governs.  *In re TS Tech USA Corp.*, 551 F.3d 1315,
15   1319 (Fed. Cir. 2008).  Under Ninth Circuit law, a court may grant a motion to transfer if it finds
16   that (1) the action "might have been brought" in the proposed transferee forum, and (2) the
17   "convenience of parties and witnesses in the interest of justice favor transfer."  *Hatch v. Reliance*
18   *Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

19        Determining whether transfer would serve the convenience of the parties and
20   witnesses involves weighing multiple private and public factors.  The private factors include "(1)
21   the location where the relevant agreements were negotiated and executed, (2) the state that is
22   most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective
23   parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the
24   chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of
25   compulsory process to compel the attendance of unwilling non-party witnesses, and (8) the ease
26   of access to sources of proof."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir.
27   2000).  The public factors include "the administrative difficulties flowing from court congestion;
28   the local interest in having localized controversies decided at home; the interest in having the trial

- 6 -

1   of a diversity case in a forum that is at home with the law that must govern the action; the

2   avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and

3   the unfairness of burdening citizens in an unrelated forum with jury duty." *Decker Coal Co. v.*

4   *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

5           **B.      This Action Might Have Been Brought in the Northern District of California**

6           Unwired Planet could have brought this lawsuit in the Northern District of

7   California, where Google is headquartered. A civil action for patent infringement may be brought

8   in any judicial district where the defendant resides. *See* 28 U.S.C. § 1400(b). For the purposes of

9   venue, a corporate defendant "resides" in any district where it is subject to personal jurisdiction.

10  *Id.* § 1391(c)(2), (d). Google was subject to personal jurisdiction in the Northern District of

11  California at the time this action was commenced, and remains so.

12          **C.      The Convenience for Parties, the Convenience for Witnesses, and the**

13                  **Interests of Justice All Strongly Favor Transfer to the Northern District of**

14                  **California**

15          The parties, the accused products, numerous likely third-party witnesses, and

16  sources of proof all have significant ties to the Northern District of California. In contrast,

17  Google has no particularized contacts with the District of Nevada. Even Plaintiff Unwired Planet

18  does not have significant contacts with the District of Nevada. This action belongs in the

19  Northern District of California, and the interest of justice would be best served by transfer to that

20  district.

21                  **1.      The Parties Have Far Greater Contacts with the Northern District of**

22                          **California**

23          As set forth above, both Unwired Planet and Google have significant ties to the

24  Northern District of California, and no meaningful ties to Nevada. Unwired Planet's creation of a

25  Nevada entity only days before filing this litigation should be given little weight. *See In re*

26  *Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (finding transfer to be appropriate when

27  the plaintiff was incorporated in its chosen forum state only sixteen days before the filing of the

28  lawsuit); *In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) ("A plaintiff's

-7-

1    attempts to manipulate venue in anticipation of litigation or a motion to transfer falls squarely

2    within these prohibited activities."); *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991,

3    995 (E.D. Va. 2011) (finding that there was little connection with the forum state when the

4    plaintiff was formed in the forum state only a week before it acquired the patent portfolio and five

5    months before it filed the lawsuit). Given the much greater level of contacts that both parties

6    have with the Northern District of California as compared with the District of Nevada, this factor

7    weighs heavily in favor of transfer.

8                        **2.      Sources of Proof and Contacts Relating to Unwired Planet's Claims**

9                             **are Located Primarily in the Northern District of California**

10                  The only causes of action Unwired Planet alleges against Google are for patent

11   infringement. Compl. ¶¶ 27-29. In patent infringement cases, "the bulk of the relevant evidence

12   usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir.

13   2009). "Consequently, the place where the defendant's documents are kept weighs in favor of

14   transfer to that location." *Id.* This concern is particularly acute in this case, in light of the sheer

15   number of accused Google systems and services. In the Complaint, Unwired Planet has identified

16   at least sixteen distinct Google products, spanning several areas of technology, as allegedly

17   infringing its patents.

18                  Because Google has no offices, has no data centers, and employs no personnel in

19   Nevada, no sources of proof related to the accused products will be found in Nevada and no

20   actions by Google or its employees alleged to constitute infringement can take place in Nevada.

21   Dubey Decl. ¶¶ 9-10. Instead, Google's business documents and records related to the research,

22   design, and development of the numerous accused products are physically present or

23   electronically accessible from Google's headquarters in the Northern District of California. *Id.*

24   ¶ 7. Google's witnesses who are knowledgeable about the research, design, development,

25   marketing, sales, finance, and pricing of the accused products are primarily located in its

26   headquarters as well. *Id.* ¶¶ 6, 8. In addition, there is no indication that Nevada was specially

27   targeted for sales over other states, and thus there is nothing uniquely convenient about Nevada as

28   a venue. *See Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) ("Lycos notes

1   that Virginia's residents purchase and use allegedly infringing products, methods, and systems

2   from the defendants.  However, the defendants likely have this same contact with every other

3   state in this nation.").

4          In addition, sources of proof related to the Patents-in-Suit, such as their validity

5   and enforceability among other issues, can likewise be found in the Northern District of

6   California.  The Patents-in-Suit were prosecuted by law firms in that district who likely maintain

7   prosecution files.  Evidence related to the patents likely also exists in the possession of the

8   operating companies sold by Openwave, Openwave Mobility and Openwave Messaging, which

9   are still based in Redwood City, as well as in the possession of Persistent Systems's Santa Clara

10  office for the location-based products.  Because many of the named inventors also live in the

11  Northern District of California, access to these witnesses would be significantly easier in the

12  district.  In addition, ex-employees of Unwired Planet who worked for Unwired Planet when it

13  was an operating company in Redwood City are far more likely to still be found in the Northern

14  District of California than in the District of Nevada.

15         It is unlikely that sources of proof will be found within the District of Nevada.  To

16  the extent that any documents relevant to the Patents-in-Suit are within Unwired Planet's

17  possession, they may not have been moved to Nevada, given that Plaintiff was only recently

18  formed there.  Even if such evidence had been recently moved or is in the process of being moved

19  to Nevada, courts give no weight to documents that have been transferred to a plaintiff's preferred

20  venue close in timing to the filing of litigation.  *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378,

21  1381 (Fed. Cir. 2010) (disregarding the plaintiff's presence in the preferred venue as "recent,

22  ephemeral, and an artifact of litigation"); *Hoffmann-La Roche*, 587 F.3d at 1337 ("A plaintiff's

23  attempts to manipulate venue in anticipation of litigation or a motion to transfer falls squarely

24  within these prohibited activities.").

25              **3.    Many Non-Party Witnesses Would Be Subject to Compulsory Process**

26                      **in the Northern District of California**

27         The availability of compulsory process also weighs heavily in favor of transfer to

28  the Northern District of California.  Civil subpoenas may be served: (1) within the district of the

                                              - 9 -

1    issuing court; (2) within 100 miles of the court where the case is to be tried; or (3) within the state
2    if a state statute or rule of court permits service of a subpoena issued by a state court of general
3    jurisdiction sitting in the place of the trial. Fed. R. Civ. P. 45(b)(2). California authorizes
4    statewide service. Cal. Civ. Proc. Code § 1989. Thus, if this case were transferred to the
5    Northern District of California, the court there would have the power to subpoena non-party
6    witnesses throughout the state of California. *See Ahern Rentals, Inc. v. 916 Elec., Inc.*, No. 11-
7    cv-00726-ECR, 2012 WL 589476, at *4 (D. Nev. Feb. 22, 2012). On the other hand, if the case
8    were to stay in the District of Nevada, the subpoena power of the court would not extend outside
9    the State of Nevada, except for the small and sparsely populated portion of California within 100
10   miles of Reno, where no inventors, prosecuting attorneys, or other relevant non-party witnesses
11   appear to reside.[4] Given that the parties can prevail upon their own employees to testify, the
12   ability to compel non-party witnesses to appear is particularly important in determining whether
13   to transfer a case. *See STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988);
14   *Kannar v. Alticor, Inc.*, No. 08-cv-5505-MMC, 2009 WL 975426, at *2 (N.D. Cal. Apr. 9, 2009)
15   ("Primary consideration is given to third party, as opposed to employee witnesses.").

16          If this Court were to transfer the case to the Northern District of California, at least
17   the following witnesses could be subject to compulsory process: (1) the six inventors residing
18   within California, (2) the employees of Openwave Mobility, Openwave Messaging, and
19   Persistent Systems's Santa Clara office, and (3) law firms who prosecuted the Patents-in-Suit and
20   four attorneys who prosecuted the patents. Arroyo Decl. ¶¶ 9, 11-12, 22-24, 26-27, 33, 53. The
21   testimony of these witnesses will be relevant to a number of critical issues in the litigation,
22   including at least conception and reduction to practice of the inventions embodied in the patents,
23   the prosecution of the patents, the scope of the claims, and invalidity. *See Voice Techs. Grp. Inc.
24   v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999) ("An inventor is a competent witness to
25   explain the invention and what was intended to be conveyed by the specification and covered by
26   the claims. The testimony of the inventor may also provide background information, including

27   _____
     [4] The inventors residing in California all reside outside this 100 mile radius. Arroyo Decl. ¶ 20,
28   Ex. 53.

1   explanation of the problems that existed at the time the invention was made and the inventor's

2   solution to these problems."). The finder of fact should have the opportunity to hear live

3   testimony from key witnesses on these important issues.

4       As to the other named inventors in Washington, Oregon, Colorado, Canada, the

5   United Kingdom, and Germany, their locations do not suggest that they would be subject to

6   compulsory process in Nevada, or even that the courthouse in Reno would be more convenient to

7   them as compared to the courthouses in San Francisco, Oakland, or San Jose. Accordingly, the

8   availability of process to compel attendance of witnesses also significantly favors transfer to the

9   Northern District of California.

10      **4.    Litigation Would Be Less Expensive in the Northern District of**

11      **California**

12      "The convenience of witnesses is often the most important factor in deciding

13   whether to transfer an action." *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1083 (N.D. Cal. 2008).

14   Transferring the case would significantly reduce the costs that non-party witnesses would need to

15   bear to attend trial. As explained above, several third-party witnesses who have critical

16   knowledge regarding the Patents-in-Suit are located within the Northern District of California.

17   Transfer would save these witnesses time and money that would likely need to be spent to bring

18   these witnesses to trial in Nevada—assuming they agree to come at all.

19      Proceeding in the District of Nevada would also impose unnecessary costs on

20   Google. Much of the evidence in this case will relate to the many accused Google systems and

21   services. Many of Google's potential witnesses to this litigation are located within the Northern

22   District of California. Dubey Decl. ¶¶ 6, 8. Litigating in the Northern District of California

23   would eliminate the time spent and travel costs to be incurred by these witnesses. Additionally,

24   the Northern District of California is likely to be the most active place for discovery because

25   many of the documents, the witnesses, and other sources of proof are located there. *Id.* ¶ 9.

26      In contrast, it is doubtful that there would be any significant cost savings from

27   keeping the litigation in the District of Nevada, even for Unwired Planet. None of the named

28   inventors on any of the Patents-in-Suit works for Unwired Planet. It is also unclear how many of

1    Unwired Planet's employees (if it has any at all) work or reside within the District of Nevada,
2    given that the company has not fully moved its headquarters from the Northern District of
3    California.

4           Transferring this case to the Northern District of California would not "merely
5    shift the inconvenience" between parties. *Galli v. Travelhost, Inc.*, 603 F. Supp. 1260, 1262 (D.
6    Nev. 1985) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645-646 (1964)). Rather, given the
7    location of many witnesses, transfer should be granted because it would instead eliminate
8    inconveniences for these witnesses. *United States ex rel. Swan v. Covenant Care, Inc.*, No. 97-c-
9    3814-MHP, 1999 WL 760610, at *2, (N.D. Cal. Sept. 21, 1999) ("[T]ransfer is not proper if it
10   will merely shift the inconveniences, but in this action, inconveniences will be reduced by
11   transferring the action . . . ."); *see Decker Coal*, 805 F.2d at 843 (finding that conveniences were
12   "shifted" rather than "eliminated" when pertinent witnesses resided in both the transferee and
13   transferor districts); *PRG-Schultz USA, Inc. v. Gottschalks, Inc.*, No. 05-c-2811-MMC, 2005 WL
14   2649206, at *3 (N.D. Cal. Oct. 17, 2005) (finding that transfer does not shift inconveniences
15   when transfer "would eliminate the need for numerous witnesses to travel").

16          **5.     Unwired Planet's Choice of Forum is Entitled to Little, If Any, Weight**

17          Unwired Planet's decision to bring this litigation in the District of Nevada on the
18   same day its parent company announced its plans to move to Reno should be disregarded. The
19   District of Nevada has no connection to the alleged claims of infringement. The Northern District
20   of California is clearly the "center of gravity" of this dispute.

21          Even in an ordinary case in which the plaintiff has deep roots in its chosen forum,
22   the deference owed to a plaintiff's preferred forum is "far from absolute." *Lockman Found. v.*
23   *Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991). Deciding how much weight to
24   give to the plaintiff's choice of forum depends on the connection between the action and the
25   forum. "If the operative facts have not occurred within the forum of original selection and that
26   forum has no particular interest in the parties or the subject matter, the plaintiff's choice is
27   entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954
28   (9th Cir. 1968); *see also Amazon.com v. Cendent Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D.

1    Wash. 2005) ("Where the action has little connection with the chosen forum, less deference is
2    afforded to plaintiff's choice, even if plaintiff is a resident of the forum.").

3              In patent cases, courts in this District and elsewhere within the Ninth Circuit have
4    recognized that "the preferred forum is the center of gravity of the accused activity, which is
5    where the development, testing, research, production, sales, and marketing for the accused
6    product occurs." *Duramed Pharms., Inc. v. Watson Labs., Inc.*, No. 3:08-cv-00116-LRH-RAM,
7    2008 WL 5232908, at *2 (D. Nev. Dec. 12, 2008) (internal citations omitted); *see also*
8    *Amazon.com*, 404 F. Supp. 2d at 1260; *Peregrine Semiconductor Corp. v. RF Micro Devices,*
9    *Inc.*, No. 12-cv-911-IEG, 2012 WL 2068728, at *6 (S.D. Cal. June 8, 2012). The focus is on
10   product "development, testing, research, production, sales, and marketing," and not on "where
11   limited sales activity has occurred." *Osteopath, Inc. v. GenSci Regeneration Scis., Inc.*, 6 F.
12   Supp. 2d 349, 357-58 (D.N.J. 1998); *see also Ricoh v. Honeywell, Inc.*, 817 F. Supp. 473, 483
13   (D.N.J. 1993). Thus, in patent infringement cases, the district where the case is brought "ought to
14   be as close as possible to the milieu of the infringing device and the hub of activity centered
15   around its production." *Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655,
16   660 (E.D. Pa. 2002) (internal citation and quotation marks omitted).

17             The Northern District of California is not only the more convenient forum for this
18   dispute, but also the center of gravity of the accused activity. Teams responsible for the research,
19   design, development, marketing, sales, finance, and pricing related to the numerous accused
20   Google systems and services were led by personnel primarily based in Google's headquarters in
21   the Northern District of California. Dubey Decl. ¶¶ 6, 8. In stark contrast, there is no relevant
22   connection between the allegedly infringing activities and the District of Nevada. The mere fact
23   that Nevada residents may have purchased or used the accused products and services from the
24   District of Nevada—generalized activity that occurs in every district in the country—is not
25   enough to shift the focus from the Northern District of California. *See Osteopath*, 6 F. Supp. 2d
26   at 358 (the focus is not on "where limited sales activity has occurred"); *Lycos*, 499 F. Supp. 2d at
27   692 ("It is well-settled that the mere existence of limited sales activity within Virginia does not
28   require this court to give the plaintiff's choice of forum substantial weight when balancing the

- 13 -

1    convenience and justice factors.").

2            Unwired Planet's lack of contacts with this district further supports the conclusion

3    that its choice to litigate here is entitled to little weight. Unwired Planet LLC 's registration as a

4    limited liability company a only few days before filing this litigation and Unwired Planet, Inc.'s

5    announcement of its plans to move from the Northern District of California to the District of

6    Nevada on the same day that the litigation was filed should carry little weight. *See In re*

7    *Microsoft*, 630 F.3d at 1365 (finding a weak connection when the plaintiff was incorporated in the

8    chosen forum only sixteen days before filing the lawsuit); *Pragmatus*, 769 F. Supp. 2d at 995

9    (giving the plaintiff's choice of forum "minimal weight" when plaintiff formed in its chosen

10   forum a week before it acquired the patent portfolio and five months before it filed the lawsuit).

11           **6.      The Public Interest Factors Also Favor Transfer**

12           The applicable public interest factors also show that the public interest would be

13   best served by a transfer to the Northern District of California.

14           First, the local interest in having localized controversies decided at home weighs

15   heavily in favor of having the litigation transferred to the Northern District of California. Not

16   only are numerous relevant witnesses and sources of proof located there, but Google has had

17   strong ties to the Northern District of California since it was formed by two Stanford students

18   back in the 1990s. Arroyo Decl. ¶ 58, Ex. 51. Google has been headquartered in the Bay Area

19   since its inception, moving to its corporate headquarters in Mountain View in 2004. *Id.* Google

20   has undoubtedly been an integral part of the Silicon Valley and has had a profound influence on

21   the area's reputation as the hub of high-tech business and innovation. In addition, Unwired Planet

22   itself has a long history of ties to the Bay Area and Silicon Valley, having been based there since

23   its own inception in 1994. Inventors of several of the asserted patents, although no longer

24   affiliated with Unwired Planet, remain active members of the high-tech industry in the Bay Area.

25   *Id.* ¶¶ 22-24, 26-28, 33-34, Exs. 17-19, 21-23, 28-29. The Northern District of California has a

26   strong interest in having patent infringement alleged by a local company and against a local

27   company decided in its courts. In contrast, the District of Nevada has little local interest in

28   having this litigation in its courts. Google simply has no particularized contact with the District

- 14 -

1   of Nevada.   What little contact Unwired Planet has is sparse and very recently created.   The

2   accused products and the patents themselves also have no particularized connection to the District

3   of Nevada.  In every meaningful way, this case is centered in the Northern District of California.

4   Second, it would be unfair to burden Nevada citizens with serving as jurors in this

5   litigation, given the lack of connection between the parties and the claims to the District of

6   Nevada. The ten patents that have been asserted in this litigation cover a wide range of distinct

7   technologies and are technically complex.   Unwired Planet has accused numerous Google

8   products, many of which are unrelated to each other and also cover diverse technologies.  A trial

9   would likely be both legally and technically complex, and be lengthy and demanding on the jury.

10  The resources of the jury pool and the court are better focused on other, more local controversies.

11  *See In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("Jury duty is a burden that ought

12  not to be imposed upon the people of a community which has no relation to the litigation."); *In re*

13  *Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("If the products were sold throughout the

14  United States, as here, then the citizens of the venue chosen by the plaintiff 'have no more or less

15  of a meaningful connection to the case than any other venue.'").

16  Third, while not given as much weight as the other factors, the relative congestion

17  of the courts also favors transfer.  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th

18  Cir. 1984) (transfer serves the public interest when "a trial may be speedier in another court

19  because of its less crowded docket"); *Deirmenjian v. Deutsche Bank, A.G.*, No. 06-cv-774-MMM,

20  2006 WL 4749756, at *15 (C.D. Cal. Sept. 25, 2006) ("Administrative considerations such as

21  docket congestion are given some, but not decisive, weight in the public interest inquiry.")

22  As the table below demonstrates, the Northern District of California has been a

23  slightly faster forum in recent years than the District of Nevada:

24  ///

25  ///

26  ///

27  ///

28  ///

- 15 -

**Median Time Intervals from Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition**

|  | Disposition by Trial (months) | | | Disposition by any Resolution (months) | | |
|---|---|---|---|---|---|---|
|  | N.D. Cal. | D. Nev. | Faster? | N.D. Cal. | D. Nev. | Faster? |
| 2007 | 23.3 | 35.8 | N.D. Cal. (12.5 mos) | 6.7 | 9.6 | N.D. Cal. (2.9 mos) |
| 2008 | 26.2 | 29.5 | N.D. Cal. (3.3 mos) | 7.7 | 9.5 | N.D. Cal. (1.8 mos) |
| 2009 | 26.2 | 37.2 | N.D. Cal. (11 mos) | 9.4 | 7.0 | D. Nev. (2.4 mos) |
| 2010 | 25.5 | 26.9 | N.D. Cal. (1.4 mos) | 9.8 | 8.0 | D. Nev. (1.8 mos) |
| 2011 | 25.4 | 28.5 | N.D. Cal. (3.1 mos) | 8.0 | 8.1 | N.D. Cal (0.1 mos) |

Arroyo Decl. ¶ 59, **Ex. 52**. These statistics show that the median time to disposition by trial was faster on average in the Northern District of California as compared to the District of Nevada in each of the last five years, and the disposition by any resolution was faster on average in the Northern District of California in three of the last five years.

### 7. The Other Factors are Either Neutral or Not Applicable

The other private and public factors that the Ninth Circuit has enunciated—including the location where the relevant agreements were negotiated and executed, and the state that is most familiar with the governing law—are either neutral or not applicable to this case, and thus weigh neither for nor against transfer.

## IV. CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

DATED: January 10, 2013                           MUNGER, TOLLES & OLSON LLP


                                                  By: /s/ Gregory P. Stone
                                                     Gregory P. Stone

                                                     *Attorneys for Defendant*
                                                     *GOOGLE, INC.*

- 16 -

## CERTIFICATE OF SERVICE

I certify that I am an employee of GORDON SILVER, and that on this date, pursuant to FRCP 5(b), I am serving a true and correct copy of the attached **DEFENDANT GOOGLE INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)** on the parties as set forth below:

_____ Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, Reno, Nevada, postage prepaid, following ordinary business practices

_____ Certified Mail, Return Receipt Requested

_____ Via Facsimile (Fax)

_____ Via E-Mail

_____ Placing an original or true copy thereof in a sealed envelope and causing the same to be personally Hand Delivered

_____ Federal Express (or other overnight delivery)

XXX    EM/ECF Electronic Notification

addressed as follows:

| | |
|---|---|
| Michael D. Rounds<br>mrounds@watsonrounds.com<br>Adam K. Yowell<br>ayowell@watsonrounds.com<br>Watson Rounds<br>5371 Kietzke Lane<br>Reno, NV 89511 | Theodore Stevenson, III<br>tstevenson@mckoolsmith.com<br>McKool Smith, P.C.<br>3000 Crescent Court<br>Suite 1500<br>Dallas, TX 75201 |

Kevin L. Burgess
kburgess@mckoolsmith.com
Pierre J. Hubert
phubert@mckoolsmith.com
John M. Shumaker
jshumaker@mckoolsmith.com
McKool Smith, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701

DATED this 10th day of January, 2013.

/s/ Cindy S. Grinstead
An Employee of GORDON SILVER