Theodore Stevenson III (*pro hac vice*)
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Fax: (214) 978-4044

Kevin Burgess (*pro hac vice*)
Texas State Bar No. 2400069
kburgess@mckoolsmith.com
Pierre Hubert (*pro hac vice*)
Texas State Bar NO. 240023
phubert@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th St., Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Fax: (512) 692-8744

Michael D. Rounds
Nevada State Bar No. 4734
mrounds@watsonrounds.com
Adam K. Yowell
Nevada State Bar No. 11748
ayowell@watsonrounds.com
WATSON ROUNDS
5371 Kietzke Lane
Reno, NV 89511-2083
Telephone: (775) 324-4100
Fax: (775) 333-8171

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### RENO DIVISION

| | |
|---|---|
| **UNWIRED PLANET LLC, a Nevada limited liability company,**<br><br>**Plaintiff,**<br><br>v.<br><br>**GOOGLE INC., a Delaware corporation,**<br><br>**Defendant.** | Case No. 3:12-cv-0504-LRH-VPC<br><br>**UNWIRED PLANET'S OPPOSITION TO GOOGLE'S MOTION TO TRANSFER** |

1

# TABLE OF CONTENTS

2   TABLE OF AUTHORITIES ..................................................................................... iii

3   I.    Introduction ................................................................................................ 1

4   II.   Factual Background ................................................................................... 1

5         A.    History of Unwired Planet .............................................................. 1

6         B.    Unwired Planet Begins Operations In Reno's Business Friendly Climate .................... 2

7         C.    Unwired Planet's Growth In Reno ................................................... 3

8         D.    Google's Global and Nevada Presences ........................................ 5

9   III.  Argument .................................................................................................... 6

10        A.    Legal Standards .............................................................................. 6

11        B.    Whether the action could have been brought in the Northern District of California ....... 6

12        C.    Google has not shown the Northern District of California is a clearly more

13              convenient forum than the District of Nevada ............................... 6

14              1.    Unwired Planet has Significant Ties to this Forum .................... 7

15              2.    Sources of proof are located in Nevada as well as California ...................... 9

16              3.    Google has failed to identify any witness for which compulsory process would likely

17                    be required ..................................................................................... 11

18              4.    Litigation would be less expensive in Nevada than California.................... 14

19              5.    Unwired Planet's choice to file in its home forum is entitled to substantial

20                    deference .......................................................................................... 15

21              6.    The public interest factors weigh against transfer....................... 17

22              7.    Other factors ................................................................................... 18

23  IV.   Conclusion ................................................................................................ 18

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

<u>Cases</u>

3

*Brackett v. Hilton Hotels Corp.*, 2008 WL 2632675 (N.D. Cal. 2008) ..........................................10

4

*Clopay Corp. v. Newell Companies, Inc.*, 527 F. Supp. 733 (D. Del. 1981) ................................15

5

*Continental Grain Co. v. The FBL-585*, 364 U.S. 19 (1960) .......................................................17

6

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962 (D. Del. 1993)........13

7

*Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ...........................7, 15

8

*Deirmenjian v. Deutsche Bank, A.G.*, 2006 WL 4749756 (C.D. Cal. 2006) ................................11

9

*Duramed Pharms., Inc. v. Watson Labs., Inc.*, 2008 WL 5232908 (D. Nev. 2008)............9, 13, 16

10

*E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465 (E.D. Cal. 1994) .................................7

11

*Eolas Techs., Inc. v. Adobe Sys., Inc. et al.*, 2010 WL 3835762 (E.D. Tex. 2010) ........................9

12

*Flint v. UGS Corp.*, 2007 WL 4365481 (N.D. Cal. 2007)............................................................10

13

*Galli v. Travelhost, Inc.*, 603 F.Supp. 1260 (D. Nev. 1985)........................................................15

14

*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir. 1984)......................................................14

15

*Grubs v. Consol. Freightways, Inc.*, 189 F. Supp. 404 (D. Mont. 1960)......................................13

16

*Healthtrac Corp. v. Caterpillar, Inc.*, 2005 WL 2811765 (N.D. Cal. 2005)..............................15

17

*Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923 (W.D. Mo. 1985) ..........................................13

18

*In re Apple Inc.*, 374 F. Appx. 997 (Fed. Cir. 2010)......................................................................8

19

*In re Ferrero Litig.*, 768 F. Supp. 2d 1074 (S.D. Cal. 2011)........................................................14

20

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009)................................................................14

21

*In re Google Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011) ...............................................................9

22

*In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ...................................................8

23

*In re Microsoft*, 630 F.3d 1361 (Fed. Cir. 2010) ........................................................................8, 9

24

*In re TS Tech United States Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) .............................................8

25

*In re Verizon Bus. Network Services Inc.*, 635 F.3d 559 (Fed. Cir. 2011) .....................................8

26

*In re Zimmer Holdings, Inc.,* 609 F.3d 1378 (Fed. Cir. 2010)........................................................8

27

*Kannar v. Alticor, Inc.*, 2009 WL 975426 (N.D. Cal. 2009)..................................................10, 15

28

*Kawamura v. Boyd Gaming Corp.*, 2012 WL 6047728 (D. Haw. 2012) ......................................13

*Lee v. Ohio Casualty Ins. Co.*, 445 F. Supp. 189 (D. Del. 1978) ...................................................11

*Leesona Corp. v. Duplan Corp.,* 317 F. Supp. 290 (D.R.I. 1970) ..............................................11

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001)........................................................14

*Meyer Mfg. Co. v. Telebrands Corp.*, 2012 WL 1189765 (E.D. Cal. 2012) ...................................8

*Multimedia Patent Trust v. Tandberg, Inc.*, 2009 WL 3805302 (S.D. Cal. 2009) .....................11

*Osteopath, Inc. v. GenSci Regeneration Scis., Inc.*, 6 F. Supp. 2d 349 (D.N.J. 1998) .................16

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182 (Fed. Cir. 1993) .....................12

*Ravelo Monegro v. Rosa*, 211 F.3d 509 (9th Cir. 2000)................................................................8

*Royal Queentex Enters. v. Sara Lee Corp.*, 2000 WL 246599 (N.D. Cal. 2000) ........................15

*Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985) ..........................6

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006)........................................11

*Warfield v. Gardner*, 346 F. Supp. 2d 1033 (D. Ariz. 2004)................................................8, 16

<u>Statutes</u>

28 U.S.C. §§ 1392....................................................................................................................6

28 U.S.C. §§ 1400....................................................................................................................6

28 U.S.C. §§ 1404................................................................................................................8, 17

<u>Rules</u>

Local Patent Rule 16.1-7........................................................................................................10

<u>Secondary Sources</u>

Mark A. Lemley, *Where to File Your Patent Case*, 38 AIPLA Q.J. 401 (2010)..........................17

## I.   INTRODUCTION

It's no secret that Nevada has made a substantial effort to make itself attractive to California businesses.  Yowell Decl. ¶ 16, Ex. 67.  Nevada has no corporate income tax, no personal income tax and no inventory tax.  In addition, it has relatively lower workers' compensation rates and a pro-business attitude.  These efforts have succeeded in attracting companies like Unwired Planet, a publicly-traded company which has planted its roots in Reno, Nevada and is here to stay.  Robbins Decl. ¶ 18.  Unwired Planet's key witnesses and documents are located in this District and its core business operations – patent prosecution and licensing – take place here.  Unwired Planet is entitled under the law of the Ninth Circuit and the District of Nevada to try its patent infringement claims against Google in its home District.

Google cannot meet its burden to show that the Northern District of California is *clearly* more convenient than Nevada.  Google's witnesses and counsel (to the extent they reside in the Bay Area) can easily manage a 200 mile drive up Highway 80 or a 45 minute flight to Reno to present its defenses in this case.  While Google tries to paint this action as a Silicon Valley dispute that is not convenient for any party, neither point is true.  Considering all relevant factors, Google's Motion to Transfer should be denied.

## II.   FACTUAL BACKGROUND

Google correctly summarizes the patent infringement issues but misstates the facts concerning Unwired Planet's history and presence in Reno, Nevada as well as Google's own Nevada presence.  Doc. # 33 at 2-4.  The relevant and accurate facts are set forth below.

### A.   History of Unwired Planet

Unwired Planet, Inc. is the founder of the mobile internet.[1]  In 1996, it launched the world's first end-to-end mobile internet browser, forming the foundation for the current smartphone revolution.  Mulica Decl. ¶ 3.  This product was a great success, and fueled

---

[1] Unwired Planet, Inc. and its predecessors have gone by a number of names, accurately set out in Google's Motion.  Doc. # 33 at 3.  The Plaintiff in this case, Unwired Planet LLC, is a Nevada LLC wholly-owned by Unwired Planet, Inc.  All patents-in-suit are currently owned by Unwired Planet LLC.  For convenience, Plaintiff Unwired Planet LLC, the current Unwired Planet, Inc., and all of these predecessors are referred to as simply "Unwired Planet."

expansions and acquisitions that included the addition of e-mail and multimedia messaging products.  Mulica Decl. ¶¶ 3-4.  At one point, Unwired Planet's products constituted nearly half of the global mobile internet browser market.  Mulica Decl. ¶ 3.  Unwired Planet's vast patent portfolio, a small portion of which is at issue in this action, speaks to the volume of innovative technology that it developed throughout its existence.  Robbins Decl. ¶ 6.

Gradual market pressure from infringing competitors such as Google, Apple, and RIM irreparably harmed Unwired Planet's revenues and eroded its profits.  Mulica Decl. ¶ 5. Eventually, in May 2012, Unwired Planet announced that all of its product divisions and the bulk of its employees would be transferred and spun-off as three new entities:  Openwave Mobility, Openwave Messaging and the location business, all of which were sold.  Robbins Decl. ¶ 5.  The location business became a subsidiary of a company called PSL and Openwave Mobility and Openwave Messaging were sold to a firm called Marlin Equity Partners.  *Id.*  The surviving Unwired Planet retained the company's substantial patent portfolio for the sole purpose of licensing its ground-breaking inventions to the infringing companies that now dominate the marketplace.  Robbins Decl. ¶ 6.  As part of the sell-off of its product divisions, Unwired Planet was required to keep a variety of personnel temporarily employed in California for several months to provide support services during the transition to Reno.  Robbins Decl. ¶ 7.

B.     Unwired Planet Begins Operations In Reno's Business Friendly Climate

At the time Unwired Planet was split into four companies it had over 400 employees. Robbins Decl. ¶ 5.  The company was operating out of its two-building, several thousand employee capacity San Francisco bay-front headquarters located in Redwood Shores, California, and its monthly rent payment was approximately $2 million.  Robbins Decl. ¶ 8.  The location of the predecessor Unwired Planet (and its accompanying expense) did not fit with the drastic change in size and business plan of the new Unwired Planet, and so the process of finding a new home – one without Silicon Valley rent, taxes, and cost-of-living expenses – began immediately. Robbins Decl. ¶ 9.

Two key Unwired Planet employees, Daniel Mendez and Timothy Robbins, were appointed co-General Managers and chosen to lead Unwired Planet's rebirth and relocation.

Robbins Decl. ¶ 8.  They quickly identified a number of cities as potential candidates, including Reno.  Robbins Decl. ¶ 10.  Several new employees needed to be hired, so a labor pool familiar with the maintenance and enforcement of intellectual property was preferred.  *Id.*  Reno, with its strong base of patent-centric gaming manufacturers fit the bill.  Robbins Decl. ¶¶ 11-16.  And, with its low rent, minimal taxes and economical cost of living, Reno was the clear business choice.  In September, 2012, the decision was officially made – Unwired Planet would take advantage of Reno's pro-business environment.  *Id.* ¶ 18.

No big change happens overnight, especially in a publicly-traded company such as Unwired Planet.  All of the details – signing new leases, ending old ones, hiring new employees, separating with old ones, moving files and equipment, and formally obtaining board of director approval for all of the preceding – took time.  Robbins Decl. ¶ 18.  However, within a relatively short time, Unwired Planet acquired two temporary office locations, started renovations on its new Reno headquarters, began the search for Reno employees, and created a Nevada LLC to hold key patents and receive the income generated from them.  Robbins Decl. ¶ 13.  Mr. Mendez and Mr. Robbins, both formerly California-based, began working almost exclusively out of Unwired Planet's Reno offices, except when traveling to meet with out-of-state corporate representatives.  Mendez Decl. ¶¶ 3-6; Robbins Decl. ¶¶ 3-4.

Before a final location had been chosen, Unwired Planet already knew it would have to sue Google and Apple to answer their extensive infringement, and had prepared to do so.  Unwired Planet did not want their move to artificially delay their enforcement efforts, and therefore filed this action and another against Apple, Inc., a few days later.  Robbins Decl. ¶ 19.

C.      Unwired Planet's Growth In Reno

On January 10, 2013, Unwired Planet announced a transaction under which Ericsson, a pioneer of and one of the largest patent holders in mobile telephony, will transfer 2,185 issued and pending United States and international patents and applications to Unwired Planet.  Robbins Decl. ¶¶ 13-14.  These patents will complement Unwired Planet's existing portfolio of several hundred mobile internet and communication patents.  This transaction makes Unwired Planet one of the largest patent holders in the mobile broadband space.  Vetter Decl. ¶ 5.  This

1   transaction was formally presented to Unwired Planet's board of directors at a meeting

2   conducted in Reno in November 2012 at the company's then temporary space and formally

3   approved in early January.  Robbins Decl. ¶ 21.

4       Unwired Planet will manage its extensive portfolio out of its offices in Reno.  This will

5   require Unwired Planet to undertake significant hiring for its Reno headquarters.  Vetter Decl. ¶

6   5.  The new hires will need to handle all aspects of managing a large patent portfolio, such as

7   managing the docket of applications, hiring and managing patent prosecution counsel across the

8   world, coordinating patent filings in multiple countries, filing new related applications, and

9   paying maintenance fees.  Unwired Planet will also negotiate and draft its license agreements

10  from its Reno headquarters, which will also require substantial staffing.  *Id.*  To meet its needs,

11  even before the Ericsson transaction, over the past several months, Unwired Planet hired several

12  new employees from Reno.  Robbins Decl. ¶ 20.  Another employee, Dave Bushee, relocated

13  from California and now permanently resides in Reno.  *Id.*  All told, Unwired Planet now has ten

14  full time employees in Reno.  Vetter Decl. ¶ 4.  This headcount will clearly be insufficient given

15  the size of Unwired Planet's current patent holdings, and Unwired Planet intends to aggressively

16  hire additional employees with technical and patent backgrounds over the next several quarters.

17  Vetter Decl. ¶ 5.

18      One recently-hired full time employee is Unwired Planet's Chief Financial Officer and

19  Chief Administrative Officer, Eric Vetter, a long time Reno resident and a Nevada native.  Vetter

20  Decl. ¶¶ 2-3.  In most small companies, and especially intellectual property companies, the CFO

21  is the "heartbeat" of the company.  Vetter Decl. ¶ 6.  Unwired Planet is no different and Mr.

22  Vetter runs Unwired Planet day-to-day from his office in Unwired Planet's Reno headquarters.

23  Vetter Decl. ¶ 6.

24      The build out of Unwired Planet's permanent headquarters at 170 South Virginia Street

25  was recently completed and a ribbon cutting ceremony was conducted on January 24, 2013.

26  Robbins Decl. ¶ 24.  Around this same time, Unwired Planet had its quarterly board of directors

27  meeting at its new Reno headquarters, with everyone in attendance in person except for one

28  board member.  *Id.*  Unwired Planet's public accountants were also in Reno during January to

1   close Unwired Planet's books for the last quarter.  In total, approximately twenty individuals

2   were conducting Unwired Planet business in its South Virginia headquarters in January.  *Id.*

3         As of the filing of this opposition, Unwired Planet's move to Reno has created seven

4   new, permanent, full-time jobs for Reno citizens, representing 70% of the total company's

5   employees.  Vetter Decl. ¶ 4.  In addition, Unwired Planet intends to hire additional Reno

6   personnel up to a full operating strength of 20 employees.  Vetter Decl. ¶ 5.  While some key

7   personnel must travel frequently, as is the nature of the intellectual property business, Unwired

8   Planet is operated from Reno on a day-to-day basis.  Vetter Decl. ¶ 6.  Board meetings, strategy

9   discussions, meetings with potential strategic partners, licensing negotiations – it's all being done

10  in Reno.  Vetter Decl. ¶ 7.  Simply put, Unwired Planet's licensing and enforcement business is

11  conducted in Reno because Unwired Planet is a Reno business.

12        D.    Google's Global and Nevada Presences

13        Google is a $50 billion "global" company whose accused products and software

14  applications are sold in this District and throughout the world.  Yowell Decl. ¶ 5, Ex. 56 at 3.

15  Google's software applications are used daily in this District.  *Id.*  Google claims that every

16  accused product was developed, marketed, and sold by teams "led" by personnel in Mountain

17  View (Doc. # 33-1 ¶¶ 5-8), but nearly two-thirds of Google employees work out of Google's

18  many research, development, and sales offices throughout the world.  Doc. # 33-1 ¶¶ 6, 9;

19  Yowell Decl. ¶ 6, Ex. 57.

20        Moreover, Google has more ties to this forum than it acknowledges.  For example,

21  Nevada was the first state in the nation to pass legislation allowing electronically controlled self-

22  driving ("driverless") cars.  Yowell Decl. ¶¶ 7, 10, Exs. 58, 61.  The lobbying force behind that

23  groundbreaking Nevada legislation was Google.  Yowell Decl. ¶¶ 8, 9, Exs. 59, 60.  Google has

24  continued to extensively test its driverless car fleet on Nevada roads.  Yowell Decl. ¶¶ 12, 14,

25  Exs. 63, 65.  These are relevant infringing actions, as some of the key technologies that allow

26  these driverless cars to function are accused products in this case, such as Google Maps and

27  Navigation.  Yowell Decl. ¶11, 13, Exs. 62, 64.  In the words of one article, "[Google] knew

28  what they were doing by moving forward in Nevada."  Yowell Decl. ¶ 14, Ex. 65.

Additionally, Google and its products are regular stars at one of the world's largest technology trade shows, the Consumer Electronics Show ("CES") held in Las Vegas every January.  For example, many Android smartphones, which utilize a number of accused products in this case, are shown at CES.  Yowell Decl. ¶ 15, Ex. 66.  If Nevada is an appropriate forum to test, market, and announce Google's products, then Nevada is an appropriate forum to determine whether those products are infringing Unwired Planets' patents-in-suit.  In short, Google has a substantial infringing presence in Nevada.

## III.  ARGUMENT

### A.  Legal Standards

Google has accurately set forth the general factors governing a motion to transfer in the Ninth Circuit and this District.  Doc. # 33 at 6-7.  Some of the more intricate legal standards relevant to each of these factors and Google's Motion, however, have been mischaracterized by Google, and in those cases, Unwired Planet will address those legal standards within the context of analyzing each individual factor.

### B.  Whether the action could have been brought in the Northern District of California

Although no legal impediment would have existed to prevent Unwired Planet from bringing this lawsuit in the Northern District of California, the same could be said about any other District in the country.  However, bringing this case in any other District would have required Unwired Planet to file outside of its home District.  Doc. # 33 at 7.  Google has not disputed that it is subject to personal jurisdiction in Nevada.  Thus, Nevada is also an appropriate forum in which to bring this action.  *See* 28 U.S.C. §§ 1392(c)(2), (d), 1400(b) (an action for patent infringement may be brought in any judicial district where the defendant is subject to personal jurisdiction).

### C.  Google has not shown the Northern District of California is a clearly more convenient forum than the District of Nevada

It is Google's burden to establish that transfer is *clearly* warranted because the balance of convenience tips *strongly* in favor of Google.  *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985).  A motion to transfer does not require the court to find the

1   optimal forum, only to determine if the movant has shown the transferee forum is clearly more

2   convenient for all parties. *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th

3   Cir. 1986). "Unless the balance of convenience is strongly in favor of the defendant, plaintiff's

4   choice of forum should not, or should rarely, be disturbed." *E. & J. Gallo Winery v. F. & P.*

5   *S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994).

6            1.   *Unwired Planet has Significant Ties to this Forum*

7            Google claims Unwired Planet's ties to Nevada should be disregarded, going so far as to

8   suggest that Unwired Planet has "significant ties to the Northern District of California, and no

9   meaningful ties to Nevada." Doc. # 33 at 7. Contrary to Google's allegations, Unwired Planet

10  has a significant connection with Reno but no longer has any meaningful connection to Northern

11  California. Robbins Decl. ¶ 23.

12           Unwired Planet's entire business is in Reno, and it moved here for significant business

13  reasons: no corporate income tax, no personal income tax, low cost of living, and business

14  friendly laws and regulations. Robbins Decl. ¶¶ 11-16. The Nevada Commission on Economic

15  Development listed Nevada as the second "most friendly" state for entrepreneurial companies

16  and listed California as the forty-ninth. Yowell Decl. ¶ 16, Ex. 67 at slide entitled "Entrepreneur

17  Friendly States." This ranking (and others like it) motivated Unwired Planet's decision to move

18  to Reno and sever its ties with Northern California. Robbins Decl. ¶ 10.

19           Unwired Planet's only office is in Reno, and it is staffed with long-term, full-time

20  employees hired locally. Robbins Decl. ¶ 20; Vetter Decl. ¶ 4. By the time a hearing is held on

21  this Motion, Unwired Planet expects that every single employee will be working out of its South

22  Virginia Street Reno headquarters. Robbins Decl. ¶ 10. The fact that Unwired Planet is still

23  continuing to transition its business to Reno actually shows that Unwired Planet did not hastily

24  make the move to Reno for the sole purpose of justifying venue in the present dispute but rather

25  that Unwired Planet took a slow and deliberate course of action meant to permanently transition

26  itself to the Reno business community.

27           In its Motion, Google cites many non-controlling Texas venue decisions. These

28  decisions, which were decided under Fifth Circuit law, apply a wholly different legal standard

than is applied by the Ninth Circuit.  For instance, courts applying Fifth Circuit law accord no independent weight to the plaintiff's choice of forum.  *See e.g.*, *In re TS Tech United States Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis.").  The same analysis is not true under Ninth Circuit Law.  *Meyer Mfg. Co. v. Telebrands Corp.*, 2012 WL 1189765 at *4-5 (E.D. Cal. 2012) ("The court determines that, because of Plaintiff's contacts to [this district] related to [Plaintiff's] cause of action, Plaintiff's choice of forum will be given deference in analyzing the motion to transfer."); *Warfield v. Gardner*, 346 F. Supp. 2d 1033, 1044 (D. Ariz. 2004) (plaintiff's choice of "home forum is to be given substantial deference"); *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000) (referring to the "strong presumption in favor of a domestic plaintiff's forum choice.").  In addition, many of the cases cited by Google involve a plaintiff that opened up a shell, non-functioning office (termed "ephemeral" or "sham" offices by those courts) in the Eastern District of Texas.  *See e.g.*, Doc. # 33 at 7-8 *citing In re Microsoft*, 630 F.3d 1361, 1365 (Fed. Cir. 2010).  This is certainly not the case with Unwired Planet, the legitimacy of whose business connections to Reno cannot be questioned.[2]

In one inapplicable case cited by Google, *In re Microsoft,* the Court found transfer warranted because the plaintiff's offices in its chosen forum "staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue."  *In re Microsoft*, 630 F.3d at 1365.  The situation here could not be more different.  Unwired Planet's Reno offices are filled with real employees that perform its core business operations.  Vetter Decl. ¶¶ 4-7.  For instance, Unwired Planet closed the Ericsson partnership after moving to Reno.  Robbins Decl. ¶ 13.  Further, Unwired Planet's Reno office is not a construct for litigation nor is it an attempt to manipulate venue.  To the contrary, Unwired Planet did not make the decision to file the present lawsuit in this Court until after it made the

---

[2] *See, e.g., In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (disregarding plaintiff's empty offices); *In re Verizon Bus. Network Services Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (same); *In re Apple Inc.*, 374 F. Appx. 997, 999 (Fed. Cir. 2010); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) (same); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) (similar).

1  decision to move its operations to Reno to take advantage of the pro-business climate that exists

2  here.[3]  Robbins Decl. ¶ 19.

3      Google suggests that Unwired Planet filed the present suit too soon after moving to Reno

4  (Doc. # 33 at 7-8), but there is no waiting period that must lapse before a patentee may file a

5  lawsuit in the Courts of its chosen forum.  Merely counting the number of days between the

6  formation of Unwired Planet LLC in Nevada and the filing of this complaint does not make non-

7  controlling Texas venue cases cited by Google relevant to this analysis.  Doc. # 33 at 7-8 *citing*

8  *In re Microsoft Corp.*, 630 F.3d at 1365.  Unlike the *In re Microsoft* plaintiff who created a

9  Texas LLC to hold its patents, Unwired Planet has actually moved its parent company, Unwired

10  Planet, Inc., to Reno, on a permanent basis.  Unwired Planet, Inc. is a publicly traded company,

11  and the facts of its move are a matter of public record.[4]  All files, all employees, all equipment,

12  and all facilities are either in Reno now or will be shortly.  Robbins Decl. ¶¶ 17, 23.

13      While Unwired Planet might not yet have near Google's number of employees, it is a

14  Reno company employing local people and seeking resolution of its disputes in a local forum.

15  This factor weighs against transfer.  *Duramed Pharms., Inc. v. Watson Labs., Inc.*, 2008 WL

16  5232908 at *3 (D. Nev. 2008) (ties to forum factor weighs against transfer when a party was

17  domiciled in Nevada).

18          2.    *Sources of proof are located in Nevada as well as California*

19      Google argues that most of the relevant sources of proof are located in the Northern

20  District of California and that it is unlikely that any relevant evidence will be found in Nevada.

21  Doc. # 33 at 8-9.  This is untrue.  Unwired Planet has extensive physical files that Local Patent

---

22  [3] It is notable that those same Texas Courts, relied on so heavily in Google's motion, are
23  reluctant to transfer cases when the plaintiff's location is not a sham even if the plaintiff moved
    to the forum close in time with the filing of the lawsuit at issue.  *See e.g.*, *Eolas Techs., Inc. v.*
24  *Adobe Sys., Inc. et al.*, 2010 WL 3835762 at *4 (E.D. Tex. Sept. 28, 2010) ("While Eolas's
    relocation is recent, it is not ephemeral. . . . The Court will not create a time-based litmus test for
25  how long a plaintiff must reside in this District before bringing suit here.").  The Federal Circuit
    also refused to grant a writ of mandamus on this same denial of transfer order.  *In re Google Inc.*,
26  412 Fed. Appx. 295 (Fed. Cir. 2011).

27  [4] Google cites to a single SEC filing mistakenly showing Unwired Planet Inc., headquarters
    being located in Redwood City.  Motion at 4; Arroyo Decl. ¶ 15, Ex. 12.  Conspicuously, Google
28  ignores the many other SEC filings showing Unwired Planet Inc.'s relocation to its Reno
    headquarters.  Robbins Decl. ¶ 22, Ex. 55.

1   Rule 16.1-7 requires Unwired Planet to produce related to the conception, reduction to practice,

2   and prosecution of the patents in suit, including inventors' notebooks and prosecution file

3   jackets.  Robbins Decl. ¶ 17.  All told, it is on the order of millions of pages.  *Id.*  All of these

4   documents are in Reno, Nevada.  Robbins Decl. ¶ 23.  While Google again relies on Texas venue

5   cases applying Fifth Circuit law (Doc. # 33 at 9), the actions of Unwired Planet are readily

6   distinguishable.  <u>All</u> of Unwired Planet's files, including prosecution documents relating to

7   several hundred patents and patent applications, contracts, and financial records, are at its

8   Nevada headquarters, not just those relevant to the patents-in-suit.  Robbins Decl. ¶¶ 17, 23.

9   These files were moved simply because Unwired Planet moved its headquarters to Reno, not as a

10   trick to establish venue in this case.

11       The accused products in this case are Google software programs and Google devices that

12   run Google software.  Doc. # 1 at 7-8.  As one of the foremost proponents of cloud storage

13   Google cannot credibly suggest that it has scores of boxes of paper documents that will be

14   necessary evidence in this case.  Yowell Decl. ¶ 5, Ex. 56 at 6-7.  Considering the high tech

15   nature of its business, Google's relevant documentation likely will be stored electronically.  The

16   question of where Google's documents are "kept," then, becomes a non-issue.  *Brackett v. Hilton*

17   *Hotels Corp.*, 2008 WL 2632675 at *7 (N.D. Cal. 2008) (according little weight to this factor

18   "[g]iven technological advances in document storage and retrieval"); *Kannar v. Alticor, Inc.*,

19   2009 WL 975426 at *6 (N.D. Cal. 2009) (stating same).  To the extent Google attempts to argue

20   that the location of its servers or datacenters are important, those facilities are present throughout

21   the world.  Yowell Decl. ¶ 17, Ex. 68.  One location stands out, however; Google's information

22   shows that the entire state of California does not have a single Google data center.  *Id.*

23       Google identifies patent prosecution counsel and the inventors of the patents-in-suit as

24   third parties who may have relevant documents.  Google suggests that some of these documents

25   may be located in Northern California, but Google has not carried its burden of demonstrating

26   "the extent of necessary evidence, whether the evidence is composed of hard copies which would

27   need to be reproduced and moved, or whether the evidence is electronic in form and could be

28   reproduced in physical form at any location."  *Flint v. UGS Corp.*, 2007 WL 4365481 at *4

(N.D. Cal. 2007).  Regardless, Unwired Planet has identified the patent prosecution files and inventor documents within its extensive physical files which would be produced, and these are located at its Reno headquarters.

The only relevant physical evidence identified in this case is Unwired Planet's paper files in its Reno headquarters.  Google has not identified any relevant physical evidence that is present only in California.[5]  The production of electronically stored information will be the same, and cost the same, whether this case is in Nevada or California.  However, this logic applies equally to Unwired Planet's own electronic documents, and so this factor weighs only slightly against transfer.  *Multimedia Patent Trust v. Tandberg, Inc.*, 2009 WL 3805302 at *5 (S.D. Cal. 2009).

### 3. *Google has failed to identify any witness for which compulsory process would likely be required*

Google may not simply point to individuals that have varying degrees of importance and proclaim the availability of compulsory process as a critical factor.  Doc. # 33 at 10-11.  In fact, Google has identified only three categories of potential third-party witnesses: inventors, Openwave Mobility and Openwave Messaging employees, and patent prosecution counsel.  *Id.* Google's showing falls short in two key areas.

First, Google has failed to show that any of these witnesses will likely testify at trial. *Deirmenjian v. Deutsche Bank, A.G.*, 2006 WL 4749756 (C.D. Cal. 2006) ("In considering the location and availability of evidence and witnesses, "[t]he crucial focus is not on 'the number of witnesses or quantity of evidence in each locale,' but rather 'the materiality and importance of the anticipated [evidence and] witnesses' testimony....'" Once this is assessed, the court must "determine[ ] their accessibility and convenience to the forum.'") *quoting Tuazon v. R.J.*

---

[5] Even if Google were able to identify evidence that is only located in California because of the proximity of the Northern District of California to the District of Nevada, Google's claims of inconvenience ring hollow.  *Leesona Corp. v. Duplan Corp.,* 317 F. Supp. 290, 300 (D.R.I. 1970) ("I find that the additional two hundred miles which defendants' witnesses will have to travel, if trial of this case remains in Rhode Island, is insignificant in terms of additional expense, cost, or time, and therefore lends no support to the motion to transfer.").  *See also Lee v. Ohio Casualty Ins. Co.*, 445 F. Supp. 189, 192 (D. Del. 1978) ("In light of the relatively short distance between Wilmington and Baltimore (approximately sixty miles), it is unlikely that any of the parties or witnesses, most of whom are located in Maryland, would be unduly burdened by the need to travel the additional distance to Wilmington.").

1  *Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006) (internal citations omitted).  Google

2  states that an inventor's testimony is "relevant" (Doc. # 33 at 10-11), but that is insufficient.

3  There are ten patents-in-suit with a total of twenty inventors.  Much of the testimony of these

4  inventors will likely be of limited, if any, materiality and significance and many of their

5  testimony may be cumulative to that of others inventors on the same patent.  In the trial of a case

6  this large and complex, the parties and the Court must focus only on key evidence that goes to

7  critical points.  Google has not identified any individual inventors it intends to actually call at

8  trial.  Doc. # 33 at 10-11.

9          Compounding this omission, Google has failed to recognize that the seven inventors it

10  contends would be subject to compulsory process in Northern California contributed to only four

11  of the ten patents-in-suit.[6]  Doc. # 33 at 10; # 33-2 at 5; Yowell Decl. at ¶ 3.  Thus, whether the

12  case proceeds to trial in this Court or in the Northern District of California, inventors of a

13  substantial majority of the patents-in-suit will not be subject to compulsory process.  Given the

14  relative proximity of Reno and San Francisco, there is no reason to believe – and Google

15  suggests none – that the inventors would be more likely to attend a trial in San Francisco than a

16  trial in Reno.

17          Similarly, it does not appear that any patent prosecution counsel would be a necessary

18  witness at trial.  Patent prosecution counsel are rarely called as witnesses at trial and then only in

19  bench trials that adjudicate allegations of inequitable conduct.  *See, e.g., Paragon Podiatry Lab.,*

20  *Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1193 (Fed. Cir. 1993) (discussing the deposition

21  testimony of a prosecuting patent attorney in connection with an inequitable conduct claim).

22  Google has not alleged inequitable conduct.  *See* Doc. # 28.

23          There is likewise no specific allegation of importance of the current Openwave

24  employees.  Also, approximately two-thirds of those employees don't even live in the United

25  States, and many of those that do live in the United States are outside of California.  Robbins

26  Decl. ¶ 5.  Importantly, none of the employees of the Location product business sold to PLS live

27

28  _____
[6] Mr. Cormia is not included, as his location could not be shown with certainty.

1  in California.  *Id.*  This is significant because the Location product business would include the

2  legacy Openwave products potentially relevant to five out of the ten patents-in-suit.[7]  Google

3  provides no basis for the Court to conclude that they will be necessary witnesses at trial.

4      Second, Google has failed to even allege that any of these witnesses would not willingly

5  testify.  The availability of compulsory process is irrelevant without an unwilling witness, and

6  Google has not identified a single witness for which compulsory process appears necessary.

7  *Grubs v. Consol. Freightways, Inc.*, 189 F. Supp. 404, 410 (D. Mont. 1960) (discounting

8  compulsory process factor where movant did not show any witnesses were unwilling to testify).

9  *See also Kawamura v. Boyd Gaming Corp.*, 2012 WL 6047728 (D. Haw. 2012); *Houk v.*

10  *Kimberly-Clark Corp.*, 613 F. Supp. 923, 931 (W.D. Mo. 1985) (discounting compulsory process

11  argument where defendant "merely assumes that the witnesses in question would not appear

12  voluntarily at a trial").  This is especially important where, as here, identified witnesses are

13  former employees, as it is reasonable to assume that they would testify willingly.  *Critikon, Inc.*

14  *v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 967 (D. Del. 1993).

15      Most, if not all, of the witnesses identified will be deposed or interviewed at locations

16  convenient to them, the occurrence and cost of which is not affected by this case being in Nevada

17  instead of California.  Of those, likely only a small subset, if any, will be selected by each party

18  to be called at trial.  Google has not provided this Court with any evidence, or even an allegation,

19  that shows compulsory process in California will be necessary for any individual witness that

20  either side intends to actually call at trial.  This factor is therefore neutral to transfer.  *Duramed*

21  *Pharms.*, 2008 WL 5232908 at *3 (compulsory process factor was neutral when movant did not

22  identify any witnesses who were unwilling to testify absent a court order); *Grubs*, 189 F. Supp.

23  at 410 (compulsory process factor did not weigh in favor of transfer where movant failed to show

24  importance of identified witnesses' testimony or that they were likely to be unwilling witnesses).

25

26

27

28  [7] The '016, '087, '205, '647, and '752 patents.

1

#### 4. *Litigation would be less expensive in Nevada than California*

2    As noted above, Google fails to consider the materiality and importance of the witnesses

3    it claims will be inconvenienced.[8]  *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 35-36 (9th Cir.

4    1984).  Without even identifying who it expects to testify at trial, Google cannot show that trial

5    in Nevada will be more expensive or inconvenient than one in California.

6    Further, Google has not shown that California is clearly more convenient for the third-

7    party witnesses it identifies, even assuming the unlikely event that they all testify at trial.  While

8    Google provides a chart listing the distance from each of the inventors to the Reno Courthouse

9    (Doc. # 33-2 ¶ 20), it neglected to do the same for the San Francisco Courthouse.  Unwired

10    Planet has corrected Google's omission, and the comparison is revealing.  Yowell Decl. ¶ 18, Ex.

11    69.  When considering only the eleven U.S.-based inventors[9] California is only marginally more

12    convenient, with average distances from the inventors' residences being 393 miles to Reno

13    versus 344 miles to San Francisco.  *Id.*  When the eight foreign-based inventors are considered,

14    every one of which is located closer to Reno than San Francisco, it is increasingly apparent that

15    Google has failed to show that California is clearly the more convenient forum.

16    What is known is that each party will have several of its employees testify at trial.  For

17    example, Unwired Planet will have at least Mr. Robbins, Mr. Mendez, Mr. Mulica, and Mr.

18    Vetter testify at trial.   Yowell Decl. ¶ 4.  While Google complains about the costs of having its

19    employees testify in Nevada, it ignores the fact that these costs will be shifted onto Unwired

20    Planet if this litigation is transferred to California.  Doc. # 33 at 12.  This is inconvenience

21    shifting, and is an inappropriate basis for transfer.  *In re Ferrero Litig.*, 768 F. Supp. 2d 1074,

22    1081 (S.D. Cal. 2011) ("In deciding whether to transfer, the Court must be careful to avoid a

23 ───────────────────

[8] It is important to note that the Ninth Circuit considers this issue, while the Fifth Circuit does

24    not.  *Compare Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001) (district court
should consider degree of materiality and importance of prospective testimony, and not simply

25    the number of witnesses) *with In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009)
(finding district court did not need to consider importance of identified witnesses' testimony

26    under Fifth Circuit law).

[9] The twelfth U.S.-based inventor, Mr. Neil Cormia, could not be reliably located.  Doc. # 33-2

27    at ¶ 34.  It appears Mr. Cormia lives either in Oregon or California.  Distances to both locations
have been included on Unwired Planet's chart, but he has been excluded from the total and

28    average calculations due to the uncertainty.

transfer that "would merely shift rather than eliminate" the inconvenience of costs. . . .  In this case, transfer would decrease Defendant's litigation costs, but it might increase Plaintiffs' costs to the same extent.") (internal citations omitted); *Decker Coal*, 805 F.2d at 843 (finding that conveniences were "shifted" rather than "eliminated" when pertinent witnesses resided in both the transferee and transferor districts).

The respective costs of travel in Nevada and California are in stark contrast to each other. While the actual transportation (by plane, car, or train) is identical in either direction, it comes as no surprise that food, services, and lodging costs are all dramatically lower in Nevada.  Google could likely have two or three witnesses testify in Reno, Nevada for the same amount it would cost Unwired Planet to have a single witness testify in a Bay Area District Court.  *Id.*  Moreover, Google's $50 billion per-year in revenues makes it much better positioned to absorb these travel costs.  *Kannar*, 2009 WL 975426 at *5 (N.D. Cal. 2009) (the court should consider the parties' relative abilities to absorb litigation costs in analyzing transfer); *Healthtrac Corp. v. Caterpillar, Inc.*, 2005 WL 2811765 at *4 (N.D. Cal. 2005) (stating same); *Royal Queentex Enters. v. Sara Lee Corp.*, 2000 WL 246599 at *6 (N.D. Cal. 2000) (stating same).

Keeping this case in Nevada will result in at most minimal inconvenience to third-party witnesses, will result in less overall costs, and those costs will be placed on the entity that is most easily able to bear them.  This factor weighs against transfer.

> 5.     *Unwired Planet's choice to file in its home forum is entitled to substantial deference*

Unwired Planet has chosen and established Nevada as its residence and domicile. Unwired Planet's decision to bring suit in its home forum is entitled to substantial deference. *Galli v. Travelhost, Inc.*, 603 F.Supp. 1260, 1262 (D. Nev. 1985) ("[T]he citizen plaintiff's choice of a proper forum is entitled to 'paramount consideration.'"); *Clopay Corp. v. Newell Companies, Inc.*, 527 F. Supp. 733, 736 (D. Del. 1981) ("The preference in favor of plaintiffs' choice of forum is not adopted blindly or without reason. Courts expect that plaintiffs' choices will generally reflect their rational and legitimate concerns, including convenience to themselves

1    and their witnesses."); *Warfield*, 346 F. Supp. 2d at 1044 ("Plaintiff's choice of his home forum

2    is to be given 'substantial deference.'") (internal citation omitted).

3            While this Court also considers where the "center of gravity" of the accused activity

4    occurs, that inquiry does not displace or eliminate the deference given to plaintiff's proper choice

5    of forum.  *Duramed*, 2008 WL 5232908 at *3 ("[Plaintiff] chose to file this case in Nevada.

6    While this fact does not carry the same weight it would be afforded if the operative facts arose

7    here, it is still entitled to substantial consideration.")  Like the defendant in *Duramed*, whose

8    motion to transfer this Court denied, Google has offered only a naked allegation that the

9    research, development, marketing, sales, finance, and pricing of the many accused products were

10   "led" by personnel in California.  Doc. # 33 at 13; Doc. # 33-1 ¶¶ 6, 8.  There has been no

11   identification of key personnel on these teams by Google; no explanation of what level of

12   involvement these individuals who "led" these teams had with the accused products; and not

13   even an allegation that the roughly two-thirds of Google personnel that do not work in Mountain

14   View were not substantively involved with the accused products.  *See* Doc. # 33-1 ¶¶ 5-9.

15           This case does not present the "limited sales activity" that was the only connection to the

16   forum in *Osteopath, Inc. v. GenSci Regeneration Scis., Inc.*, 6 F. Supp. 2d 349, 357-58 (D.N.J.

17   1998), cited by Google.  Doc. # 33 at 13.  As discussed above, Google conducts testing and

18   marketing throughout the country.  This includes Nevada, where Google has extensively tested

19   its driverless cars with the accused Google Maps products as well as numerous smartphones that

20   use the accused Android operating system.  These products were announced and marketed to the

21   public right here in Nevada.  Moreover, there are a large number of people in Reno that use

22   Google's accused products on a daily basis.  With a global presence as broad and pervasive as

23   Google's and a local employer as a plaintiff, it can hardly be claimed that California has any

24   more of a local interest in this action than Nevada does.

25           Nevada has at least as much of a local interest in this case as California, and Unwired

26   Planet's choice of its home forum is entitled to substantial deference.  This factor weighs

27   strongly against transfer.

28

6.      *The public interest factors weigh against transfer*

Google treats this factor as an opportunity to repeat its previous arguments.  Doc. # 33 at 14-15.  But in fact, as we have shown, Unwired Planet has very little that ties it to California beyond the history of its predecessor, and Google has more ties to Nevada than it admits.  While Google tries to frame this case as one Silicon Valley company suing another, in reality this is a Reno company suing a global company.  Google and Unwired Planet may both have started their lives in Silicon Valley, but that was then.  Today, Unwired Planet is in Reno and Google is everywhere in the world with "more than 70 offices in more than 40 countries around the globe." Yowell Decl. ¶ 6, Ex. 57.  For example, Google recently announced its $1 billion investment in a new London headquarters.   Yowell Decl. ¶ 19, Ex. 70.

There is also reason to believe that keeping this case in Nevada will result in judicial economy.  Nevada is a participant in the Patent Pilot Program, which gives the option to this Court to transfer this case to one of the designated judges.  Should this Court choose to transfer this case, it will most likely be assigned to the only designated judge in Reno, Chief Judge Jones. Judge Jones is currently presiding over Unwired Planet's case against Apple on different, but highly related patents, with very similar infringing technology.  *See* Case No. 3:12-cv-00505-RCJ-VPC, Doc. # 1.  Should these two cases end up before the same judge, the technological understanding and familiarity gained from one case will result in substantial judicial economy in the other.  *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are similarly pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

Google's use of docket congestion statistics is misleading.  Doc. # 33 at 15-16.  While California might have slightly faster disposition times generally across all civil cases, this is not a general civil case.  This is a patent case, and it is Nevada that is faster at resolving patent cases than California.  Mark A. Lemley, *Where to File Your Patent Case*, 38 AIPLA Q.J. 401, 413-15 (2010) (Nevada time to resolution in patent cases: 1.09 years; California time to resolution in

patent cases:  1.28 years).  *See also id.* at 416-18 (Nevada time to trial in patent cases: 2.39 years; California time to trial in patent cases: 2.92 years).

Nevada has an able jury pool, a local interest in this litigation, and a judiciary that resolves patent cases faster than in California.  This factor weighs against transfer.

### 7.    Other factors

Unwired Planet agrees that the other enunciated factors are not relevant in this case and are therefore neutral.

## IV.    CONCLUSION

Unwired Planet has filed this action in its home forum of Reno, Nevada.  The majority of the factors are neutral or weigh against transfer (and some strongly against transfer).  Google has failed to demonstrate that the Northern District of California is a more convenient forum, and instead seeks only to improperly shift the inconvenience from itself to Unwired Planet.  Google's Motion should be denied.

1   Dated:   February 4, 2013.                Respectfully submitted,

2                                             WATSON ROUNDS

3

4                                             _____

5                                             Michael D. Rounds
                                              Nevada State Bar No. 4734
6                                             mrounds@watsonrounds.com
                                              Adam K. Yowell
7                                             Nevada State Bar No. 11748
                                              ayowell@watsonrounds.com
8                                             WATSON ROUNDS
                                              5371 Kietzke Lane
9                                             Reno, Nevada 89511
                                              Telephone: (775) 324-4100
10                                            Fax: (775) 333-8171

11                                            Theodore Stevenson III (*pro hac vice*)
                                              Texas State Bar No. 19196650
12                                            tstevenson@mckoolsmith.com
                                              MCKOOL SMITH, P.C.
13                                            300 Crescent Court, Suite 1500
                                              Dallas, Texas 75201
14                                            Telephone: (214) 978-4000
                                              Fax: (214) 978-4044
15
                                              Kevin Burgess (*pro hac vice*)
16                                            Texas State Bar NO. 24006927
                                              kburgess@mckoolsmith.com
17                                            Pierre Hubert (*pro hac vice*)
                                              Texas State Bar No. 24002317
18                                            phubert@mckoolsmith.com
                                              MCKOOL SMITH, P.C.
19                                            300 W. 6th St., Suite 1700
                                              Austin, Texas 78701
20                                            Telephone: (512) 692-8700
                                              Fax: (512) 692-8744
21
                                              ***ATTORNEYS FOR PLAINTIFF***
22                                            ***UNWIRED PLANET LLC***

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of Watson Rounds, and that on this date a true and correct copy of the foregoing document, **UNWIRED PLANET'S OPPOSITION TO GOOGLE'S MOTION TO TRANSFER**, as well as the accompanying declarations and exhibits, will be served upon counsel of record via electronic mail through the United States District Court's CM/ECF system.


Dated:  February 4, 2013                     /s/ Merrilyn Marsh
                                             An Employee of Watson Rounds