UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNWIRED PLANET LLC,<br><br>                Plaintiff,<br>    v.<br><br>GOOGLE INC.,<br><br>                Defendant, | Case No. 3:12-cv-00504-MMD-VPC<br><br>ORDER<br><br>(Def.'s Motion to Transfer Venue<br>– dkt. no. 33;<br>Def's Motion for Leave to File Supplement<br>– dkt. no. 68) |

**I.    SUMMARY**

Before the Court is Defendant Google Inc.'s ("Google") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). (Dkt. no. 33.) Defendant seeks to have the case transferred to the Northern District of California. Both parties have requested that the Court consider additional briefing on the Motion. Plaintiff Unwired Planet LLC ("Unwired Planet") filed a Sur-Reply (dkt. no. 66) and Google filed a Motion for Leave to Supplement its Motion (dkt. no. 68) and a Supplement (dkt. no. 69). The Court has considered all filings, including these supplements, and for the reasons discussed below, the Motion is denied.

## II.     BACKGROUND

### A.    Facts

Plaintiff Unwired Planet is a pioneer of the mobile internet.[1] (*See* dkt. no. 1 at 3.) Since its inception in 1994, Unwired Planet has been headquartered in the Northern District of California. (*See* dkt. no. 33 at 3.) On September 13, 2012, six days before this lawsuit was filed, Unwired Planet, Inc. formed a limited liability company, Unwired Planet LLC, in Nevada. (*See id.* at 4.) On September 19, 2012, the same day that Unwired Planet filed this litigation, Unwired Planet announced that it planned to move its headquarters to Reno, Nevada. (*Id.*)

Unwired Planet asserts that it was motivated to move its headquarters to Reno for primarily financial reasons. (*See* dkt. no. 40 at 2–3.) Unwired Planet states that its profits slowly eroded as competitors entered the market and thus it sold some of its product divisions to other companies. (*See id.* at 2.) The surviving Unwired Planet entity retained the company's patent portfolio "for the sole purpose of licensing its ground-breaking inventions to the infringing companies that now dominate the marketplace." (*Id.*) Since its move, Unwired Planet has established a permanent headquarters in Reno and has created seven new positions for Reno residents, representing 70% of the total company's employees. (*See id.* at 4–5.) Its newly-hired Chief Financial Officer and Chief Administrative Officer is a long-time Reno resident who works out of the new Reno headquarters. (*See id.* at 4.) Unwired Planet states that it is operated from Reno on a day-to-day basis. (*See id.* at 5.)

Google makes, uses, imports, sells and offers for sale various systems and services, servers, and mobile devices. (*See* dkt. no. 1 at 3.) Google is headquartered in the Northern District of California. (*See* dkt. no. 33 at 2.) Google does not have offices, data centers, or full-time employees within the State of Nevada. (*See id.* at 2–3.)

---

[1] Unwired Planet has had a number of names, but it is the current owner of all patents-in-suit. (*See* dkt no. 40 at 1.)

2

**B.     Procedure**

Unwired Planet filed its Complaint on September 19, 2012, alleging that Google has infringed upon ten patents under 35 U.S.C. § 271. (Dkt. no. 1.) Google answered and asserted counterclaims. (Dkt. no. 28.) Google subsequently filed its Motion to Transfer, seeking to transfer venue to the Northern District of California.

**III.   MOTION TO TRANSFER VENUE**

**A. Legal Standard**

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice a district court may transfer any civil action to any other district or division where it might have been brought." *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005). "The purpose of this section is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id.* (citations and quotation marks omitted).

Motions to transfer venue are adjudicated based on "an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation marks omitted). "The statute has two requirements on its face: (1) that the district to which defendants seek to have the action transferred is one in which the action might have been brought, and (2) that the transfer be for the convenience of parties and witnesses, and in the interest of justice." *Amazon*, 404 F. Supp. 2d at 1259 (citation and quotation marks omitted).  The burden of proof is on the moving party. *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1109 (C.D. Cal. 2007).

Further, "[a] motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones*, 211 F.3d at 498.  "For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective

parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id.* at 498–99.

### B. Analysis

The parties do not dispute that this case could have been filed in the Northern District of California. Because Google is headquartered in the Northern District of California, venue would be proper there. *See* 28 U.S.C. § 1391(b)(1). The remaining issues are whether transferring this case would better convenience the parties and witnesses and whether transfer serves the interest of justice.

#### 1. Familiarity with the relevant law

The Complaint is brought under federal patent law. When a case raises questions of federal law, any federal district court is equally capable of hearing and deciding those questions. *See Dealtime.com v. McNulty*, 123 F. Supp. 2d 750, 757 (S.D.N.Y. 2000). This factor does not favor transfer.

#### 2. Plaintiff's choice of forum

A plaintiff's choice of forum generally receives deference in a motion to transfer venue. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). "In evaluating a § 1404(a) motion, the citizen plaintiff's choice of a proper forum is entitled to paramount consideration . . . ." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (citations and quotation marks omitted). Unwired Planet is a Nevada limited liability company and is currently headquartered in Reno. "Generally, the fact that a plaintiff has filed suit in the district where it resides is a sufficient connection to accord its choice of forum deference."[2] *Amini Innovation*, 497 F. Supp. 2d at 1110.

///

---

[2] A corporation is a citizen both of the state in which it is incorporated and where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

4

Google argues that Plaintiff's choice of forum should not be given great deference because the center of activity for the case is outside of the selected forum. (*See* dkt. no. 33 at 12.) "[T]he center of the accused activity is the district in which the defendant is alleged to have developed, tested, researched, produced, marketed, and made sales decisions concerning the accused product." *Kannar v. Alticor, Inc.*, No. 08-5505, 2009 WL 975426 at *4 (N.D. Cal. Apr. 9, 2009). The parties do not dispute that the center of gravity of the accused activity in this case is in the Northern District of California. In a patent case, courts may give less deference to the plaintiff's preference when the center of activity is outside the chosen forum. *See Sorensen v. Daimler Chrysler AG*, No. 02-4752, 2003 WL 1888866 (N.D. Cal. Apr. 11, 2003). However, even where the operative facts arose outside the chosen forum, the court will still give substantial consideration and weight to the plaintiff's preference. *Duramed Pharm., Inc. v. Watson Lab.*, Inc., No. 3:08-00116, 2008 WL 5232908 at *3 (D. Nev. Dec. 12, 2008).

Google further argues that Unwired Planet's preference should not be given any deference because its move to Reno was simply a tactic for gaining access to a preferred venue, as evidenced by the timing of the lawsuit. (*See* dkt. no. 64 at 3.) The Court does not find that there is adequate evidence to support this allegation, particularly given Unwired Planet's statement that its reasons for its move to Reno include the fact that Nevada has no corporate income tax and no personal income tax, a low cost of living, and friendly laws and regulations. (*See* dkt. no. 33 at 7.) Moreover, the fact that Unwired Planet did establish physical offices in Reno and retained Reno residents undermines any claim that the move was made solely for forum shopping purposes.

The Court finds that Unwired Planet's preference for Nevada, as a business residing in Nevada, requires deference, although its consideration is tempered by the fact that the center of activity in the case occurred outside of the selected forum. As a result, this factor weighs slightly against transfer.

///

### 3. Parties' contacts with the District of Nevada and contacts relating to Plaintiff's cause of action in Nevada

Google states that it has no connection to the District of Nevada and that it has no offices, data centers, or full-time employees in Nevada. (*See* dkt. no. 33 at 2–3.) Unwired Planet asserts, however, that Google conducts some business in Nevada, such as its tests of driverless car fleets and its participation at the Consumer Electronics Show in Las Vegas. (*See* dkt. no. 40 at 10–11.)

Unwired Planet's only office is in Reno, Nevada. (*See* dkt. no. 40 at 7.) Since filing the Complaint, Unwired Planet had continued to develop its business in Reno. It moved to its permanent Reno headquarters, hired a Reno-based CFO, and staffed its office with long-term, full-time employees that were hired locally. (*Id.*) While the Court focuses on the conditions at the time of filing, it is not precluded from considering facts that developed after the Complaint was filed and the goal of determining convenience and efficiency supports its consideration.

While transfer would increase the convenience for Google, it would reduce the convenience for Unwired Planet. This factor, therefore, is neutral.

### 4. Convenience of witnesses

In considering the convenience of a forum for witnesses, the Court gives more weight to the convenience of non-party witnesses than party witnesses. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) ("Importantly, '[w]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor.'") (*citing Aquatic Amusement Assoc., Ltd., v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990)). The Court must consider not only the number and locations of witnesses, but also the importance of each witness. *Id.* at 1160–62.

Google identifies three groups of non-party potential witnesses: patent inventors, attorneys who previously prosecuted the patents-in-suit, and former employees of Unwired Planet. (*See* dkt. no. 33 at 4–5.) First, Google asserts that the Northern District

of California would be more convenient for the twenty unique inventors of the ten patents at issue in the case. It claims that six of the inventors live and work in California, five of whom are in the Northern District, and no inventor resides in Nevada. The rest of the inventors are in Washington, Oregon, Colorado, Canada, the United Kingdom, and Germany. Second, the patents-in-suits were prosecuted, Google states, by attorneys from law offices in the Northern District of California. Third, Google explains that many former employees of Unwired Planet reside in the Northern District of California. (*See id.*)

Despite these contentions, the comparative convenience of the Northern District is not straightforward. Unwired Planet states that a Northern District of California courthouse is only marginally more convenient than the Reno courthouse. It explains that the average distance from the eleven domestic inventors' residences to the San Francisco courthouse is 344 miles as compared to 393 miles to Reno. (*See* dkt. no 40 at 14.) Unwired Planet also points out that each of the eight foreign-based inventors are all located closer to Reno, (*id.*), although only marginally.  However, the Court notes that because of easy access to commercial flights from San Francisco International Airport, it would require less time for these foreign-based inventors to travel to the Northern District of California than to Reno.

Additionally, Google had failed to demonstrate the importance of their stated witnesses. They simply provide a laundry list of potential witnesses who are in or marginally closer to the Northern District of California.

Despite these deficiencies, it is uncontested that there is a long list of potential third party witnesses in California and none in Reno. As a result, this factor weighs slightly in favor of transfer.

### 5. Availability of compulsory process to compel unwilling witnesses

Google lists a number of potential witnesses who reside in California and states that they would be subject to compulsory process if the case were transferred to the

7

Northern District of California. (*See* dkt. no. 33 at 9–10.) None of the potential witnesses Google lists resides in Nevada and, thus, none would be subject to compulsory service if the case remains in Nevada. It is undisputed that this Court lacks authority to subpoena any witness in California living more than 100 miles away to appear at trial in Nevada. *See* Fed. R. Civ. P. 45(c)(3)(A).

Unwired Planet argues that compulsory process may not be relevant in this case. It asserts that Google has not demonstrated that the non-party witnesses Google lists will provide essential, rather than simply relevant, testimony at trial. (*See* dkt. no 40 at 12.) Additionally, Unwired Planet states that Google has failed to allege that these non-party witnesses will not willingly testify. (*Id.* at 13.)

In order for compulsory process to weigh in favor of transfer, it is not sufficient for Google to assert that it has potential witnesses in California who are not subject to compulsory process in Nevada. Google has failed to demonstrate that the potential witnesses it lists are unwilling to travel and that their testimony will be essential at trial. *See Synopsys, Inc. v. Mentor Graphics Corp.*, No. 12-5025, 2013 WL 1365946, at *7 (N.D. Cal. Apr. 3, 2013) (finding that compulsory process factor was neutral when moving party failed to assert non-party's unwillingness to travel and his necessity at trial). In describing the relevancy of its potential witnesses, Google simply states that a number of individuals would be subject to compulsory process in California[3] and that "[t]he testimony of these witnesses will be relevant to a number of critical issues in the litigation, including at least conception and reduction to practice of the inventions embodied in the patents, the prosecution of the patents, the scope of the claims, and invalidity." (Dkt. no. 33 at 10.) It is not adequate to make a conclusory statement that a large number of potential witnesses may have relevant testimony.

---

[3]Google states that if the case were transferred, "at least the following witnesses could be subject to compulsory process: (1) the six inventors residing within California, (2) the employees of Openwave Mobility, Openwave Messaging, and Persistent System's Santa Clara office, and (3) law firms who prosecuted the Patents-in-Suit and four attorneys who prosecuted the patents." (Dkt no. 33 at 10.)

8

This factor, therefore, does not weigh in favor of transfer.

### 6. Ease of access to sources of proof

Google argues that most sources of proof it intends to rely on are in the Northern District of California. (*See* dkt. no. 33 at 8–9.) Google asserts that its business documents and records relating to the research, design, and development of many accused products are physically present or electronically accessible in its headquarters in the Northern District of California. (*Id.*) Google also notes that sources of proof related to the patents-in-suit are located in the Northern District of California. (*Id.* at 9).

Google has not adequately shown, however, why these documents are difficult or costly to transport. *Cf. Kida W. Holdings, LLC v. Mercedes-Benz of Laguna Niguel*, No. 3:07-CV-00523, 2008 WL 217043, at *4 (D. Nev. Jan. 18, 2008) ("[M]uch of the evidence Defendants cite is easily transported to the District of Nevada and Defendants have not shown that they would be significantly burdened by transporting the documents.") Indeed, as Unwired Planet points out, Google has access to resources, such as cloud storage, that could make transportation of paper files unnecessary. (*See* dkt. no. 40 at 10.) Additionally, Unwired Planet asserts that all of its files, contracts, and financial records are in Nevada as a result of its decision to move its headquarters to Reno. (*See id.* at 10.) It states that it has millions of pages of documents in Reno that it is required to produce. (*See id.* at 9–10).

In light of the foregoing, this factor does not weigh in favor of transfer.

### 7. Cost differential of litigating in the two potential forums

Google states that several third-party witnesses reside in the Northern District of California and that the expense for these witnesses to travel to Nevada makes the latter the more expensive forum. (*See* dkt. no. 33 at 11.) But, it is unclear how many third party witnesses would be needed at trial and, as discussed above, the average distance differential, even for witnesses traveling from the Northern District of California, is marginal. (*See* dkt. 40 at 14.)

///

In regards to party witnesses, one side would have to travel regardless of the venue given that Google has no full-time employees in Reno (*see* dkt. no. 33 at 2–3), and the employees Unwired Planet plans to have testify are all located in Reno (*see* dkt no. 40 at 14).

Finally, as Unwired Planet asserts, the respective travel costs, such as food, services, and lodging, in Nevada are much lower than in California. (*Id.* at 15.)

This factor, therefore, favors neither party.

### 8. Location where the relevant agreements were negotiated and executed

Neither party alleges facts relevant to this factor. It is, therefore, inconclusive.

### 9. The Interests of Justice

"The 'interest[s] of justice' include such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Financial, Inc. v. Modwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). First, neither party has identified any ongoing, related litigation in any other forum. Second, the speed differential between the two courts is not significant enough to weigh in favor of transfer. Third, citizens of Nevada do have an interest in this case as Unwired Planet is headquartered in Nevada. The interests of justice, therefore, weigh against transfer.

### 10. Balancing the Factors

On balance, the *Jones* factors disfavor transferring this case to the Northern District of California. Most of the Jones factors do not weigh in favor of either party. While the third-party witnesses listed are in California, Nevada is Plaintiff's preferred choice of forum, is where Plaintiff's headquarters is now located, and is equally competent and efficient for adjudication.

Although it would be more convenient for Google to litigate in the Northern District of California, it would be less convenient for Unwired Planet. Section 1404(a) "provides for transfer to a more convenient forum, not to a forum likely to prove equally

convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *K-Tel Int'l, Inc. v. Tristar Prods., Inc.*, 169 F. Supp. 2d 1033, 1045 (D. Minn. 2001).

Google has failed to meet its burden to show that the Northern District of California is the more appropriate forum. Defendant's Motion to Transfer Venue is therefore denied.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

IT IS THEREFORE ORDERED that Defendant's Motion for Leave to File Supplement to Google Inc.'s Motion to Transfer (dkt. no. 68) is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Transfer Venue (dkt. no. 33) is DENIED.

DATED THIS 19th day of August 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE