Theodore Stevenson III (*pro hac vice*)
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Fax: (214) 978-4044

Kevin Burgess (*pro hac vice*)
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Pierre Hubert (*pro hac vice*)
Texas State Bar No. 24002317
phubert@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th St., Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Fax: (512) 692-8744

Michael D. Rounds
Nevada State Bar No. 4734
mrounds@watsonrounds.com
Adam K. Yowell
Nevada State Bar No. 11748
ayowell@watsonrounds.com
WATSON ROUNDS
5371 Kietzke Lane
Reno, Nevada 89511-2083
Telephone: (775) 324-4100
Fax: (775) 333-8171
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNWIRED PLANET LLC, a Nevada limited liability company,<br><br>Plaintiff,<br>v.<br>GOOGLE INC., a California corporation,<br><br>Defendant. | Case No. 3:12-cv-00504-MMD-VPC<br><br>**UNWIRED PLANET LLC'S RESPONSE TO GOOGLE'S MOTION FOR A PROTECTIVE ORDER PROHIBITING DISCOVERY REGARDING UNACCUSED PRODUCTS** |

**I.     INTRODUCTION**

Without meeting and conferring with Unwired Planet, and in fact without even informing Unwired Planet that it planned to do so, Google filed this motion for protective order on the last day of fact discovery. Google's motion is meritless, contradicting established Federal Circuit case law holding that any benefits to the defendant from its infringement must be considered as part of the reasonable royalty analysis. Instead of citing cases dealing with a reasonable royalty, Google's motion relies in its entirety on cases dealing with a "lost profits" theory of damages—a theory that is not at issue here, and that focuses on the plaintiff's products, not the defendant's.

Google's motion is an attempt to shut down discovery relating to the billions of dollars in financial benefits it receives by giving away the infringing products for free, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Google's motion for a protective order has no basis in the law, and contradicts the basic principles of permitting broad discovery. In fact, the Northern District of California recently rejected a defendant's efforts to obtain a protective order relating to the exact same type of financial evidence relating to non-accused products using the exact same arguments Google makes here. *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-cv-2226-SI (KAW), 2013 U.S. Dist. LEXIS 26289 (N.D. Cal. Feb. 26, 2013). As that Court held, arguments about discovery into financial information for non-accused products that benefit from infringement go to "admissibility, not discoverability" and are not a valid basis for a protective order. *Id.* at *17.

Google's motion is not about the rules of discovery, and it is not about avoiding the "burden" of producing basic data about how Google makes money from the infringing products. Rather, Google's motion is about prematurely shutting down discovery into a topic that Google does not want explored: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1
2
3 ███████████████████████████████████████████████ The *Georgia-Pacific* factors make
4 clear that any evidence of the value of the infringing use must be considered. The Federal Circuit
5 has interpreted this on multiple occasions to allow the consideration of indirect benefits,
6 including such benefits to the infringer as improvements in their advertising campaigns,
7 reductions in their lawsuit expenses due to safer products, sales of non-infringing wood products
8 that were cut with saws using infringing protective guards, or reductions in expenses that are
9 entirely unrelated to the products accused of infringement. Because Google's motion contradicts
10 the basic principles of discovery and multiple binding Federal Circuit cases that have addressed
11 this issue in the reasonable royalty context, it should be denied.

12 **II.    GOOGLE'S MOTION SHOULD BE REJECTED ON ITS FACE AS LEGALLY**
13 **INSUFFICIENT TO OBTAIN A PROTECTIVE ORDER**

14 Litigants may obtain discovery regarding "any nonprivileged matter that is relevant to
15 any party's claim or defense." FED. R. CIV. P. 26(b)(1). "Relevant information need not be
16 admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of
17 admissible evidence." *Id.* "The relevance standard is one that is necessarily broad in scope so as
18 to 'encompass any matter that bears on, or that reasonably could lead to other matter that could
19 bear on, any issue that is or may be in the case.'" *Sargant v. HG Staffing, LLC*, No. 3:13-cv-
20 00453-LRH-WGC, 2014 U.S. Dist. LEXIS 56580, at *6 (D. Nev. Apr. 23, 2014).

21 In the Ninth Circuit, a party seeking a protective order "bears the burden, for each
22 particular document it seeks to protect, of showing that specific prejudice or harm will result if
23 no protective order is granted." *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130-31
24 (9th Cir. 2003). "Broad allegations of harm, unsubstantiated by specific examples or articulated
25 reasoning, do not satisfy the Rule 26(c) test." *Id.* A motion for protective order should be
26 supported by affidavits where possible. *Id.*

27
28

Google has submitted no affidavits, has provided no concrete examples of the alleged burden it would face from preparing 30(b)(6) witnesses who are already being scheduled to be deposed on other topics, and has provided no evidence whatsoever that it would be subjected to any burden. Furthermore, Google's motion discusses Unwired Planet's discovery requests generally, rather than on a particularized request-by-request basis as required by the Ninth Circuit. Google has failed entirely to meet its burden of proving that it would be burdened, because it has submitted no proof whatsoever, and its motion should be denied on this basis alone.

### III. GOOGLE PROFITS FROM ITS INFRINGEMENT OF UNWIRED PLANET'S PATENTS █████████████████████████████

█████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████

The closest Google has come to denying Unwired Planet's allegations is to call them, without explanation, a "meritless theory." Dkt. 328 at 1. The reason Google cannot deny the allegations is because they are not theory, but fact. ████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████

Instead, Google contends that Unwired Planet is only entitled to consider the direct revenues from Google Maps, and that Unwired Planet is not entitled to consider any indirect revenues, value, or benefits Google has obtained by infringing. But Google cannot give away an

4

1   infringing product for free, ███████████████████████████████

2   ████████████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████ The discovery

4   that Unwired Planet is seeking is information that Google should have produced long ago—but

5   instead, Google stalled in the hopes that Unwired Planet would not piece together how Google

6   actually makes money from its Google Maps product until after fact discovery closed.

7           A.   ████████████████████████████████████████████████

8                ████████████████████████████████████████

9           Google gives away a number of products for free, including Google Maps. But it does not

10  do so out of the goodness of its heart. █████████████████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14        ██████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ██

22          ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28

1 ▉
2 ▉
3 ▉
4 ▉
5 ▉
6 ▉
7 ▉
8 ▉
9 ▉
10 ▉
11 ▉
12 ▉
13 ▉
14 ▉
15 ▉
16 ▉
17 ▉
18 ▉
19 ▉
20 ▉
21 ▉
22 ▉

### B. The accused zoom functionality is important to Google Maps, such that Google's users would not use the product without it.

There is no dispute that the accused functionality of Google Maps is extremely important to that product. The functionality accused of infringement includes the ability to zoom in and out of a map on a mobile device, ▉

1 ▮

2 ▮

3 ▮

4 ▮

5 ▮ Google does not

6 deny the importance of the ability to zoom in and out of a Map to its users, many of whom would

7 not use it without that infringing functionality, and Google further does not deny that their use of

8 the product is crucial to ▮

9     C. ▮

10 ▮

11     Even aside from the basic importance to Maps of the infringing "zoom" functionality, ▮

12 ▮

13 ▮

14 ▮

15 ▮

16 ▮

17 ▮

18 ▮

19 ▮

20 ▮

21 ▮

22 ▮

23 ▮

24 ▮

25 ▮

26 ▮

27 ▮

28

██████████████████████████████████████

██████████████████████████████

## IV. GOOGLE'S ARGUMENTS IN FAVOR OF A PROTECTIVE ORDER HAVE BEEN CONSIDERED AND REJECTED BY BOTH THE FEDERAL CIRCUIT AND OTHER DISTRICT COURTS

Google's arguments in favor of a protective order rely in their entirety on inapplicable case law that does not apply to a reasonable royalty analysis—and indeed, which cannot be applied to a reasonable royalty analysis because it would functionally eliminate several of the *Georgia-Pacific* factors. Google fails to cite case law involving a request for a reasonable royalty for good reason: the Federal Circuit has already considered this issue and made clear that **any** benefit or value derived from infringement must be considered in that analysis, even if it is indirect. Similarly, the Northern District of California has rejected Google's arguments in analyzing a highly similar fact pattern. As such, the Court should deny Google's request that it ignore binding Federal Circuit authority in favor of unrelated case law from another type of damages theory.

### A. <u>The cases cited by Google are inapplicable because they all apply only to a "lost profits" theory of damages, and not to a request for a reasonable royalty.</u>

Google cites a number of inapplicable cases, all of which deal with a **lost profits** theory of damages—as opposed to Unwired Planet's request for a reasonable royalty, which is an entirely different type of damages and which is governed by entirely different case law. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) ("the district court awarded lost profits on 1,692 dock levelers that it found Rite-Hite would have sold with the ADL-100 and MDL-55 restraints"); *Am. Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1269 (Fed. Cir. 2008) ("the jury had no basis to conclude that lost profits on collateral sales of passenger seats were due American Seating"); *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1329 (Fed. Cir. 2009) ("Medtronic challenges the jury's award of… lost profits…."); *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1371 ("Juicy Whip argues that the district court

erred by denying it the opportunity to present to the jury its theory of lost profits from lost syrup sales.").

A lost profits analysis asks whether a plaintiff is entitled to recover the profits it has lost from losing sales of **its own products** that were covered by the patents. Such an analysis would focus on Unwired Planet's products and revenues, not Google's. A lost profits analysis is conducted under the four-factor *Panduit* test, and does not involve the *Georgia-Pacific* factors. *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013).

By contrast, a reasonable royalty claim focuses on a variety of different factors involving both parties, designed to answer the question of "what a willing licensor and licensee would bargain for at hypothetical negotiations on the date infringement started." *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2011). "[I]t is settled law that an *infringer's* net profit margin is not the ceiling by which a reasonable royalty is capped." *Id.* (emphasis in original). The analysis of what the parties would have bargained for at the hypothetical negotiations occurs under the *Georgia-Pacific* factors. *Id.* Factor 6 is "[t]he effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales." *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Factor 11 is "[t]he extend to which the infringer has made use of the invention; and **any evidence probative of the value of that use**." *Id.* (emphasis added).

Unwired Planet is seeking a reasonable royalty, which is an entirely separate theory of damages from the lost profits theory that Google's cases address. Each of the cases Google cites turns on an entirely different situation than what is at issue here. In all of the cases cited by Google, the plaintiffs were claiming that they had lost sales of their own patented products—but were also attempted to claim that they had lost profits from selling the plaintiff's related non-patented products. *Rite-Hite,* 56 F.3d 1538 at 1542, 1549; *American Seating*, 514 F.3d at 1265, 1269; *Depuy Spine*, 567 F.3d at 1329; *Juicy Whip*, 382 F.3d at 1372. By contrast, Unwired Planet

1   is asserting that Google derived substantial value from its infringement indirectly, in part by
2   using the infringing functionality ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
3   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
4   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

5   Google acknowledges that all of the cases it cites deal with a lost profits theory of
6   damages, albeit only in a footnote. Dkt. 328 at 9 n. 1. In that footnote, Google cites a single
7   Federal Circuit case involving a reasonable royalty, in which the Federal Circuit reviewed a
8   decision to exclude expert testimony on the "entire market value rule." *Imonex Servs., Inc. v.*
9   *W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1379 (Fed. Cir. 2005). The Court
10  held that the testimony at issue "bore no relation to that rule," and that the Defendant failed to
11  offer evidence that the "patented features were the basis for customer demand." *Id.* at 1380. But
12  this case is of little help to Google, as it expressly acknowledges that a plaintiff may claim
13  damages under the entire market value rule on non-infringing functionality if the "patented
14  features were the basis for customer demand." Even if Google's interpretation of the case law
15  were correct, it cannot preemptively shut down discovery in a case such as this where Unwired
16  Planet is evaluating a theory that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
17  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Google may not like Unwired Planet's theory, and it may not agree
18  with it, but it cannot simply declare it to be false, without citing any evidence, and then demand
19  that Unwired Planet be prohibited from even conducting discovery on the issue.

20      B. <u>The Federal Circuit has expressly rejected Google's arguments in the context of a
21         reasonable royalty analysis, as opposed to a lost profits analysis.</u>

22  The reason that Google failed to cite any cases involving the calculation of a reasonable
23  royalty, as opposed to lost profits, is that Google's argument has already been rejected on
24  multiple occasions by the Federal Circuit in the context of the *Georgia-Pacific* analysis for a
25  reasonable royalty. Contrary to Google's arguments, it is well settled that the finder of fact must
26  consider any ways in which the infringer has benefited from or derived value from the
27  infringement. A company cannot give an infringing product away, as Google does here, and then
28

1  claim that it need not pay a royalty even though ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The Federal Circuit has held that "when considering the amount of a use-based reasonable royalty 'adequate to compensate for the infringement,' 35 U.S.C. § 284, a jury may consider not only the benefit to the patentee in licensing the technology, but also the value of the benefit conferred to the infringer by use of the patented technology." *Powell*, 663 F.3d 1221, 1240 (Fed. Cir. 2011). There, Home Depot was accused of infringing a patent on a protective guard for radial arm saws. *Id.* at 1227-28. Home Depot had installed infringing protective guards on its own radial arm saws that were used by its employees to cut lumber for customers. *Id.* In *Powell*, the Federal Circuit approved of a damages theory that sought damages under the *Georgia-Pacific* analysis based on such benefits to the infringer as the ability to "protect its profits from sales of goods often sold in conjunction with custom-cut lumber" and "cost savings that Home Depot could expect to achieve by reducing claims from employee accidents while using radial arm saws." *Id.* at 1240-41. The damages theory the Federal Circuit approved of in *Powell* included an argument that because the invention made Home Depot's infringing saws less dangerous, its employees would be injured less often and would sue the company less often, indirectly resulting in significant savings in legal expenses because of the infringement. *Id.* Further, the Federal Circuit expressly approved of the plaintiff's inclusion in its damages theory of benefits stemming from the ability to provide custom-cut lumber (a service that did not infringe, but that was improved by the infringing protective guards). *Id.* at 1240.

Similarly, in *Monsanto Co. v. McFarling*, the Federal Circuit rejected the efforts of a farmer to limit damages for infringement using genetically engineered seeds to the revenues directly earned from the seeds themselves. 488 F.3d 973, 979-80 (Fed. Cir. 2007). The Federal Circuit rejected this argument, holding that it would provide the infringer with a "windfall" by refusing to consider other indirect benefits the defendant had derived from the infringement, such as revenues earned from increasing yields in the farmer's fields and cost savings on the amounts

1  of weed control products that the farmer no longer had to purchase due to his infringement. *Id.* at
2  979-80.

3  And in *Finjan, Inc. v. Secure Computing Corp.*, the Federal Circuit affirmed the
4  consideration of the benefit to a Defendant from the "advertising value" of having infringed. 626
5  F.3d 1197, 1211 (Fed. Cir. 2010). There, the plaintiff offered evidence under *Georgia-Pacific*
6  Factor 11 that the infringing Defendant benefited because it "obtained advertising value from
7  those features." *Id.* Notably, this is one of the very types of benefits which Google argues,
8  without citing any case law, is an example of the types of "collateral benefits" of infringement
9  that should not even be subject to discovery. Dkt. 328 at 10.

10  Google's argument is thus a radical departure from existing Federal Circuit case law: the
11  Federal Circuit has held that it is proper as part of the *Georgia-Pacific* damages analysis to
12  consider such indirect benefits from infringement as "advertising value" from having infringed, a
13  reduction in lawsuit expenses stemming from having fewer employee accidents as a result of
14  using an infringing product that was safer because of the infringement, sales of non-infringing
15  wood that was cut using a non-infringing radial saw equipped with an infringing protective
16  guard, and cost savings from a reduction in spending on unrelated weed control products because
17  infringing seeds required less weed control. If those benefits are properly part of the analysis,
18  then it is certainly proper to consider benefits to Google from its infringement such as ▆
19  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
20  ▆▆▆▆▆▆ The Federal Circuit has expressly rejected Google's argument that Unwired Planet
21  is limited to Google's direct revenues, and made clear that Unwired Planet is entitled to include
22  as part of its damages analysis any "benefit" to Google from its infringement. To do otherwise
23  would provide Google with the same kind of "windfall" that the Federal Circuit cautioned
24  against in *Monsanto*, by allowing Google to give away an infringing product for free and thus
25  limit its exposure to damages, all the while benefiting indirectly ▆▆▆▆▆▆▆▆
26  from its infringement.

C. <u>The Northern District of California recently considered a virtually identical fact pattern and rejected the defendants' request for a protective order.</u>

This Court is not the first to confront a defendant seeking to avoid providing discovery on this basis. The Northern District of California recently confronted a very similar situation—a defendant who sought to cut off discovery relating to financial information about products relating to the ones accused of infringement. *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-cv-2226-SI (KAW), 2013 U.S. Dist. LEXIS 26289 (N.D. Cal. Feb. 26, 2013). There, an E-Reader was accused of infringement, and the plaintiff sought discovery of "sales and revenue information" for various related but non-infringing products, such as eBooks, cases or covers for the E-Reader, reading lights, and sales warranties. *Id.* at *4. The defendants sought a protective order, arguing just as Google has here that: "discovery regarding non-accused products is only remotely related to any damages analysis. To be entitled to the discovery, Defendants argued, Plaintiff must establish that the entire market value rule (EMVR) applies-that is, that the patent-related feature of the E-Reader was the basis for customer demand." *Id.*

The court rejected this argument, holding that Factor 6 and Factor 11 of the Georgia-Pacific factors meant that the plaintiff was entitled to discovery as to non-infringing products. *Id.* at *12-15. The court agreed with Unwired Planet that at the hypothetical negotiation, "the parties might reasonably have considered not only the revenue Defendants stood to gain through sales of the E-Readers containing the improved-quality displays, but also through sales of accessories and content. This is especially true if, as Plaintiff argued at the hearing, Defendants sell their E-Readers at a low price to induce customers to buy E-Books and magazines, and therefore make the bulk of their revenue from sales of content." *Id.* at *15. This is precisely what Unwired Planet is arguing here: Google gives away Google Maps for free hoping to make money ███████ ████████████████████████████, and any such related revenues would certainly have been considered during a hypothetical negotiation.

And, as is appropriate here, the court held that the defendants' arguments about the entire market value rule had no merit because they all went to "admissibility, not discoverability." *Id.* at

1  *17. The court rejected arguments that "Plaintiff has produced no evidence to show that its
2  patented invention is correlated to the value of the sales of the non-accused products," because
3  "[i]t would be improper under Rule 26 to expect Plaintiff to show that the discovery it seeks is
4  admissible when it has not yet obtained the discovery." *Id.* at *18-19.

5  Just as in *Positive Technologies*, Google's argument for a protective order is an improper
6  effort to shut down discovery prematurely. It is understandable that Google does not want any
7  investigation into ███████████████████████████████████████████████████████
8  ███████████████████████████████████████████████ But the fact remains
9  that Google has made billions of dollars using the infringing technology for this purpose, and
10  under the law those revenues are a proper subject of analysis for the *Georgia-Pacific* inquiry.

11  D.  <u>Google's request is overbroad.</u>

12  Google's motion focuses in its entirety on ███████████, with no mention of anything
13  else for which Google is seeking a protective order. Yet at the end of its motion, Google tacks
14  onto its request for a protective order an unexplained and unjustified request that Unwired Planet
15  be prohibited from seeking discovery as to "any other unaccused products."

16  Google knows full well that Unwired Planet is also seeking discovery as to the value of
17  the accused products to Google based on increased sales of Android phones. Android is a Google
18  operating system used to power various smart phones. And in fact, Google had an $85 million
19  jury verdict against it in another lawsuit, *SimpleAir*, in which the damages theory was that the
20  same push messaging functionality accused of infringement here benefited Google by enabling it
21  to sell more Android phones.[1] Unwired Planet should not be prohibited from seeking discovery
22  as to a damages theory that Google has already lost on in another case, and which Google does
23  not even discuss in its motion. *Foltz*, 331 F.3d 1130-31 (holding that a party has to provide
24  specific evidence of burden on a request-by-request basis to obtain a protective order).

---

26  [1] MARKETWATCH, Mar. 20, 2014,
27  http://www.marketwatch.com/story/federal-jury-orders-google-to-pay-simpleair-85-million-for-infringement-2014-03-20.

14

## V. CONCLUSION

Google's motion for protective order is barred by binding Federal Circuit authority, does not meet the Ninth Circuit requirements for obtaining a protective order, and ignores the basis requirements of the *Georgia-Pacific* analysis. As such, it should be denied.

1  Dated:  June 16, 2014.                    Respectfully submitted,

2                                            WATSON ROUNDS

3

4                                            */s/ Kevin M. Kneupper*

5                                            Michael D. Rounds
                                             Nevada State Bar No. 4734
6                                            mrounds@watsonrounds.com
                                             Adam K. Yowell
7                                            Nevada State Bar No. 11748
                                             ayowell@watsonrounds.com
8                                            WATSON ROUNDS
                                             5371 Kietzke Lane
9                                            Reno, Nevada 89511
                                             Telephone: (775) 324-4100
10                                           Fax: (775) 333-8171

11

12                                           Theodore Stevenson III (*pro hac vice*)
                                             Texas State Bar No. 19196650
13                                           tstevenson@mckoolsmith.com
                                             MCKOOL SMITH, P.C.
14                                           300 Crescent Court, Suite 1500
                                             Dallas, Texas 75201
15                                           Telephone: (214) 978-4000
                                             Fax: (214) 978-4044
16

17                                           Kevin Burgess (*pro hac vice*)
                                             Texas State Bar No. 24006927
18                                           kburgess@mckoolsmith.com
                                             Pierre Hubert (*pro hac vice*)
19                                           Texas State Bar No. 24002317
                                             phubert@mckoolsmith.com
20                                           Kevin M. Kneupper
                                             Texas State Bar No. 24050885
21                                           MCKOOL SMITH, P.C.
                                             300 W. 6th St., Suite 1700
22                                           Austin, Texas 78701
                                             Telephone: (512) 692-8700
23                                           Fax: (512) 692-8744

24

25                                           ***ATTORNEYS FOR PLAINTIFF
                                             UP LLC***
26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of Watson Rounds, and that on this date a true and correct copy of the foregoing document, **UNWIRED PLANET'S RESPONSE TO GOOGLE'S MOTION FOR A PROTECTIVE ORDER PROHIBITING DISCOVERY REGARDING UNACCUSED PRODUCTS**, will be served upon counsel of record via electronic mail through the United States District Court's CM/ECF system.

Dated: June 16, 2014                    /s/ Jeff Tillison_____
                                        An employee of Watson Rounds