1  John P. Desmond (Nevada Bar No. 5618)
   jdesmond@gordonsilver.com
2  GORDON SILVER
   100 West Liberty Street, Suite 940
3  Reno, Nevada  89501
   Telephone:    (775) 343-7500
4  Facsimile:    (775) 786-0131

5  Gregory P. Stone (admitted pro hac vice)
   gregory.stone@mto.com
6  Peter E. Gratzinger (admitted pro hac vice)
   peter.gratzinger@mto.com
7  Adam R. Lawton (admitted pro hac vice)
   adam.lawton@mto.com
8  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, 35th Floor
9  Los Angeles, CA  90071-1560
   Telephone:    (213) 683-9100
10 Facsimile:    (213) 687-3702

11 Peter A. Detre (admitted pro hac vice)
   peter.detre@mto.com
12 Eric K. Chiu (admitted pro hac vice)
   eric.chiu@mto.com
13 Amy L. Greywitt (admitted pro hac vice)
   amy.greywitt@mto.com
14 MUNGER, TOLLES & OLSON LLP
   560 Mission Street
15 San Francisco, CA  94105-2907
   Telephone:    (415) 512-4000
16 Facsimile:    (415) 512-4077

17 Attorneys for Defendant
   GOOGLE INC.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Unwired Planet LLC, | Case No. 3:12-cv-504-MMD-VPC |
| Plaintiff, | **GOOGLE'S OPPOSITION TO UNWIRED PLANET'S MOTION TO DISMISS WITHOUT PREJUDICE** |
| vs. | |
| Google Inc., | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | |

23666717.2

Google's Opposition to Motion to Dismiss

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................................. 1

II.  FACTS ................................................................................................................................. 2

    A.   The Parties Completed Substantial Discovery By November 2013 ......................... 2

    B.   Unwired Only Capitulated After Google Obtained An Order Requiring Detailed Infringement Contentions With Source Code Citations ............................. 4

    C.   Unwired Failed To Act Until The Close Of Fact Discovery ..................................... 5

III. ARGUMENT ....................................................................................................................... 5

    A.   Unwired's Motion To Amend Is Untimely And Prejudicial ..................................... 5

    B.   Unwired's Cites No Authority For Dismissal of Google's Counterclaims ............... 7

    C.   Judge Cooke's Order Limiting Claims Is Irrelevant Here ........................................ 9

        1.   Patent Claims Are Distinct From Claims For Relief .................................... 9

        2.   The Claims Reduction Orders Pertain To Patent Claims, Not Claims For Relief .................................................................................................... 10

        3.   There Is No Unfair Prejudice To Unwired ................................................. 12

IV.  CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Diagnostic Sys. Corp. v. Symantec Corp.*,
    No. 06-cv-1211, 2009 WL 1607717 (C.D. Cal. June 5, 2009) ............................................. 4, 6

*Dow Jones & Co. v. Ablaise Ltd.*,
    606 F.3d 1338 (Fed. Cir. 2010) ................................................................................................ 1, 8

*Hells Canyon Preservation Council v. U.S. Forest Serv.*,
    403 F.3d 683 (9th Cir. 2005) ................................................................................................. 1, 3, 5, 7

*In re Katz Interactive Call Processing Patent Litig.*,
    639 F.3d 1303 (Fed. Cir. 2011) ....................................................................................... 10, 12, 13

*In re Western States Wholesale Natural Gas Antitrust Litig.*,
    715 F.3d 716 (9th Cir. 2013) ................................................................................................... 6, 7

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992) ....................................................................................................... 6

*Panduit Corp. v. Dennison Mfg. Co.*,
    836 F.2d 1329 (Fed. Cir. 1987) .................................................................................................... 9

*Personalized User Model, L.L.P., v. Google Inc.*,
    C.A. No. 09-525-LPS (D. Del. Sept. 9, 2013) ....................................................................... 1, 8

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
    556 F.3d 1294 (Fed. Cir. 2009) .................................................................................................... 8

*Super Sack Manufacturing Corp. v. Chase Packaging Corp.*,
    57 F.3d 1054 (Fed. Cir. 1995) ...................................................................................................... 8

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
    516 F.3d 1290 (Fed. Cir. 2008) .................................................................................................... 9

**FEDERAL STATUTES**

35 U.S.C. § 112(b) .................................................................................................................................. 9

**FEDERAL RULES**

Fed. R. Civ. P. 8(a) ................................................................................................................................ 9

Fed. R. Civ. P. 15 ................................................................................................................ 1, 5, 6, 7, 11

Fed. R. Civ. P. 16 ................................................................................................................................... 6

# TABLE OF AUTHORITIES
(continued)

**Page**

Fed. R. Civ. P. 41 .................................................................................................... 5, 7, 8

**LOCAL RULES**

L.R. 16.1-6(a) ................................................................................................................ 9

## I.  INTRODUCTION

Unwired's Complaint alleges that Android Location Services infringes the '647 and '752 patents. That allegation has been in Unwired's Complaint for nearly two years, and was the subject of months of intense litigation before being abandoned by Unwired. Now, at the close of fact discovery, Google is entitled to a dismissal of that allegation with prejudice.

Unwired should stipulate to a dismissal of its claim with prejudice and, to resolve Google's counterclaims, provide Google with a covenant not to sue. *See Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1346-49 (Fed. Cir. 2010) (district court should dismiss patent counterclaims in light of covenant not to sue). If Unwired refuses to dismiss with prejudice, Google intends to achieve the same outcome through a motion for summary judgment. That motion should be easily granted, since Unwired is no longer pursuing any infringement theory as to the '647 and '752 patents. *See Personalized User Model, L.L.P., v. Google Inc.*, C.A. No. 09-525-LPS (D. Del. Sept. 9, 2013), attached hereto as Ex. A, at 8 ("The Court will grant summary judgment of non-infringement of the '031 patent. [Plaintiff] earlier dropped the asserted claims of the '031 patent and now provides no theories of infringement related to the '031 patent. Thus, [plaintiff] cannot meet its evidentiary burden.").

It is simply too late for Unwired to try to remove these patents from the case without any consequence. Because Unwired seeks to drop fewer than all of the claims in its Complaint, Unwired's motion should be construed as a motion to amend under Rule 15. *See Hells Canyon Preservation Council v. U.S. Forest Serv.*, 403 F.3d 683, 688 (9th Cir. 2005). But the deadline to amend pleadings was over nine months ago, on September 10, 2013. *See* Dkt. 117. Unwired has failed to show or even argue diligence despite plainly failing to meet that deadline. Moreover, the requested relief is prejudicial. It would allow Unwired to file a new complaint making the very same allegation that Android Location Services infringes the '647 and '752 patents, potentially in another forum, as if this litigation had never happened. That result would be unfair to Google and highly inefficient for the courts.

Unwired's attempt to rely on the Court's claims reduction order, Dkt. 112, is misplaced. That order related to selecting the particular patent claims that Unwired will pursue

within each asserted patent. It did not authorize Unwired to drop patents in their entirety, up through the eve of trial, with no consequence. Moreover, when Unwired decided to drop the '647 and '752 patents last November, the number of claims it was asserting was already in compliance with the limit set by the Court. Unwired simply made a unilateral, strategic decision not to pursue the '647 and '752 patents. Unwired made a further strategic decision not to take any action to attempt to preserve its claim that Google infringes the '647 and '752 patents for a later action, such a motion to stay and sever those patents. Unwired now appears to have had a change of heart, and seeks a consequence-free dismissal. That request should be denied.

## II.     FACTS

### A.     The Parties Completed Substantial Discovery By November 2013

Unwired filed its Complaint on September 19, 2012, accusing Google of infringing the '647 and '752 patents. Dkt. 1 ¶ 27. The products accused of infringing the '647 and '752 patents were described in broad and vague terms as "Location Systems and/or Services (including Android Location), Servers (including servers supporting the aforementioned Systems and/or Services), and Mobile Devices (including mobile phones and tablets with the Android operating system, including Motorola Mobility and Nexus mobile phones and tablets)." *Id.* No other patents were asserted against "Location Systems and/or Services." *Id.*

On March 19, 2013, Unwired served initial infringement contentions for the '647 and '752 patents. Unwired's vague and inadequate contentions continued to take a blunderbuss approach to the accused products, claiming that the '647 and '752 patents are infringed by "Google's/Android's Location Services, and any accompanying functionality, software, devices that use Google's/Android's Location Services (e.g., Android mobile phones and tablets), and applications that use Google's/Android's Location Services (e.g., Google Maps, Street View on Google Maps, Google Earth, Google Search, Voice Search, Chrome - browser from Google, Google+, Google Goggles, My Tracks, Blogger, YouTube Remote, Google Apps Device Policy, Schemer, Panoramio for Google TV, Intersection Explorer)." Ex. B.

Unwired's pursuit of its allegation that Android Location Services infringes the '647 and '752 patents resulted in significant additional discovery beyond that required by the other

1  patents in suit.  For example, on March 22, 2013, Unwired served its first set of Requests for
2  Production.  Ex. C.  Those requests sought documents regarding each of the accused products
3  including "Android Location Services," and documents relating to each of the patents, including
4  the '647 and '752 patents.  *Id.*  That same day, Unwired also served written discovery, including,
5  for example, an interrogatory seeking a description of the operation of Google's source code for
6  Android Location Services.  Ex. D (Interrogatory 6).

7  Over the next several months, Google provided significant fact discovery relating
8  to the '647 and '752 patents and associated accused products.  For example, by August 27, 2013,
9  Google reported that it had produced source code for all of the accused functionalities as it
10 understood them at the time.  *See* Dkt. 146.  The *list of files* in Google's source code production at
11 that point was over 5000 pages long; the files themselves were obviously much more voluminous.
12 *See id.*  Google had also answered written discovery, including for example Interrogatory 6
13 regarding Android Location Services source code.  *See id.*  By the time of the September 2013
14 Case Management Conference, Google had also produced 280,000 pages of non-source-code
15 documents.  Dkt. 151 at 16.

16 Through October and November, Google continued to produce additional
17 documents, and complied with the Court's October 21, 2013 deadline for substantial completion
18 of document discovery.  *See* Dkt. 171.  Google also continued to make additional source code
19 available for inspection to comply with the Court's order to provide "historical" source code for
20 each of the accused products, including Android Location Services, by the end of November 2013.
21 *See* Dkt. 172 (Google Status Report); Dkt. 189 (Order).

22 By November 2013, Google had also provided significant contention discovery
23 regarding the '647 and '752 patents.  On June 24, 2013, Google served its non-infringement,
24 invalidity, and unenforceability contentions, consisting of hundreds of pages of detailed charts for
25 each of the patents, including the '647 and '752 patents.  For example, based on a costly and time-
26 consuming prior art search, Google identified 10 prior art patents for the '752 patent and 10 prior
27 art patents for the '647 patent, and provided detailed charts demonstrating how those prior art
28

23666717.2

- 3 -

Google's Opposition to Motion to Dismiss

1  patents, singly or in combination, anticipated or rendered obvious the claimed inventions of the

2  '647 and '752 patents.  *See* Dkt. 151, Ex. H.¹

### B. Unwired Only Capitulated After Google Obtained An Order Requiring Detailed Infringement Contentions With Source Code Citations

Unwired's inadequate infringement contentions were the subject of extensive briefing and argument before Judge Cooke.  *See, e.g.*, Dkt. 127 at 5-12; Dkt. 151 at 4-10.  On September 17, 2013, over Unwired's strenuous objections, Judge Cooke ordered Unwired to supplement its inadequate infringement contentions with citations to Google's source code.  *See* Dkt. 164.  That Order was consistent with the line of cases holding that after a defendant produces source code, the "time for trolling the proverbial waters for a theory of infringement" comes to an end, and the patentee "must fish or cut bait with respect to its specific theory of infringement" by providing source code citations in its infringement contentions.  *See Diagnostic Sys. Corp. v. Symantec Corp.*, No. 06-cv-1211, 2009 WL 1607717, at *5 (C.D. Cal. June 5, 2009).  Following these cases, the Court Ordered that "Unwired shall supplement its infringement contentions with pinpoint citations to the source code by **Friday, November 29, 2013**."  Dkt. 164 (emphasis in original).

Two days before the supplemental contentions were due, on November 27, 2013, Unwired withdrew every asserted claim of the '647 and '752 patents.  *See* Dkt. 217.  At the time, Unwired was not required to reduce its asserted claims.  Previously, on July 12, 2013, the Court had held that Unwired should reduce its asserted claims to 55.  Dkt. 112.  But Unwired complied with that requirement months prior.  On August 12, 2013, it filed a "Notice of Compliance With Ordered Reduction to 55 Asserted Claims," Dkt. 122, and on August 15, 2013, an "Amended Notice of Compliance With Ordered Reduction to 55 Asserted Claims."  Dkt. 125.  The latter notice included 55 claims, including seven asserted claims for the '647 patent and five asserted claims for the '752 patent.  *See id.*  On October 10, 2013 the Court ordered Unwired to further

---

¹ Google also sought review of the validity of the '752 patent by the United States Patent and Trademark Office, and sought a stay of discovery relating to the '752 patent pending that review, which was granted on January 27, 2014.  *See* Dkt. 233.  Unwired made no effort to dismiss its claim that Google infringes the '752 patent while that motion was pending before the Court.

23666717.2

- 4 -

Google's Opposition to Motion to Dismiss

reduce its asserted claims to 30 after the *Markman* order and 15 prior to trial. Dkt. 188. But *Markman* was still many months off as of November 2013. Thus, Unwired was not under any Court order as of November 2013 to make any further reduction in the number of asserted claims when it chose to withdraw all claims of the '657 and '752 patents.

### C. Unwired Failed To Act Until The Close Of Fact Discovery

After deciding in November 2013 that it would no longer pursue the '647 and '752 patents, Unwired took no further action until this motion to dismiss. Unwired knew that it had a duty to act if it wanted to preserve some right to assert unelected claims at a later time. In the hearing regarding limitations on numbers of claims, Unwired's counsel told the Court:

> Well, let me explain to the Court what practically is going to happen here. First of all, the parties are selecting their best claims and their best prior art. Or they're certainly trying to. **It would be incumbent upon Unwired Planet to move to sever some unasserted claims**. And the Court would then decide whether or not it's going to do that. **Is that motion going to come in this case? I would say right now, I think the probability is low**. So more than likely, highly likely in this case, we're going to try this case on the asserted claims, and they're going to try it on their asserted prior art. That's what's going to happen.

August 20, 2013 Tr. 56:6-25 (emphasis added). Unwired made a strategic decision not attempt to sever the '647 or '752 patents or any claims of those patents, despite admitting that it "would be incumbent upon Unwired Planet" to do so. *See id.* In fact, Unwired took no action at all until the present motion, on the last day of fact discovery.

## III. ARGUMENT

### A. Unwired's Motion To Amend Is Untimely And Prejudicial

Unwired's request to dismiss its own infringement claims as to the '647 and '752 patents should be treated a motion to amend pursuant to Federal Rule of Civil Procedure 15(a). *See Hells Canyon Preservation Council*, 403 F.3d at 687-88 (voluntary dismissal by plaintiff for fewer than all claims must be sought under Rule 15(a) because Rule 41 "does not allow for piecemeal dismissals"). The deadline to amend pleadings was September 10, 2013. *See* Dkt. 117. Thus, the deadline passed over nine months ago. Indeed, the deadline to amend pleadings passed

23666717.2                                              - 5 -
Google's Opposition to Motion to Dismiss

1  months before Unwired even filed its "Supplemental Notice" that it was no longer pursuing
2  infringement of the '647 and '752 patents.

3  Because the deadline to amend pleadings has long passed, the applicable standard
4  is that of relief from a Court deadline under Rule 16. *See In re Western States Wholesale Natural*
5  *Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) ("[W]hen a party seeks to amend a
6  pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, the
7  moving party must satisfy the 'good cause' standard of Federal Rule of Civil Procedure 16(b)(4)
8  . . . rather than the liberal standard of Federal Rule of Civil Procedure 15(a)."). The focus of that
9  standard is whether Unwired has been diligent. In particular, "[w]hile a court may take into
10 account any prejudice to the party opposing modification of the scheduling order, 'the focus of the
11 [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification . . . [i]f that party
12 was not diligent, the inquiry should end.'" *Id.* (some alterations in original) (quoting *Johnson v.*
13 *Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992)).

14 Unwired's Motion makes no mention of the correct standard, and Unwired does not
15 even attempt to show that it was diligent. It was not. By the stipulated Court deadline of
16 September 10, 2013, Unwired had enjoyed over six months of fact discovery in which it had the
17 opportunity to review Google's documents and source code and depose Google's technical
18 witnesses. If Unwired had wanted to amend its Complaint to drop its claims as to the '647 and
19 '752 patents prior to the Court deadline, it had ample opportunity to do so. Unwired makes no
20 argument that despite diligent investigation, it was only able to discovery the flaws in its
21 infringement theories for the '647 and '752 patents after the September 10, 2013 deadline passed,
22 thus excusing its tardy attempt to drop its claim without prejudice. Nor does Unwired offer any
23 other explanation for missing the Court deadline by nine months.

24 Unwired filed its "Supplemental Notice" only under the looming pressure of a
25 deadline to comply with a motion to compel adequate infringement contentions with source code
26 citations, which brought Unwired's "time for trolling the proverbial waters for a theory of
27 infringement" to an end. *See Diagnostic Sys. Corp.*, 2009 WL 1607717, at *5. Thereafter,
28 Unwired did not bring this motion to amend, styled as a motion to dismiss, until the last day of

23666717.2
- 6 -
Google's Opposition to Motion to Dismiss

1  fact discovery.  Unwired was not diligent, and so, "the inquiry should end."  *See In re Western*
2  *States*, 715 F.3d at 737.  Unwired's motion should be denied.  *See id.*
3          Furthermore, if the Court deems the prejudice to Google to be a relevant
4  consideration here, Google would be greatly prejudiced by Unwired's proposed late amendment.
5  Google had been litigating the '647 and '752 patents for over a year when Unwired filed the
6  "Supplemental Notice," and for nearly two years by the time of this motion.  Google expended
7  significant effort on fact discovery, detailed non-infringement and invalidity contentions, and
8  motion practice directed at least in part to the '647 and '752 patents.  Further, the entire fact
9  discovery period came and went with these claims for infringement still in Unwired's complaint.
10 Google has earned a definitive resolution of Unwired's claims.
11         Unwired, however, wishes the Court to treat the '647 and '752 patents as if none of
12 this had ever happened.  Unwired appears to believe that it should be free to file precisely the
13 same claims, in this Court or another one, and get a complete "do over" as to whether Android
14 Location Services infringe the '647 and '752 patents.  Such vexatious behavior is prejudicial to
15 Google.  This prejudice would be particularly acute if Google's counterclaims were also dismissed
16 without prejudice.  Unwired, however, provides no authority for that relief, as discussed below.

17       **B.**    <u>**Unwired's Cites No Authority For Dismissal of Google's Counterclaims**</u>

18         Unwired asks that in addition to dismissing Unwired's claims without prejudice,
19 the Court "dismiss without prejudice . . . Google's counterclaims corresponding to the non-elected
20 claims."  Mot at 1.  Unwired cites no authority that would permit, let alone require, this relief.
21         Rule 15 governs a plaintiff's ability to voluntarily withdraw some of its claims, and
22 Rule 41 governs a plaintiff's ability to withdraw its entire action.  *See Hells Canyon Preservation*
23 *Council*, 403 F.3d at 688 (discussing Fed. R. Civ. P. 15 and 41).  But neither of those Rules, nor
24 any other Rule, empowers the Court to dismiss a counterclaim because the plaintiff has decided to
25 withdraw a corresponding claim.  To the contrary, at least with respect to entire actions, the
26 Federal Rules prohibit that result.  Rule 41 provides that "[i]f a defendant has pleaded a
27 counterclaim before being served with the plaintiff's motion to dismiss, the action may be
28 dismissed over the defendant's objection <u>only if the counterclaim can remain pending</u> for

independent adjudication." *See* Fed. R. Civ. P. 41(a)(2) (emphasis added).  Defendants in patent cases assert counterclaims for declarations of non-infringement and invalidity precisely because their doing so prevents the patentee from using a dismissal without prejudice to take a mulligan on a patent should some development prior to trial not go the plaintiff's way.

There does exist a well-established procedure for a patent owner to achieve what Unwired is attempting to do here.  Under the Federal Circuit's "*Super Sack*" line of cases, a patent owner can divest the Court of jurisdiction over an accused infringer's counterclaims for invalidity and non-infringement, and obtain dismissal of those counterclaims, by dismissing its own claims <u>with prejudice</u> and providing an adequate "covenant not to sue."  *See Dow Jones*, 606 F.3d at 1346-49 (Fed. Cir. 2010) (discussing *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1060 (Fed. Cir. 1995), and its progeny).  The covenant not to sue must be broad enough to eliminate any controversy between the parties, for example, by making clear that future sales of the accused products would not be the subject of an infringement suit.  *See id.* at 1346-47 (citing *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc*., 556 F.3d 1294, 1297 (Fed. Cir. 2009)). Once the patent owner grants such a covenant, there is no "case or controversy," and a motion to dismiss the accused infringer's declaratory judgment counterclaims must be granted.  *See id.* at 1349.

Unwired apparently does not wish to dismiss its claims with prejudice, or to provide Google with a covenant not to sue.  Instead, Unwired seeks an outcome that would allow it to file a new lawsuit the very next day after its proposed dismissal without prejudice is granted, in this venue or in a different one, accusing Google or its customers of infringing the very same patents by making or using the very same accused product.  That option does not exist for Unwired under any applicable Rule or case authority.  If Unwired refuses to provide a covenant not to sue and dismiss its own claims with prejudice, then as noted above, Google will seek summary judgment in light of Unwired's complete failure to put forth any evidence of infringement.  *See Personalized User Model, L.L.P., v. Google Inc.,* C.A. No. 09-525-LPS (D. Del. Sept. 9, 2013), attached hereto as Ex. A, at 8.

1  **C.    Judge Cooke's Order Limiting Claims Is Irrelevant Here**

Unwired's requested relief appears to be based entirely on the Court's claims-reduction order. *See* Mot. at 1 (citing Dkt. 112). Unwired's reliance is misplaced. The Court's claims reduction order is directed to limiting the total number of *patent claims* that can be asserted from the patents-in-suit, not to limiting the number of *patents* at issue in the case. The claims reduction order provides no impetus or authority for Unwired to drop a patent in its entirety and avoid any judgment related to that patent.

**1.    Patent Claims Are Distinct From Claims For Relief**

A claim of a patent is a wholly separate concept from a claim for relief in a complaint. A patent claim is a numbered paragraph at the end of a patent that points out the subject matter that the inventor regards as the invention and establishes the scope of the legal rights afforded by the patent. *See* 35 U.S.C. § 112(b). The Local Rules require a plaintiff to disclose, as part of its infringement contentions, the "claims," or *alleged inventions* of each patent that it intends to pursue. L.R. 16.1-6(a).

A "claim" under the Federal Rules of Civil Procedure is not an alleged invention, or course, but rather a claim for relief. *See* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Unwired's *claim for relief* is that Google is allegedly infringing "one or more claims" of each of the '647 and '752 patents by making, using, and selling Android Location Services, and that Unwired is thereby entitled to a judgment including money damages. *See* Dkt. 1 (Complaint) at ¶ 27 and pp. 10-11.

It is common for a patent owner to claim the *same relief* regardless of whether the accused infringer infringes one, two, or all of the claims of a patent. *See, e.g.*, *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1312 (Fed. Cir. 2008) (reversing judgment of infringement as to two claims of a patent, affirming judgment as to two other claims, and affirming damages award because "the damages calculation at trial was not predicated on the infringement of particular claims"); *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987) ("One is liable for patent infringement if one claim be infringed."). Thus, a patent

owner can choose not to pursue a particular patent claim at trial, but still pursue the identical claim for relief with respect to that patent. *See id.*

In complex cases such as this one, courts may streamline trial proceedings by requiring a patent owner to limit the number of claims of the patents-in-suit that the patent owner will pursue at trial. The Federal Circuit has approved of this case management practice, so long as there are adequate due process protections for the patent owner. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303 (Fed. Cir. 2011). In *Katz*, the Federal Circuit held that there was no due process violation where the district court had required the patent owner to proceed with a limited number of patent claims, and had declined the patentee's motion to sever and stay the non-selected claims. *Id.* at 1311. The district court's actions were upheld in light of the fact that the patent owner was presented with an opportunity to make a showing that the non-selected claims presented unique issues of validity or infringement, but did not attempt to do so. *Id.*

Thus, claims of a patent and claims for relief are distinct concepts. Neither *Katz*, nor any other case cited by Unwired, has anything to do with allowing patent owners to drop *entire patents*—i.e., claims for relief—at their discretion and without consequence, or forcing an accused infringer to drop counterclaims when a plaintiff decides it is no longer interested in pursuing a particular patent. *See id.*

**2. The Claims Reduction Orders Pertain To Patent Claims, Not Claims For Relief**

Following *Katz*, the Court in this case has entered a series of orders requiring Unwired to progressively streamline its selection of asserted claims, but allowing Unwired to seek relief from those limits upon a showing of good cause. *See* Dkt. 112 (initially adopting claims reduction procedure); Dkt. 147 at 6 (adopting process to modify claim limits upon showing of good cause in light of *Katz*); Dkt. 188 (clarifying numerical limits). Nothing in the Orders so much as suggests Unwired's interpretation: that the Court intended to give Unwired a free pass to drop entire claims for relief without prejudice, completely divorced from the Federal Rules of Civil Procedure or the deadline to amend pleadings set forth in the Scheduling Order. *See id.*

Unwired's interpretation of the claims reduction orders would lead to an absurd result. The final reduction in asserted claims is scheduled to take place fourteen days prior to the filing of the Pretrial Order, after all fact discovery, expert discovery, dispositive motions, and motions *in limine* have been completed. Dkt. 187. By the logic of Unwired's Motion, Unwired should be entitled to drop its allegation that Google infringes one of its patents, *without prejudice*, on the very eve of trial, and force Google to drop its corresponding counterclaims *without prejudice* as well, so that Unwired would be free to get a complete "do over" of two or more years of discovery, expert reports, and trial preparation, in this or another forum. There is nothing in Unwired's motion that would distinguish among an attempt to drop a patent shortly after the Complaint was filed in 2012, after completion of substantial discovery in November 2013, or fourteen days prior to the Pretrial Order. Unwired's interpretation of the claims reduction orders cannot be correct.

Fortunately, there are clear guideposts that the Court can use to decide when it is too late to withdraw an allegation that a patent is infringed without prejudice. First, Rule 15 provides that a complaint can be amended as a matter of course within 21 days after service of a responsive pleading, or thereafter, only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(1)(B). Google filed its answer denying infringement of the '647 and '752 patents on November 29, 2012. Dkt. 28. Thus, the deadline set forth in the Federal Rules for Unwired to drop a patent without leave passed in December 2012. The next relevant deadline was the September 10, 2013 to amend pleadings. *See* Dkt. 117. As discussed above, Unwired missed that deadline by a wide margin, and has not even attempted to show that it was diligent. A final relevant reference point is May 30, 2014, the date that Unwired actually filed the present motion. On that date, after multiple extensions and nearly two years of litigation, fact discovery closed. *See* Dkt. 187.

When viewed in light of the Federal Rules and the Scheduling Order in this case, Unwired's requests to unilaterally drop the '647 and '752 patents with no consequence should be denied.

### 3. There Is No Unfair Prejudice To Unwired

Unwired argues that "[i]t would be extremely prejudicial to order UP to reduce the claims it was asserting for the purpose of narrowing the issues in the case, and then to allow Google to continue to litigate declaratory judgment claims of invalidity and non-infringement on the exact same claims un-elected by UP." Mot. at 1. But this argument rests on the false premise that Unwired was somehow "ordered" to drop the '647 and '752 patents from its Complaint.

First, as of the November 27, 2013 "Supplemental Notice," Unwired was already in compliance with the claims reduction order. At that time, Unwired was entitled to pursue 55 claims, and no further reduction was scheduled until after the *Markman* hearing. *See* Dkt. 188 at 8. And yet, purely for its own purposes, Unwired unilaterally decided to drop the '647 and '752 patents, thereby reducing the number of claims it was choosing to assert to 42, thirteen claims below the limit. *See* Dkt. 217.

Second, following *Katz*, the Court's Orders provide that Unwired is entitled to asserts *more* claims than the numerical limits it had set for good cause. *See* Dkt. 147 at 6 (citing *Katz*, 639 F.3d at 1312-13). "Good cause" could include, for example, the existence of non-duplicative patent claims that the patent owner considered to be infringed and that could not be asserted within the numerical limits set by the Court. *See Katz*, 639 F.3d at 1313. The Court explicitly warned Unwired that "failure to seek such modification will constitute acquiescence to the limits contained in this order." *See* Dkt. 147 at 6. Thus, pursuant to the Order, Unwired is deemed to have admitted that the claims it has selected are the claims that it considers non-duplicative and meritorious. *See id.*

Finally, Unwired did not take any steps to attempt to preserve the claims of the '647 and '752 patents for a future trial, despite the admissions of its counsel that such a procedure would be necessary. *See* August 20, 2013 Tr. 56:6-25 (admitting that "[i]t would be incumbent upon Unwired Planet to move to sever some unasserted claims"); *see also Katz*, 639 F.3d at 1313 (affirming district court decision not to sever and stay non-selected claims). For its own strategic reasons, Unwired made no attempt to sever and stay its claims that Google infringes the '647 and '752 patents.

In light of the above, Unwired cannot be heard to argue that dropping the '647 and '752 patents was anything but a purely voluntary and tactical decision to get rid of claims for relief that Unwired had determined are without merit and that might reflect poorly upon Unwired at trial. There is nothing unduly "prejudicial" about requiring Unwired to live with that tactical decision and denying Unwired the opportunity to re-litigate precisely those claims in another case in a venue of Unwired's choosing.

The statements of Google's counsel quoted by Unwired are not to the contrary. *See* Mot. at 2. In the passage quoted by Unwired, Google's counsel was arguing that there is a distinction between limiting patent claims (which Google favored) and limiting the number of prior art references that can be asserted against the selected patent claims (which Google opposed). *See id.* Google argued that unlike an affirmative claim, a defense, if precluded, can never be made in another case. *See id.* By contrast, Google argued, there is a possibility that an unelected claim could be pursued in another case. *See id.* That argument was accurate. For example, as Unwired's own counsel noted, unelected claims could potentially be severed and stayed. *See* August 20, 2013 Tr. 56:6-25. Furthermore, as the Federal Circuit has noted, the preclusive effects of a judgment as to unelected claims will likely vary based on the specifics of each case. *See Katz*, 639 F.3d at 1311 n.5 (noting that preclusive effects as to unelected claims will be the subject of a future trial). By no means did Google's oral arguments state or even imply that Unwired should be entitled to unilaterally drop an entire claim for relief, at any time, without prejudice, and force Google to do the same with its counterclaim. That was simply not the issue to which Google was speaking. *See* Mot. at 2.

## IV.    CONCLUSION

Unwired's claims that Google infringes the '647 and '752 patents should be disposed of with prejudice, either voluntarily by Unwired or, if necessary, through a summary judgment motion by Google. Unwired's motion to dismiss both its claims and Google's corresponding counterclaims without prejudice should be denied.

1  DATED: June 16, 2014                    MUNGER, TOLLES & OLSON LLP

2

3
                                            By:      /s/ *Peter E. Gratzinger*
4                                                  Peter E. Gratzinger
                                            Attorneys for Defendant Google Inc.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that, on June 16, 2014, I served a true and correct copy of **GOOGLE'S OPPOSITION TO UNWIRED PLANET'S MOTION TO DISMISS** upon the following counsel of record through the Court's CM/ECF system:

| | |
|---|---|
| Theodore Stevenson, III | Michael D. Rounds |
| Kevin L. Burgess | Adam K. Yowell |
| Pierre J. Hubert | Ryan J. Cudnik |
| David Sochia | WATSON ROUNDS |
| Kevin M. Kneupper | 5371 Kietzke Lane |
| Nicholas M. Mathews | Reno, NV 89511 |
| James E. Quigley | |
| Mario A. Apreotesi | |
| Ashley N. Moore | |
| Warren Lipschitz | |
| MCKOOL SMITH P.C. | |
| 3000 Crescent Court, Suite 1500 | |
| Dallas, TX 75201 | |

DATED:  June 16, 2014

                                                        /s/ *Peter E. Gratzinger*

23666717.2

- 15 -

Google's Opposition to Motion to Dismiss