John P. Desmond (Nevada Bar No. 5618)
jdesmond@gordonsilver.com
GORDON SILVER
100 West Liberty Street, Suite 940
Reno, Nevada  89501
Telephone:     (775) 343-7500
Facsimile:      (775) 786-0131

Gregory P. Stone (admitted pro hac vice)
gregory.stone@mto.com
Peter E. Gratzinger (admitted pro hac vice)
peter.gratzinger@mto.com
Adam R. Lawton (admitted pro hac vice)
adam.lawton@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

Peter A. Detre (admitted pro hac vice)
peter.detre@mto.com
Eric K. Chiu (admitted pro hac vice)
eric.chiu@mto.com
Amy L. Greywitt (admitted pro hac vice)
amy.greywitt@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
San Francisco, CA  94105-2907
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

Attorneys for Defendant
GOOGLE INC.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Unwired Planet LLC, | Case No. 3:12-cv-504-MMD-VPC |
| Plaintiff, | **GOOGLE'S OPPOSITION TO UNWIRED PLANET'S MOTION TO COMPEL DISCOVERY ON GOOGLE FINANCIAL INFORMATION** |
| vs. | |
| Google Inc., | |
| Defendant. | **PUBLIC VERSION** |
| AND RELATED COUNTERCLAIMS | |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Unwired's Suggestion That Google Profits by Furtively Using Personally Identifiable Information from Its Users Is Unfounded and False ............................ 2

    B. Discovery About the Financial Performance of Unaccused Products Is Legally Irrelevant and Would Be Unduly Burdensome at This Point in the Case ..................................................................................................................... 6

        1. The Financial Performance of Unaccused Products That May Derive an Attenuated, Collateral Benefit from the Accused Products Is Legally Irrelevant ....................................................................................... 6

        2. The Requested Discovery Would Be Unduly Burdensome .......................... 9

III. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

### CASES

*American Seating Co. v. USSC Group, Inc.*,
   514 F.3d 1262 (Fed. Cir. 2008) ................................................................................... 7, 8

*Apple Inc. v. Motorola, Inc.*,
   --- F.3d ----, 2014 WL 1646435 (Fed. Cir. 2014) ........................................................... 1

*Caliper Technologies Corp. v. Molecular Devices Corp.*,
   213 F.R.D. 555 (N.D. Cal. 2003) ....................................................................................... 7

*Fort James Corp. v. Sweetheart Cup Co.*,
   1998 WL 709813 (S.D.N.Y. Oct. 8, 1998) ..................................................................... 7, 8

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................................... 7

*Krause v. Nevada Mutual Insurance Co.*,
   2014 WL 496936 (D. Nev. Feb. 6. 2014) ........................................................................... 6

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ............................................................................................... 9

*Pulsecard, Inc. v. Discover Card Services, Inc.*,
   168 F.R.D. 295 (D. Kan. 1996) ........................................................................................... 6

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995) ......................................................................................... 2, 7

### RULES

Fed. R. Civ. P. 26(b)(1) .............................................................................................................. 6

Fed. R. Civ. P. 26(b)(2) .............................................................................................................. 6

## I. INTRODUCTION

Unwired has alleged that two of its patents—the '016 and '087 patents—cover only two particular features of the multi-featured Google Maps product accessible from smartphones and tablet computers. In the accused versions of Google Maps, Google sometimes shows advertisements to users of those products, and Google earns revenue when users click on those advertisements. Nearly two years into this case, Unwired appears to be unsatisfied with the amount of advertising revenues generated by advertisements actually shown on Google Maps. On the eve of the close of discovery, Unwired for the first time asserted a legally meritless theory in an attempt to tie its patents to Google's *unaccused* advertising products, and now is attempting to use that meritless, last-minute theory to prolong discovery.

Unwired's motion is solely concerned with documents showing the financial performance of Google's advertising products that are *not* accused of infringement. If Unwired succeeds is showing that its patents are valid and infringed, Unwired's entitlement to damages is limited to Google's alleged use of what Unwired claims to have invented; Unwired is not entitled to damages based on unaccused Google products. *See Apple Inc. v. Motorola, Inc.*, --- F.3d ----, 2014 WL 1646435, at *28 (Fed. Cir. 2014) ("[P]roof of damages must be carefully tied to the claimed invention itself."). Nonetheless, in Unwired's view, Google's revenue from its unaccused advertising products is relevant to damages for alleged infringement by Google's accused products because Google's advertising products allegedly derive a collateral benefit from usage data generated by Google Maps.

But as Google showed in its concurrently filed motion for a protective order, discovery necessary to support Unwired's theory—which Unwired raised for the first time two weeks before the close of discovery—would require entirely new custodians, documents, deponents, and source code, which cannot be justified, especially at this point in the case. *See* Dkt. 328, Google's Motion for a Protective Order. Moreover, discovery based on Unwired's theory cannot uncover admissible evidence because the theory is meritless as a matter of law; Unwired has not shown or even plausibly suggested that it can meet the foundation of relevance required by the Federal Circuit's precedents regarding damages. *See id.* Under those precedents,

1 unaccused products that allegedly derive a collateral benefit from accused products can be
2 considered only when both the allegedly patented features (*i.e.*, the accused functionality of
3 Google Maps) and the unpatented products (*i.e.*, the unaccused advertising products) are
4 "components of a single assembly or parts of a complete machine, or they together constitute[] a
5 functional unit."  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (en banc).
6 Unwired's motion does not even mention this controlling standard, much less attempt to show that
7 it can be met here.  Any evidence of damages premised on this "collateral benefit" theory, hence,
8 would be inadmissible.

9 　　　　　For the same reasons why the Court should grant Google's motion for a protective
10 order preventing Unwired from seeking 30(b)(6) testimony about Google's unaccused advertising
11 products, the Court should deny Unwired's motion to compel Google to produce documents about
12 them.

13 **II.       ARGUMENT**

14 　　　**A.       Unwired's Suggestion That Google Profits by Furtively Using Personally Identifiable Information from Its Users Is Unfounded and False**

15

16 　　　　　The argument section of Unwired's brief begins with gratuitous accusations that
17 Google illicitly "monetizes" its users' private information by "tracking their location."  *See* Mot. at
18 3-4.  But this is a patent case, not a consumer privacy class action.  Unwired's attack on Google's
19 privacy policies is not relevant to the issues in this case and it appears to have little purpose but to
20 seek to smear Google's business.  Nonetheless, the discussion merits a brief response because it is
21 grossly misleading and, in many respects, thoroughly wrong about the technology.

22 　　　　　Nothing about Google's use of location information to enhance its products is
23 nefarious or underhanded.  It is assuredly not a secret that, when it can, Google may use
24 "geotargeting"—*i.e.*, estimating the locations of the computers that connect to Google in order to
25 provide users with better experiences across a variety of products.  For example, when a user in
26 New York City runs a Google Search for "what will the weather be like tomorrow," she very
27 likely is interested in knowing tomorrow's weather forecast *for New York City* rather than for
28 some other part of the world.  So, if Google is able to estimate that she is located in New York

1  City, Google uses that location estimate to provide her with tomorrow's forecast for New York
2  City.  That is not "creepy" and is not "evil"; it is a good user experience for many users.  It is also
3  not unique to Google.  From Apple to Zillow, hundreds of companies that build web applications
4  may enhance some of their offerings by using estimates of users' locations to tailor the content
5  that each user sees.[1]

6  For Google to be able to provide geotargeted offerings, it must have a way to
7  estimate a user's location.  If a smartphone user can connect to a GPS signal, then Google can use
8  the GPS estimate if the user has allowed Google to use that estimate.  Desktop computers
9  normally do not have GPS capabilities, so Google uses other methods.  One such technology is
10 called IP location (where "IP" is short for "Internet Protocol").  When a computer connects to the
11 Internet, the computer is assigned a numerical identifier called an IP address, which allows
12 Internet communications to be routed to and from the computer.  Internet service providers often
13 assign ranges of IP addresses to computers within the same geographic region, similar to how
14 phone companies often assign ranges of phone numbers having the same area code and prefix to
15 subscribers within the same geographic region.  Therefore, the IP address assigned to a computer,
16 like the phone number assigned to a phone, can provide information about where the computer
17 might be located.



---

[1] *See, e.g.*, Ex. F at 2 (Apple Support webpage showing how iPhone users can create "location-based Reminders" on their to-do lists); Zillow, Inc., Annual Report (Form 10-K), at 14 (Feb. 18, 2014) (stating that Zillow's "mobile real estate applications provide consumers . . . with location-based access to many of our products and services").



Furthermore, while Unwired's rhetoric portrays Google as exploiting its geotargeting technology in a clandestine and illegitimate way, that portrayal is false. Google publishes extensive materials to educate its users about its geotargeted offerings. One Google webpage expressly informs mobile phone users that they can "[g]et better results for your current location with Precise Location turned on." Ex. A. Another Google webpage clearly informs users how Google automatically estimates their location. Ex. B at 2 (describing "[h]ow location is auto-

1   detected"). Yet another Google webpage advises users about "[h]ow IP addresses and geographic
2   locations are related," explaining that "[y]our IP address may be used by Google to make an
3   educated guess at your general location." Ex. C. Other Google webpages explain in detail how
4   advertisers can target ads to geographic locations and how Google matches geotargeted ads to
5   geographic locations when possible. *See* Ex. D; Ex. E. Users who do not want to share any
6   information with Google have the option to do so.

7   [REDACTED]
8   [REDACTED]
9   [REDACTED]
10  [REDACTED]
11  [REDACTED]
12  [REDACTED]
13  [REDACTED]
14  [REDACTED]
15  [REDACTED]
16  [REDACTED]
17  [REDACTED]
18  [REDACTED]
19  [REDACTED]
20  [REDACTED]
21  [REDACTED]
22  [REDACTED]

23          It is unclear why Unwired felt it necessary to devote much of its briefing to an ill-
24  informed attack on Google's geolocation technology and privacy practices. To the extent Unwired
25  is foreshadowing a theme that it would like to introduce at trial to inflame the jury against Google,
26  that is all the more reason to deny the motion. Unwired is seeking to create a sideshow, and its
27  intent is revealed by its claim that Google's efforts to resist irrelevant discovery are an effort to
28  "hide" something.

### B. Discovery About the Financial Performance of Unaccused Products Is Legally Irrelevant and Would Be Unduly Burdensome at This Point in the Case

Unwired claims that it has "specifically requested" the documents sought in the Motion because it made a discovery request for documents relating to "profit derived in any way from the Accused Products." Mot. at 6. That request was anything but "specific." In reality, Unwired's demands reflect an attempt to significantly expand the scope of this case just prior to the close of fact discovery. As Google has pointed out in other contexts, *see, e.g.*, Dkt. 291 at 4-9, Unwired's strategy throughout this case has been to propound discovery requests that are nebulous, manifestly overbroad, and unreasonable on their face, and then later rely upon those nebulous and overbroad requests to send follow-up letters with an ever-changing and ever-growing list of demands for more data and more documents. That is improper.

Furthermore, even if the request were timely and proper, Unwired is not entitled to the discovery it seeks. Unwired may obtain discovery it seeks only if (1) it is relevant and reasonably calculated to lead to the discovery of admissible evidence, and (2) the burden or expense of the discovery does not outweigh its likely benefit. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26(b)(2)(C)(iii). Here, discovery regarding Google's unaccused advertising products is both irrelevant as a matter of law and unduly burdensome in proportion to its potential benefit to the case.

#### 1. The Financial Performance of Unaccused Products That May Derive an Attenuated, Collateral Benefit from the Accused Products Is Legally Irrelevant

"The party seeking to compel discovery has the initial burden of establishing that a request satisfies the relevancy requirements of Rule 26(b)(1). . . . 'When the relevancy is not apparent, it is the burden of the party seeking discovery to show the relevancy of the request.'" *Krause v. Nev. Mut. Ins. Co.*, No. 12-cv-342, 2014 WL 496936, at *3 (D. Nev. Feb. 6. 2014) (quoting *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 309 (D. Kan. 1996)). The relevance of financial information regarding unaccused products is far from "apparent," so Unwired bears the burden of showing relevancy here. Unwired has not met that burden.

1         Unwired's theory is that Google's unaccused advertising products are relevant to
2  damages under *Georgia-Pacific* factor 6, which entails analyzing "[t]he effect of selling the
3  patented specialty in promoting sales of other products of the licensee; the existing value of the
4  invention to the licensor as a generator of sales of his non-patented items; and the extent of such
5  derivative or convoyed sales."  Mot. at 6 (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
6  318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)).  But not just any alleged "effect" can make sales of
7  unaccused products relevant under *Georgia-Pacific* factor 6.  Sales of unaccused products may be
8  taken into account only when "the unpatented and patented components together [are] considered
9  to be components of a single assembly or parts of a complete machine, or they together
10 constitute[] a functional unit."  *Rite-Hite*, 56 F.3d at 1550.  In contrast, when the unaccused
11 products "operate independently" of the accused feature and "command a market value and serve
12 a useful purpose independently" of the accused feature, sales of the unaccused products are legally
13 irrelevant.  *See Am. Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1269 (Fed. Cir. 2008)
14 (affirming district court's refusal to award damages based on patented feature's effect on sales of
15 unaccused products); *see also Fort James Corp. v. Sweetheart Cup Co.*, No. 97-C-1221, 1998 WL
16 709813, at *2 (S.D.N.Y. Oct. 8, 1998) ("'Convoyed sales' do not simply refer to marketing
17 advantages, but rather . . . to the inclusion of a patented item as part of a machine, which also
18 contains unpatented parts, but for which 'substantially the entire marketable value of the total
19 mechanism is attributable to the patented feature.'").  Thus, courts deny discovery regarding
20 unaccused products when the patentee fails to establish this foundational "functional unit"
21 requirement.  *See, e.g.*, *Caliper Techs. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 559
22 (N.D. Cal. 2003) (denying discovery regarding a machine that, while capable of running the
23 accused product, was also capable of running various other products, and holding that the claimed
24 feature and the machine could not be considered a single product or functional unit as required by
25 *Rite-Hite*).

26 [redacted]
27 [redacted]
28 [redacted]

Google's Opposition to Unwired's Motion to Compel Discovery on Google Financial Information



[Lines 1–24 redacted]

25 Rather than address the factual predicate necessary to make Google's unaccused

26 advertising products relevant under the controlling law, Unwired argues that the accused

27 features—such as "the ability to zoom in and out on a map on a mobile device"—are "extremely

28 important" to Google Maps and that one Google engineer "would not use Google Maps" without

1  the accused feature.  Mot. at 6.  These assertions, even if they are true, are insufficient as a matter
2  of law to entitle Unwired to damages based on sales of unaccused products.  Indeed, they are even
3  insufficient as a matter of law to entitle Unwired to damages based on unaccused features within
4  Google Maps itself.  To claim damages on Google Maps as a whole, as opposed to just the
5  accused features in Google Maps, Unwired would need to establish a foundation for the "entire
6  market value rule," which applies only when the accused features "constitute[] the basis for
7  customer demand" for the accused products.  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694
8  F.3d 51, 67 (Fed. Cir. 2012).  As the Federal Circuit held in *LaserDynamics*, the fact that
9  customers may not want the accused product without the accused feature does *not* make the
10 accused feature *the basis* for customer demand and is legally insufficient to justify application of
11 the entire market value rule.  *See id.* at 68; *see also* Dkt. 328 at 12-14 (discussing *LaserDynamics*
12 in greater detail).  Thus, Unwired's argument that the accused features (*e.g.*, zooming) may be
13 "extremely important" or even essential to Google Maps does not even allow Unwired to claim
14 damages based on unaccused features in Google Maps ███████████.  This conclusion applies
15 with even greater force to Unwired's claim for damages based on Google's unaccused advertising
16 products, which are even more remote and attenuated than unaccused features in Google Maps.

17              **2.      The Requested Discovery Would Be Unduly Burdensome**

18             In addition to seeking irrelevant discovery about ██████, Unwired also apparently
19 seeks to compel discovery of "all estimates of the value of or revenues generated using Google
20 users' location."  Mot. at 7.  The breadth and vagueness of that request are remarkable, as is the
21 fact that Unwired is still trying to fish for information about unidentified products at this point in
22 the case without even offering a foundation for their relevance.
23             For Google to provide discovery regarding just ██████ would be extremely
24 burdensome at this point in the case.  Google previously produced some documents discussing
25 ██████ for an entirely separate purpose, namely, responding to discovery requests related to the
26 now-stayed patents, which Unwired actually asserted against some of Google's advertising
27 products.  But with those patents no longer actively being litigated, the witnesses knowledgeable
28 about ██████ and the potential ways in which Google's advertising products use ██████ are on

- 9 -
Google's Opposition to Unwired's Motion to Compel Discovery on Google Financial Information

1  different engineering teams from the engineers who have already been identified as witnesses and
2  given deposition testimony, and those engineers use different source code from the source code
3  Google has already produced.  Requiring discovery into ▮ thus would entail all new witnesses
4  and all new source code, at a point where there already have been more than 30 fact witness
5  depositions (with more to come that the parties agreed to complete after the cutoff) and more than
6  26 gigabytes of produced source code.

7  The burden may be vastly compounded by Unwired's ill-defined request for
8  discovery regarding other unidentified products that "us[e] Google users' location."  Providing
9  discovery in response to that request would first require identifying every Google product that
10 uses geotargeting.  Then, for each such product, Google would need to go through the same
11 exercise described above for ▮ to identify all new witnesses and all new source code.  All of
12 that additional burden and delay would need to occur even though the evidence has no conceivable
13 purpose under the Federal Circuit's precedents, which tightly circumscribe the situations in which
14 collateral benefits to unaccused products can properly be considered.  The Court should reject this
15 costly, burdensome, and pointless fishing expedition.

## III. CONCLUSION

17 For the reasons stated above and in Google's cross-motion for a protective order to
18 prohibit discovery regarding unaccused products, *see* Dkt. 328, Unwired's motion should be
19 denied.

21 DATED:  June 16, 2014              MUNGER, TOLLES & OLSON LLP

                                   By:    /s/ Adam R. Lawton
                                          Adam R. Lawton
                                   Attorneys for Defendant Google Inc.

**CERTIFICATE OF SERVICE**

I certify that, on June 16, 2014, I served a true and correct copy of **GOOGLE'S OPPOSITION TO UNWIRED PLANET'S MOTION TO COMPEL DISCOVERY ON GOOGLE FINANCIAL INFORMATION** upon the following counsel of record through the Court's CM/ECF system:

| | |
|---|---|
| Theodore Stevenson, III<br>Kevin L. Burgess<br>Pierre J. Hubert<br>David Sochia<br>Kevin M. Kneupper<br>Nicholas M. Mathews<br>James E. Quigley<br>Mario A. Apreotesi<br>Ashley N. Moore<br>Warren Lipschitz<br>MCKOOL SMITH P.C.<br>3000 Crescent Court, Suite 1500<br>Dallas, TX 75201 | Michael D. Rounds<br>Adam K. Yowell<br>Ryan J. Cudnik<br>WATSON ROUNDS<br>5371 Kietzke Lane<br>Reno, NV 89511 |

DATED:  June 16, 2014

                                                /s/ Adam R. Lawton