Theodore Stevenson III (*pro hac vice*)
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Fax: (214) 978-4044

Kevin Burgess (*pro hac vice*)
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Pierre Hubert (*pro hac vice*)
Texas State Bar No. 24002317
phubert@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th St., Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Fax: (512) 692-8744

Michael D. Rounds
Nevada State Bar No. 4734
mrounds@watsonrounds.com
Adam K. Yowell
Nevada State Bar No. 11748
ayowell@watsonrounds.com
WATSON ROUNDS
5371 Kietzke Lane
Reno, Nevada 89511-2083
Telephone: (775) 324-4100
Fax: (775) 333-8171

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNWIRED PLANET LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC., a California corporation,<br><br>Defendant. | Case No. 3:12-cv-00504-MMD-VPC<br><br>**UNWIRED PLANET LLC'S RESPONSE IN OPPOSITION TO GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NOS. 6,684,087 AND 6,292,657 ON GROUNDS OF INDEFINITENESS** |

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................1

II.    BACKGROUND ............................................................................................2

    A.     Factual Background ...........................................................................2

    B.     Procedural Background.......................................................................4

III.   LEGAL STANDARDS ...................................................................................5

    A.  Summary Judgment .............................................................................5

    B.  Indefiniteness .....................................................................................5

IV.    ARGUMENT ..................................................................................................6

    A.  The Asserted Claims of the '087 Patent Are Definite ....................6

        1.   The Preambles Are Not Limiting.......................................7

        2.   The Preamble's Meaning Is Clear....................................13

    B.  The Asserted Claim of the '657 Patent Is Definite .......................17

V.     CONCLUSION..............................................................................................19

i

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Allen Eng'g Corp. v. Bartell Indus.*,
  299 F.3d 1336 (Fed. Cir. 2002 ...................................................................7

5

6

*American Medical Systems v. Biolitec, Inc.*,
  618 F.3d 1354 (Fed. Cir. 2010) ................................................................12

7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................5

8

9

*Catalina Mktg. Int'l v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002) ..........................................................7, 8, 11

10

11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................5

12

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
  2009 U.S. Dist. LEXIS 33414 (E.D. Tex. Apr. 20, 2009) ......................12

13

14

*Endo Pharms. Inc. v. Watson Labs., Inc.*,
  2014 U.S. Dist. LEXIS 84804 (E.D. Tex. June 23, 2014) ..................7, 11

15

*Ficep Corp. v. Voortman USA Corp*,
  2014 U.S. Dist. LEXIS 96803 (D. Md. July 15, 2014)........................7, 11

16

17

*Freeny v. Apple Inc.*,
  2014 U.S. Dist. LEXIS 120446 (E.D. Tex Aug. 28, 2014) ..................5, 13

18

19

*In re Maxim Integrated Prods., Inc.*,
  2014 U.S. Dist. LEXIS 100448 (W.D. Penn. July 23, 2014) ....................6

20

*Microsoft Corp. v. i4i Ltd. P'ship*,
  131 S. Ct. 2238 (2011)...............................................................................6

21

22

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014)..............................................................5, 13, 17, 18

23

24

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*,
  731 F.2d 818 (Fed. Cir. 1984)..................................................................13

25

*Select Retrieval LLC v. Amerimark Direct LLC*,
  2014 U.S. Dist. LEXIS 33305 (D. Del. Mar. 14, 2014) .........................12

26

27

28

ii

*Silver State Intellectual Techs., Inc. v. Garmin Int'l Inc.*,
    2013 U.S. Dist. LEXIS 114175 (D. Nev. Aug. 13, 2013) (Pro, J.)..........................7, 10, 11, 12

*Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*,
    743 F.3d 1359 (Fed. Cir. 2014).............................................................................................6, 18

*Xerox Corp. v. 3Com Corp.*,
    267 F.3d 1361 (Fed. Cir. 2001).................................................................................................5

**STATUTES**

35 U.S.C. § 112, ¶ 2.....................................................................................................................5

**OTHER AUTHORITIES**

Fed. Rule Civ. Proc. 56(c)(2)........................................................................................................5

Plaintiff Unwired Planet LLC ("Unwired Planet") files this response in opposition to the motion for summary judgment of invalidity of U.S. Patent Nos. 6,684,087 (the "'087 Patent") and 6,292,657 (the "'657 Patent") on grounds of indefiniteness filed by Defendant Google, Inc. ("Google") (dkt. 389, "Motion").

## I.   INTRODUCTION

Google's Motion seeks confusion where none exists. The claims at issue are not indefinite; each claim informs those of skill in the art of the scope of the claimed invention.

The Court need not consider whether the '087 Patent claims are indefinite, because the terms upon which Google relies are found only in the claim preambles, none of which limit the claims. The structure of the claimed invention is completely set forth in the body of each claim, and the preambles merely state an intended use. Regardless, the meaning of the preambles is clear to one of skill in the art, such as Unwired Planet's expert, Neeraj Gupta. In his declaration,[1] Mr. Gupta explains how the '087 Patent delineates with reasonable certainty the scope of "image having dimensions much larger than the dimension of the screen," the phrase that Google contends renders the claims indefinite. Motion at 12-15.

Google argues that the accidental omission of "to be" before the word "pushed" in claim 16 of the '657 Patent renders that claim invalid. Motion at 15-16. But this is an obvious typographical error that the Court has the power to correct. Even without correction, a person of ordinary skill in the art is reasonably certain as to the scope of the claim based on the specification and claim language. *See, e.g.*, Ex. 5 (Declaration of Dr. Mark Jones).[2]

---

[1] Mr. Gupta's supporting declaration is attached as Exhibit 3. Google's Motion is not supported by the opinion of one of skill in the art.

[2] Dr. Jones' supporting declaration is attached as Exhibit 5. Google's Motion is not supported by the opinion of one of skill in the art.

## II.    BACKGROUND[3]

### A.  Factual Background

Unwired Planet currently asserts claims from various patents against Google, including claims from the '087 Patent and the '657 Patent. GSUF ¶ 1. The asserted claims of the '087 Patent are all independent claims: 1, 17, 27, and 31. UPSUF ¶ 25. Claim 1 of the '087 Patent reads as follows:

> 1. A method for recursively displaying on a screen of a mobile device an image having dimensions much larger than the dimension of the screen; the method comprises:
>> displaying on the screen of the mobile device a reduced image forwarded from a server device, the reduced image transformed from the image with respect to a set of parameters associated with the screen;
>> generating a new request when a key in the mobile device corresponding to a subarea in the reduced image is activated; and
>> receiving a detailed image of the subarea from the server device when the server device renders the new request.

GSUF ¶ 2. Claim 27 is similar, but is instead an apparatus, not a method. GSUF ¶ 4. Claim 17 of the '087 Patent reads as follows:

> 17. A method for recursively displaying on a screen of a mobile device an image having dimensions much larger than the dimension of the screen, the mobile device having a keypad including a number of keys; the method comprises:
>> fetching the image from a resource on a landnet according to a request from the mobile device; the request comprising an address identifier identifying the resource;
>> generating from the image an image hierarchy starting with a reduced image equally divided into a number of subareas, each of the subareas pointing to a detailed version thereof; and
>> forwarding the reduced image to the mobile device for display.

GSUF ¶ 3. Claim 31 is similar, but is instead an apparatus, not a method. GSUF ¶ 5.

Mr. Gupta states that a person of ordinary skill in the art would have understood that the scope of the phrase "an image having dimensions much larger than the dimension of the screen" is clear and that the phrase means that an image is at least twice as large as the mobile device

---

[3] Citations to Google's Statement of Facts (dkt. 389-1) begin with GSUF. Citations to Unwired Planet's Statement of Facts (filed contemporaneously herewith) begin with UPSUF.

screen; either its width or its height is at least two times as large as the respective width or height of the mobile device screen. UPSUF ¶ 39 (citing Ex. 3 (Decl. of N. Gupta)).[4]

Unwired Planet currently is asserting only one claim from the '657 Patent: claim 16. GSUF ¶ 1. It reads as follows:

16. A method for securely managing a plurality of mobile stations serviced by a carrier infrastructure, said method comprising:

sending a request from a provisioning entity to push fleet data to the plurality of mobile stations;

receiving a challenge response from a fleet managing system in response to said request;

accessing said fleet managing system by supplying correct credential information to said challenge response; wherein said fleet managing system comprises:

an account manager managing a plurality of user accounts, each corresponding to one of the mobile stations;

a proxy server module;

a memory; and

a provisioning interface providing secure access to said memory;

preparing said fleet data to be received in said memory;

determining the plurality of the mobile stations verified by said account manager with said plurality of said user accounts; and

executing said request to cause said fleet data pushed by said proxy server module to the plurality of the mobile stations.

GSUF ¶ 6.

In the Examiner's reasons for allowance of the '657 patent, the Examiner stated that the prior art fails to teach the steps of pending claim 18 (issued claim 16), including the step of "executing the request to push the fleet data by the proxy server to the plurality of mobiles." UPSUF ¶ 43.

---

[4] Despite being aware of the relevant case law regarding indefiniteness and understanding the fact-intensive nature of the inquiry, Google chose not to include a declaration or affidavit from a person of ordinary skill in the art that supports its positions. Google should not be allowed to include such a declaration or affidavit in its reply brief. *See* L.R. 56-1 ("***Motions for summary judgment and responses thereto*** shall include a concise statement setting forth  each fact material to the disposition of the motion, which the party claims is or is not genuinely in issue, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or  other evidence upon which the party relies.") (emphasis added).

Dr. Mark Jones opines that a person of ordinary skill in the art would have understood that the scope of the phrase "cause said fleet data pushed by said proxy server module to the plurality of the mobile stations" means "cause said fleet data to be pushed by said proxy server module to the plurality of the mobile stations." UPSUF ¶ 45 (citing Ex. 5).

**B. Procedural Background**

Unwired Planet has served infringement contentions and supplemental infringement contentions throughout discovery in this case as Google produced additional documents and source code. Google has served several invalidity contentions in this case. UPSUF ¶ 46. In its contentions, Google asserted that the asserted claims were indefinite based on the use of "much larger" and "the dimension of the screen" to describe an "image" in the preambles of the asserted claims. UPSUF ¶ 46. Unwired Planet responded each time that Google was incorrect. UPSUF ¶ 48. The parties have stipulated to a construction of the term "image." UPSUF ¶ 38.

Google first asserted on February 14, 2014 that claim 16 of the '657 Patent was indefinite on the grounds that "a person of skill in the art would be unable to determine the meaning of 'executing said request to cause said fleet data pushed by said proxy server module to the plurality of the mobile stations.'" UPSUF ¶ 47. Unwired Planet responded each time that Google was incorrect. UPSUF ¶ 48. With respect to the term at issue in the '657 Patent (*i.e.*, "cause said fleet data pushed by said proxy server module to the plurality of the mobile stations"), Unwired Planet has proposed a construction, UPSUF ¶ 44 (citing dkt. 351-1 at 3), and the Court held a *Markman* hearing on August 20-21, 2014, *id.* (citing dkts. 393-394). If the Court construes the term, Google's arguments will be moot.

4

1    **III.    LEGAL STANDARDS**

2        **A.  Summary Judgment**

3        "Summary judgment is appropriate when there is no genuine issue as to any material fact

4    and the moving party is entitled to judgment as a matter of law." *Xerox Corp. v. 3Com Corp.*,

5    267 F.3d 1361, 1364 (Fed. Cir. 2001); *accord* Fed. Rule Civ. Proc. 56(c)(2); *Celotex Corp. v.*

6    *Catrett*, 477 U.S. 317, 322 (1986). However, "disputes over facts that might affect the outcome

7    of the suit under the governing law will properly preclude the entry of summary judgment."

8    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When ruling on a motion for

9    summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable

10   inferences are to be drawn in the nonmovant's favor." *Xerox*, 267 F.3d at 1364 (citing *Anderson*,

11   477 U.S. at 255).

12

13       **B.  Indefiniteness**

14       A patent "shall conclude with one or more claims particularly pointing out and distinctly

15   claiming the subject matter which the applicant regards as [the] invention." 35 U.S.C. § 112, ¶ 2.

16   The Supreme Court has held that "§112, ¶2 . . . require[s] that a patent's claims, viewed in light

17   of the specification and prosecution history, inform those skilled in the art about the scope of the

18   invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120,

19   2129 (2014). "The definiteness requirement, so understood, mandates clarity, while recognizing

20   that absolute precision is unattainable." *Id.* As one court recently noted, "[t]he Supreme Court

21   recognized that 'some modicum of uncertainty' is 'the price of ensuring the appropriate

22   incentives for innovation' and that because patents are directed to persons of skill in the art, *all*

23   *that is required is that the patent apprise such persons of the scope of the invention*." *Freeny v.*

24   *Apple Inc.*, 2014 U.S. Dist. LEXIS 120446, at *16-17 (E.D. Tex Aug. 28, 2014) (emphasis

25   added) (citation omitted) (quoting *Nautilus*, 134 S. Ct. at 2128).

26

27

28

5

Further, "[w]hile the ultimate question of patent validity is one of law, the same factual questions underlying the PTO's original examination of a patent application will also bear on an invalidity defense in an infringement action." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242-43 (2011) (citations omitted). After *Nautilus*, courts must continue to account for the factual background when considering indefiniteness. *In re Maxim Integrated Prods., Inc.*, 2014 U.S. Dist. LEXIS 100448, at *33-34 (W.D. Penn. July 23, 2014) ("*Nautilus* does not overrule any other legal principle recited in this court's claim construction decision. *Nautilus*, in fact, reaffirms the majority of this court's statement of the law; specifically its focus on the perspective of a person of ordinary skill in the art, the importance of the public-notice function of the definiteness requirement, and the need to decide definiteness questions by reviewing the claims, the specification, and the prosecution history."); *see also Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1366-68 (Fed. Cir. 2014) (relying on expert testimony in finding no indefiniteness after *Nautilus*). Any facts supporting invalidity must be proven by clear and convincing evidence. *See Microsoft*, 131 S. Ct. at 2242.

## IV.   ARGUMENT

### A.  The Asserted Claims of the '087 Patent Are Definite.

Google argues that the '087 Patent claims are "not reasonably particular or distinct." Google asserts that a person of ordinary skill is unable to (1) "measure or ascertain whether an particular image is 'much larger'—as opposed to merely larger—than a particular screen"; or (2) understand "*which* dimension of the screen is meant by the phrase 'the dimension of the screen.'" Motion at 8. Google is wrong on both counts, but the Court need not even reach the issue because these terms appear in the preambles of the claims—and the preambles are not limitations. *See id.* ("For a phrase in the preamble to render the claim indefinite, the preamble must be a substantive limitation on the claim.").

**1.   The Preambles Are Not Limiting.**

"Generally, the preamble does not limit the claims." *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002) (quoted by *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 2014 U.S. App. LEXIS 12242, at *10 (Fed. Cir. June 30, 2014)). A preamble limits the claim only "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim," but "a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'" *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999); *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)).

**a)   The Claims Are Structurally Complete Without their Preambles.**

One way to determine if the body of a claim is structurally complete is to delete the disputed phrase or the entire preamble and analyze any effects on the structural definition or operation of the claim. *Catalina*, 289 F.3d at 802 ("[D]eletion of the disputed phrase from the preamble of Claim 1 does not affect the structural definition or operation of the terminal itself. The claim body defines a structurally complete invention. The location of the terminals in stores merely gives an intended use for the claimed terminals."); *see also Silver State Intellectual Techs., Inc. v. Garmin Int'l Inc.*, 2013 U.S. Dist. LEXIS 114175, at *10-16 (D. Nev. Aug. 13, 2013) (Pro, J.) (finding preamble term not a limitation, including by deleting the preamble and analyzing claim body, even where the preamble included antecedent basis); *Ficep Corp. v. Voortman USA Corp,* 2014 U.S. Dist. LEXIS 96803, at *12-20 (D. Md. July 15, 2014) (determining preamble not a limitation, including by deleting the preamble and analyzing claim body); *Endo Pharms. Inc. v. Watson Labs., Inc.*, 2014 U.S. Dist. LEXIS 84804, at *12-24 (E.D. Tex. June 23, 2014) (similar).

7

The preambles at issue here are not "necessary to give life, meaning, and vitality to the claim." *Catalina*, 289 F.3d at 808 (quotations omitted). The bodies of the asserted claims describe structurally complete inventions, and their preambles merely recite an intended use of the invention:  to display on the screen of a mobile device an image that is much larger than the screen. As in the *Catalina*, *Silver State*, *Ficep Corp.*, and *Endo* cases, it is instructive to remove the preamble from an asserted claim, to see whether what remains (*i.e.*, the body of the claim) recites a structurally complete and operative invention. *Catalina*, 289 F.3d at 808.

With its preamble removed, claim 1 reads (annotated with [a], [b], and [c]):

> [a] displaying on the screen of the mobile device a reduced image
>     forwarded from a server device, the reduced image transformed
>     from the image with respect to a set of parameters associated with
>     the screen;
> [b] generating a new request when a key in the mobile device
>     corresponding to a subarea in the reduced image is activated; and
> [c] receiving a detailed image of the subarea from the server device when
>     the server device renders the new request.

*See* GSUF ¶ 2 ('087 Patent at claim 1); *see also* GSUF ¶ 4 ('087 Patent at claim 27) (similar, but an apparatus). The body of claim 1 recites a complete invention that includes a mobile device that: (1) displays on its screen a "reduced image," which is transformed, based on parameters associated with the mobile device screen, from an "image" (step [a]); and (2) is able to receive a "detailed image" of a "subarea" in the "reduced image" (step [c]) by generating a new request by activating the subarea in the reduced image (step [b]).

The body of the claim also specifies the operative relationship between the "image," the "reduced image," and the "screen of the mobile device": the reduced image is transformed from the image with respect to parameters associated with the screen, so that the reduced image can be displayed on the screen of the mobile device. *See* GSUF ¶ 2 ('087 Patent at claim 1). As a result of the transformation, the reduced image does not contain all of the detail present in the image. Some of that missing detail is included in each "detailed image of a subarea in the reduced

8

image." *See id.* Because the reduced image has at least two subareas, the two or more detailed images, taken together, are larger than the reduced image and the screen of the mobile device. *See id.* The original image, which provides the detail for the detailed images, is also larger than the screen of the mobile device.

The preamble recites that the invention of claim 1 is intended for use with "image[s] having dimensions much larger than the method of the screen," but that purpose is not necessary to the claim's recitation of a complete and operative invention. The body of claim 27, the apparatus analog of method claim 1, is structurally complete for the same reasons.

The body of claim 17, with its preamble removed, is also structurally complete. With its preamble removed, it reads (annotated with [a], [b], and [c]):

> [a] fetching the image from a resource on a landnet according to a request from the mobile device; the request comprising an address identifier identifying the resource;
> [b] generating from the image an image hierarchy starting with a reduced image equally divided into a number of subareas, each of the subareas pointing to a detailed version thereof; and
> [c] forwarding the reduced image to the mobile device for display.

*See* GSUF ¶ 3 ('087 Patent at claim 17); *see also* GSUF ¶ 5 ('087 Patent at claim 31) (similar, but an apparatus). The body of the claim recites a complete invention that includes: (1) fetching an "image" according to a mobile device request (step [a]); (2) generating from the image, an "image hierarchy," starting with a "reduced image" (step [b]); (3) dividing the reduced image equally into "subareas" pointing to a more "detailed version"(step [b]); and (4) sending the reduced image to the mobile device (step [c]).

As with claim 1, the preamble recites an intended use but is not necessary to the recitation of a complete invention in the body of the claim. It is evident from the body of claim 17, as it was evident from the body of claim 1, that the "reduced image" is generated from the "image" so that the "reduced image" can be displayed on the mobile device display. *See* GSUF ¶

9

4 ('087 Patent at claim 17). Because the "reduced image" is "divided into a number of subareas" that point to "detailed versions," the body of claim 17, like the body of claim 1, is clear that the "image" is larger than the "reduced image" and the mobile device display. *See* GSUF ¶ 4 ('087 Patent at claim 17). The body of claim 31, the apparatus analog of method claim 17, is structurally complete for the same reasons.

This case is similar to *Silver State Intellectual Techs., Inc. v. Garmin Int'l Inc.*, 2013 U.S. Dist. LEXIS 114175 (D. Nev. Aug. 13, 2013) (Pro, J.). The claim at issue there read, in part:

> *A digital camera with GPS stamp* for use with a PCD device, comprising:
>     a housing containing an imaging device;
>     a GPS receiver for determining a position of *the digital camera* including latitude
>         and  longitudinal information; . . .

*Id.* at *10-11. The defendant argued that the "GPS stamp" portion of the preamble (that is, "A digital camera with GPS stamp")[5] was limiting. *Id.* at *12-13. Even though the antecedent basis for the claim term "digital camera" is in the preamble, the court held that the preamble does not limit the claim, because "[t]he preamble does not give life, meaning, or vitality to the claimed invention, and deleting the preamble would not affect the structure and steps of the claimed invention." *Id.* at *14. The same is true of the asserted claims of the '087 Patent. Because deleting their preambles does not affect the structure and steps of the claims, the preambles are not limitations, even though the claim term "image" finds its antecedent basis in the preambles.

### b)  The Preambles Do Not Provide Necessary Structure to the Claims.

Google asserts that the preambles provide important structural information to the claims. Motion at 9. Google suggests that the preamble's discussion of image versus screen dimensions is something "that the specification underscores as important." *Id.* Google further suggests that

---

[5] A review of the defendant's claim construction brief, attached as Exhibit 14, shows that the defendant argued that the entire phrase, "A digital camera with GPS stamp," "recit[]es the key structural makeup of the claimed invention." *Id.* at 24.

"the 'large image' feature that is important to the alleged invention" is referenced only in the preambles. *Id.*

Even if true,[6] the bodies of the claims, as discussed above, address displaying images larger than mobile device screens. Google argues that the phrase "an image having dimensions much larger than the dimension of the screen" in the preambles of the independent claims "shows that [they] describe[] structure that is important to the patent." Motion at 9. But as discussed above, that phrase does no more than recite an intended use of the claimed inventions; the bodies of the claims describe all necessary structure, including the difference in size between an image and mobile device screens.

### c) That the Antecedent Basis For "Image" Does Not Turn the Preambles Into Limitations.

Google's second argument is that "the body of the claim depends upon the preamble for its antecedent basis" and therefore provides essential structural features.[7] Motion at 9. But the bodies of the asserted claims provide complete structural information about the claimed inventions, as evidenced by reading the claims after deleting their preambles. *See Catalina*, 289 F.3d at 802; *Silver State*, 2013 U.S. Dist. LEXIS 114175, at *10-16; *Ficep Corp.*, 2014 U.S. Dist. LEXIS 96803, at *12-20; *Endo Pharms.*, 2014 U.S. Dist. LEXIS 84804, at *12-24. Here, as in *Silver State*, although deleting the preamble causes a term in the claim's body to lose its

_____

[6] The only time that the written description describes an image as having "larger" dimensions than a screen is in the patent's first paragraph, which Google cites. Motion at 9 (citing UPSUF ¶ 29 ('087 Patent at 1:9-12)). If, as Google suggests, the alleged "large image" feature were important to the invention, the word "larger" would have featured more prominently in the written description.

[7] Google itself recognizes that where a preamble provides antecedent basis, it only "generally limits the scope of the claim." Motion at 10. The claim itself must be analyzed, as Unwired Planet has done herein, to determine whether the claim body "defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Catalina*, 289 F.3d at 808 (quotations omitted).

antecedent basis, the preamble is nonetheless a non-limitation, because deleting the preamble does not affect the structure and steps of the claimed invention. 2013 U.S. Dist. LEXIS 114175, at *10-16.

Other courts have found preambles non-limiting even though they provided the antecedent bases for claim terms. *American Medical Systems v. Biolitec, Inc.*, 618 F.3d 1354, 1356, 1358-59 (Fed. Cir. 2010), for instance, is analogous.[8] The court noted that "[t]he preamble reference to 'vaporization of tissue' does not specify a particular type or location of tissue being treated." *Am. Med. Sys.*, 618 F.3d at 1359.[9] Nor did "the generic term 'tissue' in the preamble provide any 'context essential to understand[ing]' the meaning of 'the tissue' in the body of each claim." *Id.* The preambles at issue here similarly fail to provide context essential to understanding the meaning of "image" in the bodies of the claims.

### 2. The Preamble's Meaning Is Clear.

---

[8] Further, in *Select Retrieval LLC v. Amerimark Direct LLC*, 2014 U.S. Dist. LEXIS 33305 (D. Del. Mar. 14, 2014), the court held that the preamble was not a limitation, despite the preamble including the language "a database record having plural fields" and the claim reciting "one or more fields of the database record." 2014 U.S. Dist. LEXIS 33305, at *6-9 (referring to U.S. Patent No. 6,128,617 (Ex. 15)). And in *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 U.S. Dist. LEXIS 33414 (E.D. Tex. Apr. 20, 2009), where "tubular string" found its antecedent basis in the preambles of multiple claims, the court noted that "deletion of these preamble terms does not affect the structure or steps of the claimed invention, these terms do not limit the claims." *Id.* at *56-61.

[9] The representative claim at issue in *American Medical Systems* was claim 31, which read:

A method for photoselective vaporization of tissue, comprising:
   delivering laser radiation to a treatment area on the tissue, the laser radiation having a wavelength and having irradiance in the treatment area sufficient to cause vaporization of a substantially greater volume of tissue than a volume of residual coagulated tissue caused by the laser radiation, wherein the delivered laser radiation has an average irradiance in the treatment area greater than 10 kiloWatts/cm<2> in a spot size at least 0.05 mm<2>.

*Am. Med. Sys.*, 618 F.3d at 1356.

12

The scope of the phrase "an image having dimensions much larger than the dimension of the screen"[10] is reasonably certain to a person of ordinary skill in the art. "The definiteness requirement . . . mandates clarity, while recognizing that absolute precision is unattainable." *Nautilus*, 134 S. Ct. at 2129. Whether the level of certainty provided is reasonable depends on the subject-matter of the patent. *Id.* While "[d]efiniteness problems often arise when words of degree are used in a claim," "[t]hat some claim language may not be precise . . . does not automatically render a claim invalid." *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984). Ultimately, "the district court must determine whether the patent's specification provides some standard for measuring that degree. The trial court must decide, that is, whether one of ordinary skill in the art would understand what is claimed when the claim is read in light of the specification." *Id.* "[A]ll that is required is that the patent apprise [persons of skill in the art] of the scope of the invention." *Freeny*, 2014 U.S. Dist. LEXIS 120446, at *16-17 (E.D. Tex Aug. 28, 2014) (citation omitted) (quoting *Nautilus*, 134 S. Ct. at 2128). The phrase "an image having dimensions much larger than the dimension of the screen" meets this standard; its meaning is clear from both the written description and the claims.

### a)  The '087 Patent Is Clear About the Meaning of "Much Larger."

The preamble of claim 1 of the '087 Patent recites "[a] method for recursively displaying on a screen of a mobile device an image having dimensions much larger than the dimension of the screen." GSUF ¶ 2. The other asserted claims include similar language in their preambles. GSUF ¶¶ 3-5. Google contends that the claims are indefinite because the meaning of "much larger" is not reasonably clear to one of ordinary skill in the art. Motion at 12-13. Google is

---

[10] Google improperly breaks this complete phrase up into disjoint subphrases, "much larger" and "the dimension of the screen." The entire phrase, "an image having dimensions much larger than the dimension of the screen," should be considered as a whole.

wrong. The '087 Patent describes with reasonable certainty the relationship between the size of the image and the size of the mobile device screen.

The patent explains, for example, that "[f]rom the image resolution perspective, the original image 500, regardless of the dimensions thereof, can be displayed, block by block and hierarchically, on the small screen of a mobile device." UPSUF ¶ 34 ('087 Patent at 7:53-56). Images that may be many times larger than a mobile device screen are divided into blocks, each of which can be displayed on the screen, so that by viewing the blocks one at a time the user eventually is able to see the entire image. *See* Ex. 3 (Decl. of N. Gupta) ¶ 20. Similar descriptions of how a user is able to view an entire large image by recursively viewing pieces of it that are small enough to fit onto the screen of her mobile device are found throughout the patent's written description:

- "As a result, all parts in the original image can be recursively viewed." UPSUF ¶¶ 26 ('087 Patent at Abstract), 30 ('087 Patent at 2:24-25).

- "As a result, a user is able to see recursively all the details that the original image provides." UPSUF ¶ 31 ('087 Patent at 3:19-20).

- "Depending on the original image 500, the details can be requested until the original image 500 could provide." UPSUF ¶ 33 ('087 Patent at 7:50-52).

- "If a user enters another request for one of the subareas in the displayed detailed version at 652, the link server will recursively provide the detailed version to the resolution of the original image provides." UPSUF ¶ 37 ('087 Patent at 9:11-15).

*See also* Ex. 3 (Decl. of N. Gupta) ¶ 20.

Dividing the image into blocks that can be displayed, one block at a time, on a mobile device screen allows users to view the entire image, even for images that are many times larger

than the screen. *E.g.*, Ex. 34 ('087 Patent) at 7:53-56; *see also* Ex. 3 (Decl. of N. Gupta) ¶ 20. But, in the words of the preamble, this approach to displaying the image requires an image that is "much larger" than the mobile device screen. *See* Ex. 3 (Decl. of N. Gupta) ¶ 21. In order to be displayed "block by block and hierarchically," the image must be divided into at least two blocks; a single block cannot be displayed "block by block" and does not constitute a hierarchy. *See* Ex. 3 (Decl. of N. Gupta) ¶ 21. Thus, to be "much larger" than the mobile device screen, an image must contain at least two blocks, each of which can be displayed on the screen. *See* Ex. 3 (Decl. of N. Gupta) ¶ 21. An image divisible into two such blocks is at least twice as large as the mobile device screen; either its width or its height is at least two times as large as the respective width or height of the mobile device screen. *See* Ex. 3 (Decl. of N. Gupta) ¶ 23.

In the hierarchical representations of Figs. 5 and 7, the number of blocks into which the image is divided is determined by the number of subareas of the reduced images and the number of levels in the hierarchies. In Fig. 5, for example, the reduced images have nine subareas (depicted using 3x3 grids superimposed over images 5B-5D), and the hierarchy is three levels deep. *See* UPSUF ¶¶ 27 ('087 Patent Figs. 5B-5D), 32 ('087 Patent at 7:23-50); *see also* Ex. 3 (Decl. of N. Gupta) ¶ 22. Thus, the image depicted in Fig. 5A is divided into at least 81 blocks and possibly more, if the hierarchy extends beyond the three levels shown in Fig. 5.[11] *See* Ex. 3 (Decl. of N. Gupta) ¶ 22. The same is true of the hierarchy depicted in Fig. 7. *See* UPSUF ¶¶ 28 ('087 Patent Fig. 7), 36 ('087 Patent at 8:45-9:3); *see also* Ex. 3 (Decl. of N. Gupta) ¶ 22.

But the patent is clear that reduced images need not be divided into nine subareas; they need only be divided into at least two. *See* UPSUF ¶ 35 ('087 Patent at 8:18-21) ("The reduced

---

[11] Because the third level of the hierarchy of Fig. 5 includes subareas, it is possible that the hierarchy extends beyond three levels deep. If the hierarchy includes a fourth level, the image would include up to 729 blocks. *See* Ex. 3 (Decl. of N. Gupta) ¶ 22.

image is inherently divided into a *number* of subareas . . . ."); *see also* Ex. 3 (Decl. of N. Gupta) ¶¶ 24, 27. The asserted claims likewise require the reduced image to have at least two subareas. *See, e.g.*, GSUF ¶ 4 ('087 Patent at claim 17 ("a reduced image equally divided into a number of subareas")). The claims also require detailed images of the subareas, which means (*e.g.*, in the context of Figs. 5 and 7) that the hierarchies are at least two levels deep—the first level contains the reduced image, and the second level contains the detailed images of the reduced image's subareas. *See, e.g.*, GSUF ¶ 4 ('087 Patent at claim 17); *see also* Ex. 3 (Decl. of N. Gupta) ¶ 26. When the reduced image has the minimum two subareas and the hierarchy is the minimum two levels deep, the image is divided into two blocks, which are the two detailed images in the second level of the hierarchy. *See* Ex. 3 (Decl. of N. Gupta) ¶ 27. Thus, the claims are consistent with the specification's teaching that the image is "much larger" than the mobile device screen if the width or height of the image is at least twice as large as the respective width or height of the screen. *See* Ex. 3 (Decl. of N. Gupta) ¶ 28.

>    **b)  "The Dimension of the Screen" Refers to the Image Being "Much Larger" than Either the Width or Height of the Screen.**

Google also argues that the asserted claims of the '087 Patent are indefinite due to the use of "the dimension of the screen" in their preambles. Motion at 14-15. Google suggests that there are "various potential interpretations" of "the dimension of the screen." *Id.* at 14. Google posits two: (1) both the width and height of an image are "much larger" than the respective dimension of the screen; and (2) either the width or height, not necessarily both, are larger than the respective dimension of the screen. *Id.*

Google's argument divides the preamble phase into two pieces, but the operative question is whether the meaning of the entire phrase "image having dimensions much larger than the dimension of the screen" is reasonably certain. As discussed above, the patent is clear that an

image is "much larger" than the screen if either its width or height is at least twice as large as the corresponding width or height of the screen. This comports with the second of Google's two interpretations for "the dimension of the screen,"[12] once modified to include the concept of "at least twice as large as" that comes from the "much larger" portion of the preamble phrase. Thus, the patent conveys with reasonable certainty to one of ordinary skill in the art that an "image ha[s] dimensions much larger than the dimension of the screen" if either its width or height, not necessarily both, are at least twice as large as the respective dimension of the screen.  *See* Ex. 3 (Decl. of N. Gupta) ¶¶ 31-32; s*ee Nautilus*, 134 S. Ct. at 2129.

**B.  The Asserted Claim of the '657 Patent Is Definite.**

As explained at length in Unwired Planet's claim construction briefing and at the subsequent claim construction hearing, the omission of the words "to be" before the word "pushed" in claim 16 of the '657 Patent was a simple (and correctable) drafting error. *See, e.g.,* Unwired Planet's Opening Claim Construction Br., Dkt. 353 at 14-16; Unwired Planet's Reply Br., Dkt. 376 at 20. First, the omission was nothing more than a simple drafting error, repeated through cut and paste. The fact that "the" replaces "said" in the specification is not indicative of anything besides the general practice of using "the" in the specification and "said" in the claims.

Second, the only reasonable correction is the one proposed by Unwired Planet. As explained in Unwired Planet's Opening Claim Construction Brief, its suggested correction has support in the specification, the surrounding claims, and the prosecution history. *See* Unwired Planet's Opening Claim Construction Br. at 15-16. The claim itself also supports Unwired Planet's reading. The limitation at issue begins with "executing said request," where "said

---

[12] Google's first "potential interpretation," which would require *both* the width and height of the image to be larger than the respective width and height of the mobile device screen, is incorrect.

request" refers back to an earlier limitation that describes the request as a "request . . . to push fleet data." "Executing" the request, then, should obviously entail pushing fleet data.

Third, Google's proposals make the claim nonsensical. The request to be executed in the last element of claim 16 is the "request . . . to push fleet data" recited as the first element of claim 16. Thus, the point of the "cause" limitation is to "execute said request" to push fleet data. However, none of Google's proposals result in pushing fleet data to the mobile stations. It would make no sense to read claim 16 in such a way that creates a missing antecedent or instructs the mobile stations to "receive" (or configure or update, for that matter) something that has not yet been pushed. Google's proposals do not create a "reasonable debate" because the proposals themselves are not reasonable. Unwired Planet's approach is the only reasonable one. Thus, for the reasons elaborated on in Unwired Planet's Opening and Reply Claim Construction Briefs, the "cause" limitation is not indefinite, and should furthermore be corrected by the Court.

Even if the Court declines to correct the typographical error in claim 16 of the '657 Patent (*i.e.*, by inserting "to be" before the word "pushed"), a person of ordinary skill in the art would still be reasonably certain as to claim 16's scope. In *Nautilus*, the Supreme Court held that, in evaluating indefiniteness, claims should be "read in light of the specification delineating the patent, and the prosecution history," from the perspective of one skilled in the art. 134 S. Ct. at 2124. A person of ordinary skill would thus look to the same materials that Unwired Planet uses to support its request for judicial correction, which show that the limitation should be read as "***to be*** pushed." The USPTO examiner understood the "cause" phrase enough to allow it and interpret it as "caus[ing] the fleet data *to be* pushed." UPSUF ¶ 43. And Dr. Mark T. Jones, a person of ordinary skill in the art, agrees that one of ordinary skill in the art would interpret the claim to mean "to be pushed." *See* Ex. 5 ¶¶ 19, 24; *see also Takeda Pharm.*, 743 F.3d at 1366-68 (relying on expert testimony in finding no indefiniteness after *Nautilus*). Google therefore cannot

18

1  carry its burden of proving by clear and convincing evidence that a minor drafting error—

2  omitting the words "to be"—makes the entire claim indefinite.

3  **V.      CONCLUSION**

4

5          For the reasons discussed herein, genuine issues of material facts exist, and Google's

6  Motion should be denied.

7

8  Dated:  September 12, 2014                Respectfully submitted,

9                                            */s/ Michael D. Rounds*
10                                           WATSON ROUNDS
                                             Michael D. Rounds
11                                           Nevada State Bar No. 4734
                                             mrounds@watsonrounds.com
12                                           Adam K. Yowell
                                             Nevada State Bar No. 11748
13                                           ayowell@watsonrounds.com
                                             WATSON ROUNDS
14                                           5371 Kietzke Lane
                                             Reno, Nevada 89511
15                                           Telephone: (775) 324-4100
                                             Fax: (775) 333-8171
16
                                             Theodore Stevenson III (*pro hac vice*)
17                                           Texas State Bar No. 19196650
                                             tstevenson@mckoolsmith.com
18                                           MCKOOL SMITH, P.C.
                                             300 Crescent Court, Suite 1500
19                                           Dallas, Texas 75201
                                             Telephone: (214) 978-4000
20                                           Fax: (214) 978-4044

21

22

23

24

25

26

27

28
                                             19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to FRCP 5(b), I certify that I am an employee of Watson Rounds, and that on this date a true and correct copy of the foregoing document, **UNWIRED PLANET LLC'S RESPONSE IN OPPOSITION TO GOOGLE INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NOS. 6,684,087 AND 6,292,657 ON GROUNDS OF INDEFINITENESS**, will be served upon counsel of record via electronic mail through the United States District Court's CM/ECF system.

Dated:  September 12, 2014          _/s/ Jeff Tillison_____
                                    An Employee of Watson Rounds