UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNWIRED PLANET, LLC,

Plaintiff,

v.

GOOGLE INC.,

Defendant.

Case No. 3:12-cv-00504-MMD-VPC

ORDER

(Def.'s Motion to Bifurcate Liability from Damages and Willfulness and to Stay Discovery and Proceedings – dkt. no. 261)

(Pl.'s Motion to Dismiss Patent Claims and Counterclaims Without Prejudice – dkt. no. 320)

(Pl.'s Motion to Seal – dkt. no. 357)

(Def.'s Motion for Leave to File Sur-Reply – dkt. no. 372)

## I. SUMMARY

Before the Court is Defendant Google Inc.'s Motion to Bifurcate Liability from Damages and Willfulness and to Stay Discovery and Proceedings Related to Damages and Willfulness (dkt. no. 261). The Court has also reviewed Plaintiff Unwired Planet, LLC's opposition (dkt. no. 278) and Defendant's reply (dkt. no. 288). For the reasons discussed below, the Court grants the Motion to Bifurcate.

Also before the Court is Plaintiff's Motion to Dismiss Patent Claims and Counterclaims without Prejudice (dkt. no. 320). Plaintiff seeks dismissal without prejudice of two non-elected patents and Defendant's related counterclaims. The Court

has considered Defendant's opposition (dkt. no. 342), Plaintiff's reply (dkt. no. 358), and Defendant's sur-reply (dkt. no. 373). For the reasons discussed below, Plaintiff's Motion to Dismiss is granted in part and denied in part.

## II. BACKGROUND

Plaintiff initiated this action in September 2012, alleging that Defendant directly and indirectly infringes claims in 10 patents relating to mobile phone technology. (Dkt. no. 1 ¶¶ 27-30.) Plaintiff also alleges that Defendant willfully infringes its patents. (*Id.* ¶ 31.) Among other forms of relief, Plaintiff seeks damages to compensate for Defendant's alleged infringement and enhanced damages based on Defendant's alleged willful infringement. (*Id.* at 10-11.) In answering the Complaint, Defendant asserted 20 counterclaims seeking declaratory judgment of invalidity and noninfringement for each of the asserted patents. (Dkt. no. 28 at 9-17.) Currently, five patents remain in suit because Plaintiff elected to narrow its asserted claims and because the Court stayed three patents pending review by the Patent and Trademark Office.[1] (*See* dkt. nos. 296, 233.) Plaintiff alleges that nine of Defendant's products infringe the remaining patents-in-suit.

## III. MOTION TO BIFURCATE

### A. Legal Standard

Courts may bifurcate a trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Rule 42(b) "confers broad discretion upon the district court to bifurcate at trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). The determination to bifurcate is made on a case-by-case basis. *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1320 (Fed. Cir. 2013). In determining whether to bifurcate, a court may consider

[1]When the Motion to Bifurcate was filed in April 2014, six patents remained in dispute. In July 2014, the parties stipulated to dismiss claims and counterclaims for U.S. Patent No. 6,654,786 with prejudice. (Dkt. no. 371.) Plaintiff also covenanted not to sue. (*Id.*)

the following factors: "avoiding prejudice, separability of the issues, convenience, judicial economy, and reducing risk of confusion." *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 448 (N.D. Cal. 2001). A court's "major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *In re Innotron Diagnostics*, 800 F.3d 1077, 1084 (Fed. Cir. 1986). The moving party "has the burden of proving that bifurcation is justified given the facts in [a] case." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992).

**B. Discussion**

Defendant argues that bifurcation is appropriate in light of the number of patents-in-suit and the number of allegedly infringing products, their technological complexity, and the complicated damages scheme jurors will need to apply to each patent-in-suit. Plaintiff argues that bifurcation is premature, that this case is not as complex as Defendant alleges, and that bifurcation would waste judicial resources and would prejudice Plaintiff. The Court finds that bifurcation is appropriate because it will promote judicial economy without unduly prejudicing either party. *See Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 982 (D. Del. 1982).

First, the Motion to Bifurcate is not premature. Defendant filed the Motion in April 2014. Although fact discovery was set to close on May 30, 2014, the parties agreed to continue discovery beyond that deadline. (*See* dkt. nos. 448, 449.) The Court held a *Markman* hearing on August 20 and 21, 2014. After the Court issues its claim construction order, the parties will narrow the asserted claims and prior art references, participate in a settlement conference, complete expert disclosures and depositions, and file any dispositive motions. (Dkt. no. 187 at 3-4.) Thus far, the litigation has demonstrated that the patents-in-suit and allegedly infringing products are technologically complex. Although the parties will further narrow the scope of this case, bifurcation at this stage will conserve judicial resources without undue prejudice.

Given the complex technologies at issue, separating liability from damages and willfulness will also promote juror comprehension. The patents-in-suit disclose different

technologies relating to mobile devices, including, for example, a system to manage a fleet of mobile devices, a method of protecting a mobile device's identity through encryption, a method to display images on a mobile device, and a method for showing a map on a mobile device. Two patents-in-suit are related — they share a specification but have different claims. Plaintiffs allege that nine of Defendant's software products infringe the patents-in-suit. (*See* dkt. no. 261-1 at 2.) Four of those products are alleged to infringe the two related patents-in-suit. (*See id.*) To determine whether the other products infringe, a jury would be asked to compare five products across three patents. Plaintiff argues that the patents can be grouped by their underlying technologies to streamline the infringement analysis.[2] (Dkt. no. 278 at 7-8.) Even if the technologies overlap, the jury will assess each product in light of each patent claim asserted against it. Bifurcation will allow a jury to focus exclusively on liability, and potentially dispose of asserted claims at the infringement stage. Separately resolving liability will, in turn, ease juror confusion in determining damages and willfulness for the surviving claims.

Bifurcation would likewise conserve judicial resources because the evidence of infringement, damages, and willfulness diverges. Liability and validity evidence would involve source code of the accused products, expert testimony comparing that code to the patents-in-suit, prior art references, and the commercial success of the claimed invention. The damages inquiry involves a fifteen-factor test to determine a reasonable royalty for Defendant's use of each infringing product. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (describing factors); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011) ("This court has sanctioned the use of the *Georgia-Pacific* factors to frame the reasonable royalty

---

[2]Plaintiff further contends that similarly complex cases are often tried without bifurcation. (Dkt. no. 278 at 8.) The Court is not persuaded by Plaintiff's cited cases. For example, *Halo Electronics, Inc. v. Pulse Engineering, Inc.*, 810 F. Supp. 2d 1173, 1181-82 (D. Nev. 2011), involved a family of three patents that stemmed from the same application. Similarly, *SenoRX, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 566 (D. Del. 2013) involved two patents-in-suit and one allegedly infringing product. This case, in contrast, involves five patents disclosing four disparate technologies and nine products.

inquiry.”). These factors include, among others; the royalties a patentee receives for licensing the patent-in-suit; a license’s scope, nature, and term; the nature of the patented invention; the parties’ commercial relationship; and profits realized from the patented invention. *See Georgia-Pacific Corp.*, 318 F. Supp. at 1120. For the most part, evidence of these factors is distinct from the liability and validity evidence. Plaintiff contends that overlapping evidence could include: background information on the nature of the patents-in-suit; examples of non-infringing products, which may involve evidence of the scope of the patents-in-suit; and evidence of the claimed invention’s commercial success and licensing, which may indicate non-obviousness in a validity inquiry. (*See* dkt. no. 278 at 12-13.) Additionally, both induced and willful infringement could involve evidence of Defendant’s knowledge of the patent. Plaintiff thus identifies at least four bodies of evidence that could appear in both the liability phase and the damages and willfulness phase of trial. In light of this case’s complexity, however, this possibility of overlap does not outweigh the judicial resources that would be conserved if the damages and willfulness inquiries are narrowed through a separate liability trial.

Finally, the Court finds that bifurcation and a related stay pending the liability phase of trial will not unduly prejudice either party. Because the parties do not compete, bifurcation would not give Defendant an unfair competitive advantage. Plaintiff contends, however, that delaying the damages and willfulness determination would cause prejudice because its business depends on licensing patents. *See Spectra-Physics Lasers*, 144 F.R.D. at 101 (“[P]rejudice may simply amount to unfair delay to the final disposition of the matter.” (citation and internal quotation marks omitted)). Plaintiff suggests that potential licensees may be unwilling to license its technology because this litigation could cast doubt on the patents-in-suit. (*See* dkt. no. 278 at 15.) But the damages and willfulness proceedings would occur only if Plaintiff prevails on its liability contentions. This outcome could facilitate licensing by indicating the patents’ validity and scope of infringement. Thus, while the Court recognizes that delaying trial on damages

///

and willfulness may adversely affect Plaintiff, it does not amount to undue prejudice to either party.

The Court will not, however, stay discovery and related proceedings on damages and willfulness until the Federal Circuit issues a decision on liability. Defendant stresses that the Federal Circuit is likely to reverse a liability determination in this case, pointing out that the Federal Circuit has noted a "substantial reversal rate of liability determinations on appeal." *Robert Bosch*, 719 F.3d at 1316. Defendant also cites a study suggesting that the Federal Circuit reverses, vacates, or remands 40% of software patent appeals on claim construction grounds. *See* Shawn P. Miller, *"Fuzzy" Software Patent Boundaries and High Claim Construction Reversal Rates*, 17 *Stan. Tech. L. Rev.* (forthcoming 2014). The study also notes that 24% of non-software appeals are reversed, vacated, or remanded on claim construction grounds. *Id.* Both reversal rates are higher than the average rate for other patent appeals and civil appeals generally. *Id.* Even in light of this data, the possibility of an appellate reversal does not indicate that judicial resources would be conserved in *this* case by a stay pending the Federal Circuit's review. Furthermore, any conservation of judicial resources would be outweighed by the delay and prejudice Plaintiff may experience if it cannot pursue damages or its willfulness claims until the Federal Circuit reviews a liability verdict.

The Court will therefore separate the trial on liability from the trial on damages and willfulness, and will stay discovery and proceedings related to damages and willfulness until trial on the liability issues concludes.

## IV. MOTION TO SEAL AND MOTION TO FILE SUR-REPLY

The Court considers two pending motions before reaching Plaintiff's Motion to Dismiss. First, Plaintiff seeks to seal an exhibit submitted in support of its Motion to Dismiss. Good cause appearing, Plaintiff's Motion to Seal (dkt. no. 357) is granted. Second, Defendant asks the Court to consider a sur-reply responding to new arguments that Plaintiff raised in its reply in support of its Motion to Dismiss. The Court agrees that

///

Plaintiff's reply raises new arguments about Defendant's counterclaims. Defendant's Motion to File Sur-Reply (dkt. no. 372) is granted.

## V. MOTION TO DISMISS

Plaintiff seeks dismissal without prejudice of U.S. Patent Numbers 7,035,647 ("'647") and 7,203,752 ("'752"). (Dkt. no. 320.) Plaintiff contends that it voluntarily elected not to assert those patents pursuant to the Court's order to reduce the number of claims at issue. (*See* dkt. nos. 112, 147, 187.) Plaintiff also argues that allowing Defendant to proceed with its related counterclaims undermines the efficiency purpose of narrowing Plaintiff's asserted claims. Defendant argues that Plaintiff's Motion to Dismiss should be construed as an untimely motion to amend because Plaintiff seeks to reduce the number of claims for relief, not the number of patent claims at issue. Defendant further argues that dismissing its related counterclaims would be prejudicial.

Courts have broad discretion to administer complex proceedings. *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011). In overseeing patent actions, courts may limit the number of asserted claims without necessarily raising due process concerns.[3] *See id.* at 1311. The Court finds that dismissing the '647 and '752 Patents without prejudice furthers the efficient administration of this case while preserving Plaintiff's ability to enforce its patents. Dismissing Defendant's related counterclaims, however, risks prejudicing Defendants given the extensive litigation already carried out by both parties. Because the Court is not dismissing the '647 and '752 Patents with prejudice, and because Plaintiff has not covenanted not to sue—thereby leaving open the possibility of future infringement claims—the Court denies Plaintiff's request to dismiss Defendant's related

---

[3]Plaintiff does not allege that the Court's procedure for narrowing its claims violates due process. Rather, Plaintiff argues that not dismissing Defendant's related counterclaims would frustrate the Court's interest in promoting efficiency — even though Plaintiff's infringement contentions would be narrowed, the Court would still need to consider Defendant's counterclaims. (*See* dkt. no. 358 at 2.) The Court disagrees. Dismissing Plaintiff's infringement contentions would narrow the scope of this case even if Defendant may proceed with its related counterclaims.

counterclaims. *See Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1346-48 (describing dismissal of counterclaims in light of a covenant not to sue).

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions.

It is ordered that Defendant's Motion to Bifurcate (dkt. no. 261) is granted. The issue of liability will be tried separately from the issues of willfulness and damages. Until the trial on the issue of liability concludes, all discovery and proceedings related to willfulness and damages are stayed. However, this stay shall not extend until the Federal Circuit Court of Appeals adjudicates the liability issue.

It is further ordered that Plaintiff's Motion to Seal (dkt. no. 357) is granted. The sealed document is filed and shall remain under seal.

It is further ordered that Defendant's Motion to File Sur-Reply (dkt. no. 372) is granted.

It is further ordered that Plaintiff's Motion to Dismiss (dkt. no. 320) is granted in part and denied in part. U.S. Patent Numbers 7,035,647 and 7,203,752 are dismissed without prejudice, but Defendant's related counterclaims may proceed.

DATED THIS 12th day of December 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE